UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, et al., | |
| Plaintiffs, | No. C 19-07918 WHA |
| v. | |
| VIVINT SOLAR, INC., et al., | **ORDER RE ARBITRATION AND MOTION TO DISMISS** |
| Defendants. | |

**INTRODUCTION**

In this unfair business practices suit, defendant solar panel installer moves to compel arbitration, or in the alternative, dismiss the complaint. Because the arbitration agreement clearly delegates the question of arbitrability to the arbitrator, for plaintiffs who agreed to, **ARBITRATION IS COMPELLED**. The motion to dismiss against the remaining two named plaintiffs is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC (all "Vivint") install solar panels on customers' roofs and, at least as advertised, sell them the low cost, clean energy produced (Compl., Dkt. No. 1, at ¶ 3). Vivint's unit of sale is the residential "power purchase agreement," under which Vivint agrees to install and maintain the solar system on a customer's roof (*id.* at ¶ 4).

Plaintiffs' complaint, though, alleges a host of systematic misconduct. Instead of agreeing to purchase only power *used*, customers apparently agreed to purchase all power *generated* by the system — leading to higher bills. And, customers must still pay the average expected energy generation rate even while the system is offline or broken (*id.* at ¶ 5).

Moreover, the agreement imposes a 20-year term which limits customers' ability to sell their homes. The new buyer must either agree to assume the remainder of the power-purchase agreement term, or the customer must purchase the entire solar system. Plaintiffs contend these buy-out provisions, along with Vivint's other prepayment prices and default payments, constitute unlawful liquidated damages provisions (*id.* at ¶¶ 4, 6–9).

To attract and bind customers to these power-purchase agreements, Vivint employs aggressive door-to-door salespeople to proclaim the convenience and low cost of the solar installation, and ease of transfer if a customer sells their home. But, Vivint's salesforce deliberately targets vulnerable consumers, the elderly, active-duty military personnel, low-income and at risk-borrowers, and non-native English speakers. Thus, Vivint allegedly peddles its deceptively dangerous power-purchase agreement to those who don't really understand and cannot actually afford its consequences (*id.* at ¶¶ 2–3).

Plaintiffs are California residents ensnared by Vivint. Gerrie Dekker signed a power-purchase agreement in 2012 but discovered in 2017 that Vivint had been charging her for a system offline for nearly two years (*id.* at ¶ 15). Karen Barajas's terminally ill father, Thompson Bryson, signed up for Vivint's solar system. Following his death, Vivint threatened to put a lien on her father's home unless she bought out the system (*id.* at ¶ 16). Marlene Rogers has been unable to sell her home because of Vivint's restrictions (*id.* at ¶ 17). Vivint demanded exorbitant early termination fees from Daniel Thompson, Jae Chong, Marci Hulsey, Cindy Piini, and Genie Hilliard, each who had become dissatisfied with Vivint's solar service (*id.* at ¶ 18–21, 23). Phyllis Runyon discovered Vivint had deliberately installed more solar panels than she needed on her roof so they could make her buy more power (*id.* at ¶ 22). And, Juan Bautista, a native Spanish speaker with virtually no English proficiency, was sold a system by a Spanish speaking salesperson who made him sign an English contract but never

gave him a translated copy. In 2018, Vivint sent Mr. Bautista a $2,000 bill that ballooned to $18,000 thirty days later (*id.* at ¶ 24).

Plaintiffs filed this putative class action in December 2019, seeking relief from Vivint's (alleged) unlawful liquidated damages provision and accompanying violations of California's Consumer Legal Remedies Act and Unfair Competition Law. Mr. Bautista also seeks relief under the California Translation Act. But Vivint's power-purchase agreement, for most plaintiffs, included an arbitration agreement which governs:

> [A]ll disputes, claims and controversies arising out of or relating to (i) any aspect of this relationship between You and Us, whether based in contract, tort, statute or any other legal theory; (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement; and (iv) the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this [arbitration agreement].

(Dkt. Nos. 22-1 at ¶ 4; 22-5 at ¶ 6(e) (similar)). Additionally, the agreement prohibits class or representative relief in one of two manners:

> The arbitrator shall not have any authority to (i) entertain a claim, or to award any relief, on behalf of or against anyone other than a named party to the arbitration; or (ii) join any other party to the arbitration.

(Dkt. No. 22-5 at ¶ 6(e)),

> You may bring claims against us only in your individual capacity, and not as plaintiff or class member in any purported class or representative proceeding.

(Dkt. No. 22-1 at ¶ 4). Vivint now moves to compel plaintiffs Hilliard (Dkt. No. 22, Exh. A), Hulsey (Exh. B), Bautista (Exh. C), Thompson (Exh. D), Barajas (Bryson) (Exh. E), Chong (Exh. F), Piini (Exh. G), Rogers (Exh. H), and Runyon (Exh. I) to arbitrate, or in the alternative, to dismiss their claims. Vivint also moves separately to dismiss Ms. Dekker's claims as untimely. This order follows full briefing and oral argument.

**ANALYSIS**

1. **VIVINT'S MOTION TO COMPEL ARBITRATION.**

Under the Federal Arbitration Act, a district court determines "whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue."

3

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Here, plaintiffs do not dispute the arbitration agreement covers the consumer protection claims in suit (Dkt. Nos. 22-5 at ¶ 6(e); 22-1 at ¶ 4). Thus, the only issue is whether the arbitration agreement is valid and enforceable.

In California, "a law established for a public reason cannot be contravened by a private agreement." This is no less true where the underlying agreement compels arbitration. "[A] provision in *any* contract . . . that purports to waive, in all fora, the statutory right to seek public injunctive relief . . . is invalid and unenforceable under California law." *McGill v. Citibank, N.A.*, 393 P.3d 85, 93–94 (Cal. 2017).

Plaintiffs contend that Vivint's arbitration agreements prevent public injunctive relief and are unenforceable under *McGill*. For this to be true: (1) plaintiffs' claims must offer the public injunctive relief contemplated in *McGill*; and (2) plaintiffs must actually seek such relief. They do.

*First*, in *McGill*, the California Supreme Court held that "the public injunctive relief available under the UCL [and] the CLRA . . . is primarily for the benefit of the general public." *Id.* at 94 (quotation omitted). So, the question here is whether plaintiffs' claims for unlawful liquidated damages under California Civil Code § 1671(d) and for violation of the California Translation Act are also directed to the public benefit. They are.

Public injunctive relief "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019). The difference is that "private injunctive relief . . . primarily resolve[s] a private dispute between the parties and . . . benefits the public, if at all, only incidentally" where "public injunctive relief . . . by and large benefits the general public and . . . benefits the plaintiff, if at all, only incidental[ly] and/or as a member of the general public." *McGill*, 393 P.3d at 89 (citations and quotations omitted).

California generally prohibits liquidated damages in consumer contracts. In "contract[s] for the retail purchase, or rental . . . of personal property or services, primarily for . . . personal, family, or household purchases" "a provision in a contract limiting liquidated damages for the

4

breach of the contract is void" in most cases. *See* Cal. Civ. Code § 1671(c)–(d). And, California's Translation Act requires "[a]ny person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing" to deliver "a translation of the contract or agreement in the language in which the contract or agreement was negotiated." The California Legislature originally passed this law "to increase consumer information and protections for the state's sizeable and growing Spanish-speaking population." Cal. Civ. Code § 1632. Both these laws set the *public* boundaries of consumer contract which apply whether or not the parties agree to them.

*Second*, plaintiffs do invoke each of these statutes "by and large" for the public benefit. The question is not how many times the complaint uses the term "public," it is the *form* of the relief sought. *See McGill*, 393 P.3d at 89. As noted, plaintiffs seek to stop: (1) Vivint's imposition of unlawful liquidated damages provisions; and (2) Vivint's imposition of English agreements on non-English speaking customers. *These are California's express goals* — not merely terms the parties agreed to. If the termination provisions are declared unlawful liquidated damages provisions, then plaintiffs' relief from further enforcement of these provisions follows incidentally from prohibiting Vivint's imposition and enforcement of the provisions against *anyone*. And if Vivint's practice of imposing English agreements on non-English speaking customers is declared unlawful, then Mr. Bautista and similarly-situated plaintiffs' relief from enforcement of the power-purchase agreements also follows incidentally from the prohibition of that practice against *anyone*. Vivint peddles its (allegedly) unlawful contracts to the public at large. Prohibition of that misbehavior reaches the same.

In sum, plaintiffs seek public injunctive relief. Yet, Vivint's agreements prohibit "any relief, on behalf of or against anyone other than a named party to the arbitration" (Dkt. No. 22-5 at ¶ 6(e)). Thus, the arbitration clauses are invalid insofar as they purport to waive plaintiffs' rights to seek such public injunctive relief. *McGill*, 393 P.3d at 93–94.

### A. ARBITRABILITY IS DELEGATED TO THE ARBITRATOR.

It appears, however, that the law has moved to the point where the above analysis is committed to the arbitrator. Though the gateway issues of "(1) whether there is an agreement

5

to arbitrate" and "(2) whether the agreement covers the dispute" are generally for the court, they "can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quotation omitted). But "a party can be forced to arbitrate *only those issues* it specifically has agreed to submit to arbitration." *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 945 (1995) (emphasis added). So, the questions here become: (1) may parties delegate a public-policy matter of enforceability of an arbitration agreement to the arbitrator; and (2) does the provision here so delegate?

*First*, the United States Supreme Court recognized in *Rent-A-Center, West, Inc. v. Jackson* that public-policy unconscionability challenges to an arbitration agreement may be delegated to the arbitrator. 561 U.S. 63, 68–69 (2010). Faced with an undisputedly "clear and unmistakable" delegation of arbitrability, Mr. Jackson had instead argued the entire agreement was unconscionable. The Supreme Court distinguished between the delegation provision and the arbitration agreement as a whole. An unconscionability challenge specifically to the delegation provision would have been for the court. But because Jackson had not "challenged the delegation provision specifically," it was accepted as valid under § 2 of the FAA, and "the validity of the Agreement as a whole [was] for the arbitrator." Thus, an unconscionability challenge could be delegated to the arbitrator. *Id.* at 69, fn. 1, 72–74.

*Second*, our court of appeals, applying *Rent-A-Center* in *Brennan*, provided an example of clear delegation in the American Arbitration Association rules, which stated that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." Brennan challenged the entire arbitration clause as procedurally and substantively unconscionable. But our court of appeals held "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d at 1128, 1130.

Here, just as clearly, Vivint's arbitration agreements delegate the arbitrability — "the interpretation, validity, or enforceability . . . including the determination of the scope or applicability" — of the agreements to the arbitrator (Dkt. Nos. 22-5 at ¶ 6(e); 22-1 at ¶ 4).

Indeed, plaintiffs' challenge under *McGill* is explicitly one of "invalid[ity] and unenforceab[ility] under California law," categories enumerated in the delegation provision. *See* 393 P.3d at 94.

Plaintiffs contend *Brennan* left the door ajar, that where one contracting party is unsophisticated, the agreement's incorporation of the AAA rules might not clearly delegate arbitrability. Plaintiffs cite several decisions from this circuit holding such incorporation insufficient against such an unsophisticated party. But the delegation here is not a reference to the arbitrator's own rules, rather it is plain on the face of the arbitration agreement and must be observed. 796 F.3d at 1130.

*Third*, even though it appears clear from the above discussion that Vivint may not compel plaintiffs to waive public injunctive relief via an arbitration clause, the final decision on this matter remains for the arbitrator. In *Schein v. Archer & White Sales*, the Court of Appeals for the Fifth Circuit declined to compel arbitration, even if the question of arbitrability was clearly delegated, because the asserted grounds for arbitrability were "wholly groundless." But the Supreme Court unanimously reversed, holding that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." 586 U.S. __, 139 S. Ct. 524, 529 (2019).

Plaintiffs' argument that the arbitration agreements are invalid under *McGill* — however meritorious — is for the arbitrator. Where the question of arbitrability is clearly delegated, *Rent-A-Center, Brennan*, and *Schein* leave no discretion to evaluate whether the general contract principles of a state prevent enforcement of the agreement. How the laws of the several states will further develop the application of general contract principles to arbitration clauses if the question is almost always delegated to the arbitrator remains unclear.

### B. CONTRACT DEFENSES ARE DELEGATED TO THE ARBITRATOR; FORMATION DEFECTS ARE NOT.

Plaintiffs also contend, more broadly, that formation and validity defenses to the power-purchase agreements remain for the court — not the arbitrator. As above, parties may delegate

7

these gateway questions to the arbitrator. *Brennan*, 796 F.3d at 1130. But, again, "[a] federal court's duty to enforce an arbitration provision . . . operates on the *specific written provision* . . . that the party seeks to enforce." So, the question here is *which specific issues* the agreement "clearly and unmistakably" delegates to the arbitrator. *Brennan*, 796 F.3d at 1130, 1133 (citing *Rent-A-Center*, 561 U.S. at 72) (emphasis added).

The delegation provision expressly delegates "interpretation, validity, . . . enforceability, . . . scope[,] or applicability" issues to the arbitrator (Dkt. Nos. 22-1 at ¶ 4; 22-5 at ¶ 6(e)). The United States Supreme Court has recognized that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to *invalidate* arbitration agreements . . . ." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis added). And, a "contractual clause is *unenforceable* if it is . . . unconscionable." *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (overruled on other grounds) (emphasis added). Thus, plaintiffs' contentions that Vivint misrepresented or obfuscated power-purchase agreement terms or that the agreements themselves are unconscionable are delegated. Even the question (which plaintiffs do not raise) whether Vivint may enforce an arbitration agreement that appears to be signed by plaintiff Gennie Hilliard's *husband* Christopher remains a matter of enforceability for the arbitrator (Compl. at ¶ 23; Dkt. No. 22-1).[1]

But, Vivint's agreements do not clearly delegate the question of *formation* to the arbitrator. Vivint only needed to use that term used in *Rent-A-Center*'s indisputably "clear and unmistakable" delegation: "formation." *See* 581 F.3d at 914 ("interpretation, applicability, enforceability or formation of this Agreement"); 561 U.S. at 66. It did not and must live with that choice. Absent such clear delegation, formation defects — such as a language barrier — remain for the Court.

---

[1] As a final note, plaintiffs do not challenge whether Vivint's affiliates may invoke the arbitration agreement together. This argument is waived.

8

### C. MR. BAUTISTA'S ARBITRATION AGREEMENT IS DEFECTIVE.

The "mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The manifestation of assent is judged objectively. *See Cal Fire Local 2881 v. Cal. Pub. Empls. Ret. Sys.*, 435 P.3d 433, 455 (Cal. 2019) (Kruger, J., concurring); WITKIN, SUMMARY OF CAL. L., CONTRACTS, § 767 (11th ed. 2017). And, where a party's conduct could not reasonably be taken as assent to contract, for example where the terms are hidden, no contract is formed. *See Barnes & Noble*, 763 F.3d at 1177–78 (citing *Specht v. Netscape*, 306 F.3d 17 (2d Cir. 2002)).

Plaintiff Juan Bautista spoke Spanish, not English. A sales representative walked up to his door to pitch a Vivint solar system. The entire discussion was conducted *in Spanish*. The sales representative then had Mr. Bautista sign a document in *English*. Vivint never sent Mr. Bautista a Spanish translation (Dkt. Nos. 1, 46). Now, without even attempting to assert that the terms of the arbitration provision were communicated to Mr. Bautista in Spanish, Vivint seeks to force him to arbitrate. Mr. Bautista had no reason to comprehend the document presented in English, so his signature is not an objective manifestation of assent to its terms. The reasonable observer is not naïve.

Vivint cites only non-binding authority to place the burden on Mr. Bautista to raise the language barrier or to ask for more time, as though the sales representative was not aware the negotiations took place in Spanish. Regardless, the California Legislature has placed that burden on Vivint:

> Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, that includes a translation of every term and condition in that contract or agreement.

Cal. Civ. Code § 1632(b). If Vivint wanted to send sales representatives to Mr. Bautista's door and bind him to an arbitration provision, it should have provided a Spanish version of its

9

contract. *See Lopez v. Asbury Fresno Imports, LLC*, 234 Cal. App. 4th 71, 77 (2015); *Reyes v. Superior Court*, 118 Cal. App. 3d 159, 161 (1981).

Mr. Bautista entered no agreement to arbitrate and will not be compelled to do so. On the complaint and limited record presented, it is not even clear that he entered *any* agreement with Vivint.

### 2. VIVINT'S MOTIONS TO DISMISS.

This order does not reach the merits of plaintiffs Barajas, Rogers, Thompson, Chong, Hulsey, Piini, Runyon, and Hilliard's complaints as they are compelled to arbitrate. But Ms. Dekker did not sign an arbitration agreement and Mr. Bautista never made one. So Vivint moves, in the alternative, to dismiss these complaints.

#### A. PLAINTIFF DEKKER.

Vivint does not move to dismiss Ms. Dekker's claims on the merits but instead argues her claims are untimely under both a one-year contractual limitations period and California's standard statutes of limitations for her claims (Dkt. No. 21 at 1, fn. 1; 24). This order disagrees.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quotation omitted). Plaintiffs' unlawful liquidated damages, Consumer Legal Remedies Act, and Unfair Competition Law claims must be brought within either three or four years. Cal. Code Civ. P. § 337; Cal. Bus. Prof. Code § 17208; Cal. Civ. Code § 1783; *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1401 (1991).

California generally observes last-element accrual, that is, the "cause of action accrues when [it] is complete with all of its elements — those elements being wrongdoing, harm, and causation." The California Supreme Court has explicitly held, in the § 17200 context, that legislative "silence triggers a presumption in favor of permitting settled common law accrual rules to apply." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013) (quotation omitted).

In 2017, Ms. Dekker discovered she had been improperly billed for an offline solar system for nearly two years. She requested removal of the system, but ultimately sued on December 3, 2019 (Compl. at ¶ 15). Vivint characterizes Ms. Dekker's complaint as purely about the propriety of the alleged liquidated damages provisions, which were part of Ms. Dekker's power purchase agreement from the beginning. It is generally true that "whether a contract is fair or works an unconscionable hardship is determined with reference to the time when the contract was made . . . ." *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (1979). But just because Vivint drafted a potentially unlawful agreement in 2012 did not irrevocably mandate that it enforce the unlawful provisions in 2017. That action is within the applicable three or four-year statutes of limitations.

Vivint also contends Ms. Dekker's claims are barred by a one-year limitations period included in the power-purchase agreement, which reads "both parties agree that no lawsuit or any other legal proceeding connected with this agreement shall be brought or filed more than one (1) year after the incident giving rise to the claim occurred" (Dkt. No. 25-1 at 3).

Vivint essentially asserts Ms. Dekker should have filed suit within one year of discovering the incorrect billing, meaning the discovery of the incorrect billing *itself* was "the incident giving rise to the claim." But no reasonable person discovers an improper bill and immediately sues. Instead, they investigate. The complaint alleges Vivint billed Ms. Dekker for an offline system for two years and, when she complained, demanded $40,000 (Compl. at ¶ 15). It is not clear whether Vivint immediately rebuffed Ms. Dekker and demanded $40,000, whether a period of negotiation continued into the one-year limitations period, or whether Vivint's own delayed response tolled the limitations period. Absent these facts, and regardless of the propriety of the shortened contractual limitations period, Ms. Dekker's complaint is not facially untimely. *See Von Saher*, 592 F.3d at 969.[2]

---

[2] Vivint's motion to dismiss on the merits does mention Ms. Dekker, but expressly disclaims her from the scope of its motion to compel and motion to dismiss on the merits (Dkt. No. 21 at 1). Regardless, Vivint does not get two bites of the apple against Ms. Dekker. Its motion against her raises only the statute of limitations and this order will not exceed that scope.

11

### B. PLAINTIFF BAUTISTA.

Vivint does not challenge Mr. Bautista's claim for violation of the California Translation Act. But plaintiffs' liquidated damages, and derivative unconscionability claims — each predicated upon an unlawful contract — appear inapplicable to Mr. Bautista given this order's observation that, on this record, he likely lacks an agreement with Vivint. Thus, this order dismisses Mr. Bautista's first four claims for relief and invites him to move for leave to amend his complaint.

## CONCLUSION

Plaintiffs Barajas, Bryson, Rogers, Thompson, Chong, Hulsey, Piini, Runyon, and Hilliard are **COMPELLED TO ARBITRATE** their claims against Vivint and its motion to dismiss as to those plaintiffs is **DENIED AS MOOT**. But the Court retains jurisdiction over these claims, should the arbitrator decide any of their claims are not arbitrable.

Vivint's motion to dismiss plaintiff Dekker is **DENIED**.

Finally, Vivint's motion to dismiss plaintiff Bautista is **GRANTED**. His claim under the California Translation Act was not challenged and may proceed, but Mr. Bautista is invited to move for leave to amend his complaint by **APRIL 6 AT NOON**. Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the current complaint. This order highlighted certain deficiencies in the complaint, but it will not necessarily be enough to add sentences parroting each missing item identified herein. If Mr. Bautista moves for leave to file yet another amended complaint, he should be sure to plead his best case, taking into account all criticisms made by defendants, including those not reached by this order.

**IT IS SO ORDERED.**

Dated: March 24, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12