UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERRIE DEKKER, et al.,

    Plaintiffs,

  v.

VIVINT SOLAR, INC., et al.,

    Defendants.

No. C 19-07918 WHA

**ORDER GRANTING IN PART AND DENYING IN PART LEAVE TO AMEND**

## INTRODUCTION

Following an order compelling arbitration in this unfair business practices suit, the remaining plaintiffs seek leave to amend their complaint. Because leave is freely given and the amendments are partially viable, leave is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

A prior order details the facts here (Dkt. No. 47). In brief, defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC (all "Vivint") install solar panels on customers' roofs and, at least as advertised, sell them the low cost, clean energy produced over a twenty year term pursuant to their "power purchase agreement" (Prop. Amend. Compl., Dkt. No. 52-3, at ¶¶ 1–11). Plaintiffs allege a host of misconduct, but only plaintiff Juan Bautista's story remains relevant here. A Vivint salesperson sold Mr. Bautista (a native Spanish speaker with virtually no English proficiency) a solar system in Spanish, made him sign an English form, but never sent him a translated copy. Then

Vivint sent him a $2,000 bill, which ballooned to $18,000 thirty days later, and ultimately demanded $22,946.99 plus the costs to remove his solar system, court costs, and applicable taxes (*id.* at ¶ 24).

Understanding these and similar demands against others to be unlawful liquidated damages clauses, plaintiffs sued in December 2019 under California Civil Code § 1671, the Consumer Legal Remedies Act, § 1750, and the Unfair Competition Law, Bus. & Prof. Code § 17200. Mr. Bautista also asserted violation of California's Translation Act, Civ. Code § 1632. Vivint moved to dismiss and successfully asserted an arbitration clause against all but Mr. Bautista and named-plaintiff Gerrie Dekker, who never signed an arbitration agreement. The prior order found her claims timely, at least on the pleadings, and found that the language barrier precluded contract formation and, thus, arbitration for Mr. Bautista. But, given he lacked a contract with Vivint, the order dismissed his claims for unlawful liquidated damages and invited him to seek leave to amend his complaint (Dkt. No. 47).

In a timely motion, Mr. Bautista seeks to add the Translation Act violation as a basis for both damages and injunctive relief under both the CLRA and UCL and also seeks a declaration that Vivint's contracts are unenforceable against him and similarly situated consumers. Alternatively, in case he does have a contract with Vivint, Mr. Bautista reasserts his original unlawful liquidated damages claims. Vivint opposing, this order follows full briefing but was decided on the papers due to the public health concern caused by COVID-19 (Dkt. No. 52).

**ANALYSIS**

Leave to amend a complaint shall be freely given "when justice so requires," *i.e.*, absent (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; or (5) futility. FRCP 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Vivint opposes the amendments only as futile.

As in a motion to dismiss, a complaint must allege facts sufficient to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That means the factual allegations permit a reasonable inference, not just speculation, that defendants are liable for the misconduct alleged. All factual allegations rate as true, but legal conclusions merely couched

1  as fact may be disregarded.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And, also

2  like a motion to dismiss, "courts [generally] may not consider material outside the pleadings."

3  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

4      **1.**    **TIMELINESS.**

5      Vivint rates Mr. Bautista's new Translation Act and related CLRA and UCL claims as

6  untimely under one, three, and four-year limitations periods because he signed Vivint's

7  agreement in 2014 but sued in 2019.  This order declines to impose such a pedestrian

8  application of the limitations periods.

9      The CLRA and UCL do impose three and four-year limitations periods, respectively.  Cal.

10  Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208.  The applicable statute of limitations for the

11  Translation Act, though, remains unclear.  Several decisions from this district have imposed a

12  one-year limitations period under California Civil Code § 340(a).  *See Varela v. Wells Fargo*

13  *Home Mortg.*, No. C 12-03502 KAW, 2012 WL 6680261, at *11 (N.D. Cal. Dec. 21, 2012);

14  *Melegrito v. CitiMortgage Inc.*, No. C 11-01765 LB, at *14 (N.D. Cal. June 6, 2011).  But the

15  Translation Act provides that "the person aggrieved may rescind the contract or agreement in

16  the manner provided by this chapter," which seems to point to a four-year limitations period for

17  "[a]n action based upon the rescission of a contract in writing."  Cal. Civ. Code § 1632(k); Cal.

18  Code Civ. P. § 337.  Neither, as will be shown, bars Mr. Bautista's claims.  The Court will

19  decide which period applies at summary judgment with the benefit of further briefing.

20      As hinted, even a one-year limitations period does not totally bar Mr. Bautista's claims.

21  "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable

22  statute of limitations only when the running of the statute is apparent on the face of the

23  complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th

24  Cir. 2010) (quotation omitted).  Unless the legislature says otherwise, California observes last-

25  element accrual, that is, the "cause of action accrues when [it] is complete with all of its

26  elements — those elements being wrongdoing, harm, and causation."  And this common law

27  accrual carries along the classic equitable exceptions, the discovery rule, equitable tolling,

28  fraudulent concealment, continuing violations, and continuous accrual.  *Aryeh v. Canon Bus.*

3

*Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013) (quotation omitted). So, absent legislative guidance otherwise here, these doctrines apply.

The amended complaint largely realleges the same as before. In July of 2014, a Vivint representative approached Mr. Bautista's door, pitched a solar system in Spanish — to repeat, he has virtually no proficiency in English — highlighted that there was no upfront cost, and eventually obtained his signature *on an English agreement*. Vivint never provided a Spanish translation yet continued to bill Mr. Bautista. In 2018, Vivint sent him a bill for $2,000 which threatened to balloon to $18,000 in 30 days. The proposed amendments add that in 2019, Vivint sent Mr. Bautista another letter, demanding $22,946.99, plus the cost to remove his solar system, court costs, and "applicable taxes" (Prop. Amend. Compl. at ¶ 24).

This latest activity restarted the clock. "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." For example, though a direct challenge to a city ordinance imposing a tax might be untimely, the city's "continuing monthly collection of the tax [could] represent[] an alleged ongoing breach of state law." *Id.* at 875–76, 880 (citing *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 23 P.3d 601, 607–09 (Cal. 2001)).

Here, Vivint didn't have to reassert the allegedly invalid agreement against Mr. Bautista. It could just as easily have realized it failed to send Mr. Bautista his Spanish translation as required by the Translation Act and written off the whole transaction. Instead, in brand new, unforced actions, Vivint demanded $2,000, then $18,000, and finally almost $23,000 from Mr. Bautista based upon an instrument even California says he had no reason to understand. These ongoing violations do not reset the clock for earlier activity. But, Mr. Bautista having sued in December 2019, Vivint's renewed enforcement efforts in 2018 and 2019 remain within three and four-year CLRA and UCL limitations periods. And they remain (at least partially) within the one or four-year limitations under the Translation Act. In this part, Mr. Bautista's claims live on.

Vivint correctly objects to plaintiffs' submission of Mr. Bautista's declaration and an August 2018 complaint about Vivint to the Better Business Bureau to support the timeliness of the claims. The complaint bounds (with minor exceptions) the review here, so these sources were not considered. *See Khoja*, 899 F.3d at 998.

### 2. AVAILABILITY OF RESCISSION.

Vivint next contends Mr. Bautista's Translation Act claim fails because he alleges neither willingness nor ability to restore any benefit obtained, the prerequisite for rescission. This order agrees.

The Translation Act specifies its remedy: rescission. Cal. Civ. Code § 1632(k). And, "[t]he law abhors forfeitures." *Lamont v. Ball*, 93 Cal. App. 2d 291, 294 (1949). So, to rescind an agreement, a plaintiff must do equity "by restoring to the defendant everything of value which the plaintiff has received in the transaction." *Fleming v. Kagan*, 189 Cal. App. 2d 791, 796 (1961). As this Court has explained, albeit in the mortgage context, "rescission is not available as a remedy unless and until plaintiffs plead their willingness and ability to restore to defendants everything of value which the plaintiffs have received in the transaction." *Vargas v. Wells Fargo Bank, N.A.*, No. C 12-02008 WHA, 2012 WL 5869642, at *2 (N.D. Cal. Nov. 19, 2012).

Plaintiffs' proposed amended complaint concedes Mr. Bautista's benefit — Vivint's solar system generated power for his home. It also says Vivint sought to hold him in default. So Vivint thinks Mr. Bautista owes them money for the power generated. The complaint asks for removal of the solar systems, which is reasonably construed as the willingness and ability to restore those systems to Vivint. But plaintiffs point to no allegations in his proposed amended complaint of his willingness and ability to restore any overdue energy bills. (Prop. Amend. Compl. at ¶ 24, Prayer ¶ D). Thus, rescission — the only remedy under § 1632 — remains unavailable here. *Id.* at *4.

Plaintiffs seek to distinguish *Vargas* and curtail this tender requirement, emphasizing the second sentence of § 1632(k):

> Upon a failure to comply with the provisions of this section, the

5

> person aggrieved may rescind the contract or agreement in the manner provided by this chapter. *If the contract for a consumer credit sale or consumer lease that has been sold and assigned to a financial institution is rescinded pursuant to this subdivision*, the consumer shall make restitution to and have restitution made by the person with whom he or she made the contract, and shall give notice of rescission to the assignee. Notwithstanding that the contract was assigned without recourse, the assignment shall be deemed rescinded and the assignor shall promptly repurchase the contract from the assignee.

Plaintiffs contend the tender requirement applies only to contracts for consumer credit sales or consumer leases that have been sold to another institution. Not so. Instead the second sentence simply directs that where a consumer financial instrument has been sold or reassigned, a plaintiff shall make restitution to the original party to the transaction and need not look for the new party.

Plaintiffs also offer a declaration from Mr. Bautista to show Vivint has already recouped any benefits bestowed, thus negating any requirement to allege willingness or ability to restore. But as Vivint correctly objects, the proposed amended complaint bounds (with minor exceptions) the review here. *Khoja*, 899 F.3d at 998. Such additional information must be pled, not submitted in a reply-declaration. In sum, Mr. Bautista's proposed Translation Act claim fails.

### 3. CLRA ADMINISTRATIVE REQUIREMENTS.

Vivint then argues that plaintiffs' failure to satisfy two administrative prerequisites precludes Mr. Bautista from adding the Translation Act as a basis for his CLRA claim. This order agrees.

To start, the CLRA requires:

> In any action subject to this section, concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice.

Cal. Civ. Code § 1780(d). Plaintiffs contend that Vivint waived this defense by not raising it in its prior motion to dismiss. This may be true against the CLRA claims rooted in Vivint's

allegedly unlawful liquidated damages provisions. But the claim based on the Translation Act is new. Vivint gets to raise new defenses.

Plaintiffs then acknowledge they filed no such venue affidavit with the proposed amended complaint and seek to submit one in reply. But, first, the text plainly requires "concurrent[]" filing of the affidavit and complaint, and, second, as above, the *complaint* bounds our review here. *Khoja*, 899 F.3d at 998. This alone warrants denial of leave to amend without prejudice.

Yet the CLRA goes further. "[A] plaintiff must also provide a company with thirty days' notice of the specific alleged CLRA violation by certified registered mail before filing a CLRA claim for damages." Courts in this district have strictly adhered to this requirement. *In re Apple In-App Purch. Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (Judge Edward J. Davila); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (Judge Ronald M. Whyte). And here, plaintiffs' notice letter *may* appropriately be considered due to its incorporation-by-reference into the proposed amended complaint, given it "forms [a] basis of the plaintiff's claim." *See Khoja*, 899 F.3d at 1002.

Plaintiffs' demand letter says Mr. Bautista speaks "Spanish and has limited English proficiency." In 2014, a Vivint representative came to his door and pitched an energy saving solar system. "[T]he sales representative *did not* speak Spanish" and the agreement was "entirely in English and Mr. Bautista was not offered a Spanish version." So "Mr. Bautista was not able to compare the sale representative's promises with the terms of the written agreement." The letter alleges "Vivint Solar knew [Mr. Bautista's] house was too small and unsuitable for the Solar System, but tricked him into a 20-year obligation nonetheless." It also "contends Vivint Solar has misrepresented and failed to maintain the system." The letter concludes with three claims: (1) breach of "express warranties pertaining to these Solar Systems;" (2) breach of the "implied warranties of merchantability;" and (3) violation of the Magnuson-Moss Warranty Act's (15 U.S.C. § 2302) requirement of plain and conspicuous warranty conditions (Dkt. No. 57-2) (emphasis added).

Plaintiffs contend the sentence "the sales representative did not speak Spanish" is plainly a typo and Vivint had ample notice of the Translation Act claim. That's simply not a fair read of

7

the letter.  The letter *should* have predated the complaint by at least 30 days.  Cal. Civ. Code § 1782.  So Vivint would not have known of Mr. Bautista's Translation Act claim yet and would have had no reason to conclude the phrase was a typo.  *As sent*, the letter says Mr. Bautista spoke limited English and the salesperson did not speak Spanish.  The Translation Act doesn't apply to English negotiations, even poorly executed ones.  *See* Cal. Civil Code § 1632(b) ("trade or business who negotiates primarily in Spanish").

The remainder of the letter complains only about warranties, reinforcing the conclusion that plaintiffs' CLRA notice letter did not inform Vivint of an underlying Translation Act violation.  Because the letter must precede the complaint by at least 30 days, this failure cannot be cured via amendment.  Thus, Mr. Bautista's Translation Act-based CLRA claim for damages is dismissed without leave to amend.

Vivint objects that the Bennet declaration, attesting to the CLRA letter typo, exceeds the scope of the review here.  Plaintiffs' argument rejected, Vivint's objection is denied as moot.

4. **UNFAIR COMPETITION CLAIM.**

Plaintiffs also seek to add Mr. Bautista's Translation Act claim as the basis for both unlawful and unfair trade practices under California Unfair Competition Law.  Cal. Bus. & Prof. Code § 17200.  Vivint correctly notes that, absent a live Translation Act claim, the unlawful prong fails because it "borrows violations of other laws."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (quotation omitted).  Regardless, plaintiffs do not contest this point, arguing only that Mr. Bautista's Translation Act claim does not fail.  But as above, his Translation Act claim falls for failure to plead either the ability or willingness to tender restitution.  So, Mr. Bautista's unlawfulness claim based on the Translation Act fails.

But he also seeks to base a UCL *unfairness* claim in the activity underlying his Translation Act claim.  After all, "a practice may be deemed unfair even if not specifically proscribed by some other law."  *Id.* at 540.  Such an unfair practice "either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008)

8

1   (quotation omitted).  As alleged, Vivint's conduct certainly violates the California public policy

2   embodied in the Translation Act, that is, businesses who negotiate with customers in Spanish

3   (among other languages) must provide Spanish copies of any agreement and not foist an

4   English copy upon a consumer who has absolutely no reason to understand it.  Cal. Civ. Code

5   § 1632(b); Dkt. No. 47 at 9–10 (citing *Lopez v. Asbury Fresno Imports, LLC*, 234 Cal. App. 4th

6   71, 77 (2015); *Reyes v. Superior Court*, 118 Cal. App. 3d 159, 161 (1981)).  This claim may

7   proceed.

    **5.   LIQUIDATED DAMAGES.**

9   The prior order did not address the merits of plaintiffs' claim that Vivint imposed

10  unlawful liquidated damages provisions.  Observing Mr. Bautista lacked a contract with Vivint

11  on the pleadings presented, the prior order dismissed his liquidated damages claims (which

12  necessarily required a contract) but invited the present motion to clarify his claims.  As an

13  alternative to the above, Mr. Bautista reasserts that if he has a contract with Vivint, it imposes

14  unlawful liquidated damages.  This issue being fully briefed in the prior motion, this order now

15  addresses it.

16  California defines liquidated damages as "an amount of compensation to be paid in the

17  event of a breach of contract, the sum of which is fixed and certain by agreement . . . ."  *Chodos*

18  *v. West Publ. Co.*, 292 F.3d 992, 1002 (9th Cir. 2002).  Such provisions in consumer contracts

19  are generally "void[,] except that the parties to such a contract may agree therein upon an

20  amount which shall be presumed to be the amount of damage sustained by a breach thereof,

21  when, from the nature of the case, it would be impracticable or extremely difficult to fix the

22  actual damage."  Cal. Civil Code § 1671(d).  "Put another way, a liquidated damages clause will

23  be construed as an unenforceable penalty, unless there is a relationship between the liquidated

24  damages and the damages the parties anticipated would result from a breach."  *Mahlum v.*

25  *Adobe Sys. Inc.*, No. C 14-02988 LHK, 2015 WL 124663, at *3 (N.D. Cal. Jan. 8, 2015) (Judge

26  Lucy H. Koh) (citing *Ridgley v. Topa Thrift & Loan Ass'n,* 953 P.2d 484, 488 (Cal. 1998)).

27  But, "[w]here a contract for a specified period of time permits a party to terminate the

28  agreement before its expiration in exchange for a lump-sum monetary payment, the payment is

9

considered merely an alternative to performance, and not a penalty." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005) (citing *Blank v. Borden*, 524 P.2d 127, 130–31 (Cal. 1974)).

The California Supreme Court's decision in *Blank v. Borden* remains the guiding light here. There a real estate broker obtained a seven-month exclusive and irrevocable right to sell defendant's home, for a specified commission. If, however, the seller withdrew the home from sale, the broker would still be entitled to a specified sum of money. This, the justices said, was not an unlawful liquidated damages clause. There appeared, first, no breach. Rather the contract enumerated withdrawal of the home as an *alternative*, should the homeowner change her mind about the sale. Nor, second, did the clause exhibit the "invidious qualities characteristic of a penalty or forfeiture." Instead, "the contract clearly reserve[d] to the owner the power to make a *realistic and rational choice* in the future with respect to the subject matter of the contract." But, the court cautioned that when it is "manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages." *See* 524 P.2d at 128–31 (emphasis added).

Vivint's agreement (assuming there is one) plainly contrasts the two reasons *Blank*'s clause was lawful and falls squarely into the California Court's warning. The pleadings allege Vivint's representative told Mr. Bautista the solar system was "totally free for 20 years" and continued:

> Notwithstanding the lack of enforceable agreement, Vivint Solar continued to bill Plaintiff Bautista exorbitant sums for the power generated by his system, and seeking to hold him in default. In 2018, Plaintiff Bautista received a bill from Vivint Solar for more than $2,000, with a threat that failure to pay within 30 days would increase the debt to nearly $18,000. In 2019, Plaintiff Bautista received correspondence from Vivint Solar, threatening to hold him liable for $22,946.99 plus the costs of removal, court costs, and "applicable taxes."

(Dkt. No. 52-3 at ¶ 24). It appears, first, that Vivint thought Mr. Bautista breached the contract because they sought "to hold him in default." Then, second, Vivint sought to extract nearly

10

$23,000 from him, along with costs for removing the solar system, court fees, and "applicable taxes." Vivint acknowledges — though characterized as an early termination fee — the imposition of the prepayment price (the sum of all remaining payments discounted by five percent), any other amounts due, and the fees and costs associated with removal of the solar system (Dkt. No. 31 at 11).

The details remain fuzzy, but it appears clear enough that Vivint's demands foreclosed any rational alternative to performance. Under the original bargain, Vivint would install the solar system on Mr. Bautista's roof and sell him the energy produced for twenty years. Installation and removal appeared to be free. So Vivint expected twenty years of monthly payments minus the costs of installation and removal. But when Mr. Bautista defaulted, Vivint demanded the twenty years' worth of payments anyway (remaining payments plus amounts already due) along with system removal costs. So Vivint would get *both* the twenty years of payments *and* the solar system back, presumably to lease it out again. That's a forfeiture.

Vivint highlights the five percent discount of the remaining payments, but several of its own cases show that rates as no more than a fig leaf. In *Mahlum*, plaintiffs cancelling their Adobe Creative Cloud subscription early paid only 50% their remaining balance. 2015 WL 124663 at *1. In a memorandum opinion, our court of appeals found a cruise cancellation fee of 40% the purchase price remained a realistic alternative to boarding the ship. *Bauer v. Atlantis Events, Inc.*, 645 F. App'x 545 (9th Cir. 2016). Here, in contrast, Vivint demanded 95% of the remaining payments from Mr. Bautista.

At bottom, Mr. Bautista could keep the solar system, get the energy produced, and pay twenty years of monthly payments. Or, he could forfeit the system at some point, get no more energy, and still pay 95% the remaining balance. That's not a rational alternative. To be sure, further discovery and review of the agreement might reveal a different scenario. But as alleged and acknowledged, Vivint designed its contract to extract *all* twenty years of monthly power payments without offering a rational alternative should a customer legitimately change her mind. There was an easy way — just pay them and get something in return — and a hard way: default, get nothing, and pay anyway. *See Blank*, 524 P.2d at 130.

11

In sum, Mr. Bautista plausibly alleges Vivint imposed (or attempted to impose) unlawful liquidated damages upon him.  His derivative CLRA and UCL claims, challenged on the same bases as above, may also proceed.

**CONCLUSION**

Leave to amend is **GRANTED IN PART AND DENIED IN PART**.  Leave to assert Mr. Bautista's claims directly under the Translation Act, for related injunctive relief under the CLRA, and related unlawfulness UCL claim are **DENIED WITHOUT PREJUDICE**.  But, given plaintiffs' deficient CLRA-notice letter, the related CLRA damages claim is **DENIED WITH PREJUDICE**.  Leave to assert the related unfairness UCL claim is **GRANTED**.  And, leave to reassert the liquidated damages claims is **GRANTED**.  Plaintiffs are reminded that under the CASE MANAGEMENT ORDER (Dkt. No. 41) the last day to amend under Rule 15's permissive standard is May 29.  Subsequent amendment shall be decided under Rule 16(b)(4).

**IT IS SO ORDERED.**

Dated:  May 20, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE