**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
JOSHUA D. BOXER (SBN 226712)
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

**MATERN LAW GROUP, PC**
COREY B. BENNETT (SBN 267816)
1330 Broadway, Suite 428
Oakland, California 94612
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

*Attorneys for Plaintiffs, individually, and on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, KAREN BARAJAS as executor of the Estate of Thompson Bryson, MARLENE ROGERS, DANIEL THOMPSON, JAE CHONG, MARCI HULSEY, CINDY PIINI, PHYLLIS RUNYON, GENNIE HILLIARD, and JUAN BAUTISTA, individually and on behalf of all others similarly-situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIVINT SOLAR, INC., VIVINT SOLAR HOLDINGS, INC., VIVINT SOLAR DEVELOPER, LLC, and VIVINT SOLAR PROVIDER, LLC, DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:19-cv-07918-WHA<br><br>[Assigned to Hon. William Alsup, Courtroom 12]<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE ORDER COMPELLING ARBITRATION**<br><br>Date: July 30, 2020<br>Time: 8:00 a.m.<br>Courtroom: 12<br><br>Action Filed: December 03, 2019<br>Trial Date: February 16, 2021 |

1

**SUPPLEMENTAL BRIEF**

In accordance with the Court's request on July 28, 2020 (Dkt. 75), Plaintiffs submit this supplemental brief in support of their motion to vacate the order compelling arbitration. As a preliminary matter, Plaintiffs have attached the following to the Declaration of Corey B. Bennett: (1) all JAMS invoices it received regarding the Barajas, Hilliard, Husley, Piini, and Rogers matters; (2) all JAMS Notice of Intent letters received in the same matters, including any that have been issued since plaintiffs filed this motion; (3) any other communications with JAMS about payment due dates; and (4) the full legislative history of California Code of Civil Procedure § 1281.97.

**The Meaning of "Due Date"**

JAMS invoices state "payment is due on receipt" at the bottom of the forms. Further, JAMS' case managers confirmed that payment is due upon invoice. (Dkt. 68-4, 68-6). The simplest definition of "due" is found in a legal dictionary: "Owing; payable; justly owed. That which one contracts to pay or perform to another; that which law or justice requires to be paid or done. 3. Owed, or owing, as distinguished from payable. A debt is often said to be due from a person where he is the party owing it, or primarily bound to pay, whether the time for payment has or has not arrived." Black's Law Dictionary (2d ed.).

"Due" is also found in the legislative history of SB 707: "This bill provides that any drafting party that fails to pay the fees necessary to commence or continue arbitration, *within 30 days after such fees being due to be tendered to the arbitrator*, the drafting party is held to have materially breached the arbitration and is in default of the agreement." (Assembly Judiciary Notes at p. 7, Bennett Decl. Ex. I; Assembly Floor Analysis at p. 2, Bennett Decl. Ex. H) Tender is an "offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition." Black's Law Dictionary (2d ed.). If payment is due upon invoice, it is an obligation at that moment. Defendants' contention that "due date" as used in correspondence (not the plain language of the invoice) actually implies a grace period as it is known in financial lending. But case law, and common sense dictate a different interpretation.

"Tax and interest payments are creatures of statute, and such statutory provisions are to be given their plainest reasonable meaning, in implementation of the discernable intent of Congress." *Shriners Hospitals for Crippled Children v. United States*, 862 F.2d 1561, 1563 (Fed.Cir.1988) (footnote omitted). In *Marsh & McLennan Companies, Inc. v. United States*, 50 Fed. Cl. 140, 146 (2001), *aff'd*, 302 F.3d 1369 (Fed. Cir. 2002), the Court interpreted "due date" within I.R.C. § 6611(b)(1) as "the last day fixed by law or regulation for the payment of the tax (determined without regard to any extension of time)." Granted, income tax is not specified on an invoice like a deposition transcript or an arbitration fee would be. In analyzing the statutory language and legislative history, the Court in *Marsh & McLennan* faulted plaintiff's argument that "due date" should be "wholly dependent on the IRS's accounting procedures, which have not been shown to be governed by the statutory language." *Id.* at 142. There is no "clear congressional intent for such an unpredictable result, instead seeking to minimize the impact of the phrase 'due date.'" *Id.* at 143. The accounting procedures of arbitration organizations are also not governed by statutory language. The notion that "due date" under Section 1281.97 should depend on such procedures introduces the very unpredictability and strategic delay that the statute aims to curb.

In interpreting Treasury Regulations § 301.6611-1(b), § 301.6611-1 (h)(1) and (h)(2)(v)—specific sections dealing with interest on overpayments—the Northern District found that "[t]here can be no overpayment of tax until the entire tax liability has been satisfied." *Tami Sportswear, Inc. v. United States*, No. C-73-0410-0JC, 1974 WL 639, at *1–2 (N.D. Cal. Aug. 13, 1974). Section 301.6611-1(h)(1) discusses the period for which interest is allowed on overpayments and provides that the "due date of assessed interest, according to Section 301.6611-1(h)(2)(v) is 'the date of the assessment of such interest.'" *Id.* The Court found that the "due date of assessed interest is now defined in precise, inescapable terms in 301.6611-1(h)(2)(v)–the date upon which it is assessed. Thus, the only logical explanation for the present Treasury Regulations is that, as the *Fruehauf* court held, that the assessed tax is not a tax liability until the date of its assessment." *Id.* Merriam-Webster defines "assessment" as "an amount a person is officially required to pay, especially as a tax." In this case, JAMS' policy that payment is due upon invoice equates to an assessment. If payment were not actually due upon invoice—if, say, payment were due upon a later date specified in correspondence—

-3-

1  JAMS' invoices would have no purpose. Under that interpretation, the invoice would essentially start
2  a grace period. A grace period, in insurance law, is "a period beyond the due date of premium
3  (usually 30 or 31 days) during which insurance is continued in force and during which the payment
4  may be made to keep the policy in good standing." Black's Law Dictionary 697 (6th ed. 1990). Here,
5  the 30 days section 1281.97 provides before a material breach occurs *is a grace period.* The
6  beginning of that period is the due date.

7       In the arbitration context, Rule 45 of the AAA's Commercial Rules generally require an
8  arbitrator to render an award within 30 days from the date of closing the hearing. Similarly, JAMS
9  Streamlined Arbitration Rules, Rule 19, which govern these agreements, requires a final award or
10 partial final award within 30 days of the hearing, or if hearing is waived, within 30 days after the
11 arbitrator receives all materials from the parties. However, both rules allow the parties the power to
12 agree to a different due date for the award and courts have sometimes implied such an agreement
13 based on the parties' conduct. *Librascope, Inc. v. Precision Lodge No. 1600 Intern. Ass'n of*
14 *Machinists*, 189 Cal. App. 2d 71 (1961). In such cases, a "target date" is distinguishable from "due
15 date." "A 'target date' implies something to shoot for, rather than an absolute deadline or due date."
16 *Innovation Advisory Group, Inc. v. National Pacific Corp*., No. B288237, 2020 WL 103590, at *4
17 (Cal. Ct. App.). The notion that a business' "due date" is a target, as opposed to a date upon which
18 money is actually owed, defies logic. JAMS is not a public agency or a non-profit organization. It is a
19 for-profit corporation with annual revenues of tens of millions of dollars. When JAMS states that
20 payment is due upon receipt of the invoice, it should be interpreted as such—triggering the 30 days
21 provided by section 1281.97. Failure to enforce this statute would not only undermine the legislative
22 intent, it would effectively re-write JAMS' invoices.

23 \\\
24 \\\
25 \\\
26 \\\
27 \\\
28 \\\

-4-

Dated:  July 31, 2020

**MATERN LAW GROUP, PC**

By: /s/ Corey B. Bennett
Matthew J. Matern
Joshua D. Boxer
Corey B. Bennett
Attorneys for Plaintiffs GERRIE DEKKER, KAREN BARAJAS as executor of the Estate of Thompson Bryson, MARLENE ROGERS, DANIEL THOMPSON, JAE CHONG, MARCI HULSEY, CINDY PINI, PHYLLIS RUNYON, GENNE HILLARD, and JUAN BAUTISTA, individually, and on behalf of all others similarly situated

-5-

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO VACATE ORDER COMPELLING ARBITRATION
CASE NO. 4:19-cv-07918-WHA