UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, et al., | |
| Plaintiffs, | No. C 19-07918 WHA |
| v. | |
| VIVINT SOLAR, INC., et al., | **ORDER GRANTING MOTION TO VACATE ORDER COMPELLING ARBITRATION** |
| Defendants. | |

**INTRODUCTION**

In this unfair business practices suit, plaintiffs move to vacate a prior order compelling them to arbitrate their claims, alleging defendants failed to timely pay their share of arbitration fees, a material breach of the arbitration agreement. Because the arbitration filing fees came due on defendants' receipt of the arbitrator's invoice, their payments came more than 30 days later, in violation of state law. To the extent stated below, plaintiffs' motion is **GRANTED**.

**STATEMENT**

A March 24 order recited the essence of this case (Dkt. No. 47). __ F. Supp. 3d __, 2020 WL 1429740 (N.D. Cal. Mar. 24, 2020). In brief, eight plaintiffs, solar panel system customers, sued Vivint Solar for a range of unfair business practices. That order, among other

things, compelled plaintiffs to arbitrate. Each plaintiff then filed a separate complaint with JAMS on April 29.[1] Before any arbitration can begin, JAMS rules require the consumer pay a $250 filing fee and the non-consumer pay a $1,500 filing fee. The parties do not dispute that all plaintiffs timely paid. Defendants' untimely payment, however, resides at the heart of the present dispute.[2]

Passed in October 2019 and effective January 1 this year, California's SB 707 amended several sections of the Code of Civil Procedure § 1280 *et seq.* (the California Arbitration Act). Relevant here, one new provision, § 1281.97, clarified that the drafting party materially breaches an arbitration agreement when it fails to pay the arbitrator's fees "within 30 days after the due date."

Plaintiffs moved to vacate the prior order compelling them to arbitration when, in their view, defendants failed to pay on time. JAMS Streamlined Arbitration Rules & Procedures, available online, articulated no global policy on the "due date." JAMS, however, issued statements that control.

As stated above, plaintiff Barajas filed her initial complaint with JAMS on April 29. Defendants answered on May 14 (Dkt. No. 68, Exhs. A–B). JAMS promptly sent both parties a "Notice of Intent to Initiate Arbitration" (NOI) that same day, May 14. In the NOI letter, JAMS wrote "[Defendant] must pay the remaining $1500.00 Filing Fee by no later than May 28, 2020." Defendants claim this date, May 28, as the proper payment "due date" (Dkt. No. 69, Exh. A). Plaintiffs contend, however, that payments were "due upon receipt" of the invoice, which defendants received in the Barajas matter on May 15. The invoices showed, *in bolded font* at the bottom: "**Payment is due upon receipt.**" Moreover, these invoices came with an automated email from JAMS that read in pertinent part: "Please note that payment is *due upon*

---

[1] Because of the COVID-19 pandemic, all service between JAMS and the parties proceeded via email only (*see, e.g.,* Dkt. No. 77, Exh. E at 1).

[2] While the March 24 order compelled eight plaintiffs to arbitrate, plaintiffs' motion concedes that defendants were not late in paying fees for the Chong, Thompson, and Runyon matters (Dkt. No. 68 at 4 n.1). Only defendants' payments in the Barajas, Hilliard, Hulsey, Piini, and Rogers matters remain at issue.

*receipt*" (Dkt. No. 77, Exhs. C–G) (emphasis added).[3]  Given that the invoices became "due" upon receipt and defendants were more than 30 days past due, plaintiffs withdrew all five matters from arbitration and filed the instant motion on June 24.  Defendants paid all outstanding filing fees on June 26, via overnight mail (Dkt. No. 68, Exhs. S–W; Dkt. No. 69, Exh. H).

The timeline of events follows the same pattern for plaintiffs Hilliard, Hulsey, Piini and Rogers, except that the JAMS invoices and NOI letter dates were slightly different.  Regarding plaintiff Hilliard, defendants received the invoice on May 21.  JAMS issued the NOI letter on May 20, requesting payment by June 5 (Dkt. No. 77, Exh. D at 3–4).  Regarding plaintiff Hulsey, the invoice reached defendants on May 22.   JAMS issued the NOI letter also on May 20, but requested payment by June 3 (Dkt. No. 77, Exh. E at 3–4).  For plaintiff Piini, the invoice arrived May 16, but JAMS did not issue the NOI letter until June 11, almost a full month after defendants filed their answer.  The letter requested payment by June 17, a mere six days later (Dkt. No. 77, Exh. F at 2, 5).  A case manager overseeing the Piini matter also wrote to plaintiffs' counsel on June 10 that defendant's payment was outstanding and "is due upon receipt and no later than 30 days" (Dkt. No. 68, Exh. E at 4).  Finally, as to plaintiff Rogers, defendants received an invoice on May 22, but JAMS never issued a NOI letter (Dkt. No. 77, Exh. G at 4).  All invoices stated in bold font that they were due upon receipt, and all were received no later than May 22.

## ANALYSIS

Federal enforcement of arbitration provisions sits atop arbitration's goal of "achiev[ing] streamlined proceedings and expeditious results." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Preston v. Ferrer*, 552 U.S. 346, 357–58 (2008)).  California's lawmakers have observed "a concerning and troubling trend" in recent years undermining this express goal.  The very parties imposing mandatory arbitration provisions in contracts of

---

[3] In further support of their position, plaintiffs cite an email from Barajas's case manager at JAMS on June 17 explaining that "[Both parties] received their Deposit Request on May [15], 2020. Initial fees were due (and are currently outstanding) at the same time" (Dkt. No. 68, Exh. C). Defendants, however, were not part of this email chain.

3

adhesion (usually in employment and consumer contexts) have then refused to pay the fees required to commence the proceedings. This practice "effectively stymie[s] the ability of [claimants] to assert their legal rights." S. Judiciary Comm. Hr'g on SB 707, 2019–2020, at 6 (Cal. Apr. 23, 2019).

To better enforce this federal policy, California's Code of Civil Procedure § 1281.97 now clarifies that a company's failure to timely pay arbitration fees constitutes a material breach of the agreement. And, if the drafting party materially breaches by failing to pay the fees "within 30 days after the due date," the consumer or employee may withdraw their claim from arbitration, seek adjudication in a court of appropriate jurisdiction, and recoup attorney's fees resulting from the breach. Under § 1281.99, the breaching party is also subject to monetary sanctions.

### 1. SECTION 1281.97 APPLIES HERE.

Defendants argue as a threshold matter that § 1281.97 does not grant plaintiffs' requested relief on two grounds: (1) the California Code of Civil Procedure only governs procedure within state court, and (2) Section 1281.97 may only waive arbitrations compelled under the California Arbitration Act, not the Federal Arbitration Act. Both arguments are unpersuasive.

*First*, § 1281.97 modifies a substantive right. "[A]rbitration is a matter of contract." *Rent-A-Center, West, Inc. v Jackson*, 561 U.S. 63, 67 (2010). The statute defines a drafting party's failure to pay arbitration fees "within 30 days after the due date" as a "material breach" of the contract. This law, on its face, modifies substantive state contract law. Recall that there is no federal general contract law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In diversity, the federal courts apply both state substantive law and outcome determinative procedural rules — unless Congress has spoken otherwise. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Hanna v. Plumer*, 380 U.S. 460, 467 (1965); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). For example, earlier in *this* case, defendants employed the California Code of Civil Procedure § 337 to argue that plaintiffs' claims were time barred (Dkt. No. 57 at 4–5). Here, § 1281.97 *is* outcome determinative (on the breach issue), and significantly so: its application (or not) decides whether the parties must

4

resolve their dispute in arbitration versus court. Further outcome determinative, the arbitration clause purports to limit the substantive relief available, prohibiting both public injunctive and class representative relief. *See Dekker*, 2020 WL 1429740 at *2. Section 1281.97 simultaneously modifies substantive contract law and substantially determines both the forum and the relief available. It is thus applicable here.

*Second*, defendants correctly recognize that they compelled arbitration under the FAA, not the California Arbitration Act, but here, this is a distinction without a difference. The FAA sits *atop* state law — it does not wholly displace it. The U.S. Supreme Court has repeatedly affirmed the "liberal federal policy favoring arbitration" that applies "notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 346 (citations omitted). Section 1281.97 is not "to the contrary" of this federal policy. Rather, in enacting the statute, it was the intent of the legislature to better *enforce* the federal policy of fast and inexpensive dispute resolution.

Recall that virtues of arbitration include "streamlined proceedings and expeditious results." *Ibid*. The legislature observed that the prior state of the law was inadequate in upholding these aims; it remained "unclear" what remedies consumers had in the event a drafting party "failed to pay for the arbitration in a *timely* matter." The amendments thus sought to "deter drafting parties from reneging on their obligation to pay" and "ensur[e] that the party that drafts the arbitration agreement *cannot delay* adjudication of a dispute by refusing to participate in, or pay for, arbitration." Assemb. Judiciary Comm. Hr'g on SB 707, 2019-2020 at 1, 5, 8 (Cal. June 18, 2019) (emphasis added).

Moreover, our court of appeals has found the principle embodied in § 1281.97 is consistent with the FAA. In *Sink v. Aden Enterprises*, an employer failed to timely pay its arbitration filing fees after repeated notices of the payment's due date, plus a warning (after the due date had passed) that the arbitrator would enter a default against the company if it did not promptly pay up. 352 F.3d 1197, 1198–99 (2003). The employer still did not pay, so the former employee went back to federal district court. The district court approved this move and our court of appeals affirmed.

5

Despite the employer's contentions that the FAA must be strictly construed "to move the parties . . . out of court and into arbitration as quickly and easily as possible," the panel rejected this reading, finding that the FAA "cannot sensibly be interpreted to require an order compelling arbitration here." Rather, guided by the legislative intent behind the FAA, our court of appeals found that accepting the employer's position would "allow a party refusing to cooperate with arbitration to indefinitely postpone litigation." Such a result runs contrary to "[o]ne purpose of the FAA's liberal approach to arbitration," namely, "the efficient and *expeditious* resolution of claims." These goals are "not served by . . . returning parties to arbitration upon the motion of a party that is already in default of arbitration." *Id.* at 1200–02 (citations omitted) (emphasis added). Finally, *Sink* is of particular relevance here because in enacting § 1281.97, the legislature explicitly declared "[i]t is the intent of the Legislature . . . to affirm the decision[] in . . . *Sink v. Aden Enterprises, Inc.* that a company's failure to pay arbitration fees . . . constitutes a breach of the arbitration agreement and allows the non-breaching party to bring a claim in court."[4] SB 707 § 1(f).

The legislative history broadly, along with the legislature's explicit reliance on *Sink*, show that California intended § 1281.97 to hold companies imposing mandatory arbitration agreements on employees and consumers to their word. Commence the arbitration (like you said you would) — and do so timely (within 30 days after the due date) — or waive arbitration. It is the company that drags its feet, not § 1281.97, that undermines "streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346.

2. **PAYMENT COMES DUE ON THE INVOICE DATE.**

One question now remains: what does "due date" mean? It is clear, and undisputed, that the drafting party gets a 30-day grace period *after* payment comes due to settle up with the

---

[4] The California legislature also sought to affirm the decisions in *Armendariz v. Foundation Health Psychcare Servs. Inc.*, 24 Cal. 4th 83 (2000) and *Brown v. Dillard's*, 430 F.3d 1004 (9th Cir. 2005). Those cases held that employees made to arbitrate cannot be required to bear any expense they would not bear if they had brought the action in court (*Armendariz*) and that an employer's refusal to participate in arbitration it had mandated constituted a breach of the arbitration agreement (*Brown*). This order does not discuss these cases as they are beside the immediate dispute.

arbitrator before § 1281.97 considers the party in material breach. But when does that grace period *begin* — is it the earliest due date or the latest due date that the arbitration provider will accept payment? And what happens if the arbitrator postpones the last due date? The legislature did not define "due date" for us, so we must turn again to legislative intent and relevant decisional law, applying them to the specific facts before us. In doing so, the answer seems clear.

The California legislature emphasized timely dispute resolution. The legislature acknowledged that § 1281.97's material breach provision was a "strict yet reasonable" response in light of the needless delay of arbitration. Assemb. Judiciary Comm. Hr'g on SB 707 at 9 (Cal. June 18, 2019). This language is instructive as to the lawmakers' intent. Balancing both sides' interests: on the one hand, contract drafters' reliance interests, and on the other hand, plaintiffs' interests in quick and efficient dispute resolution, the legislature found that the scales tipped in favor of plaintiffs. While material breach might seem "strict" it is nonetheless "reasonable."

The legislature expressly sought to *avoid* a "perverse incentive scheme" whereby ambiguity in the law allowed companies to delay adjudication, perhaps even affording them "an *incentive* to refuse to arbitrate claims . . . in the hope that the frustrated [employees and consumers] would simply abandon them." *Id.* at 8 (quoting *Brown v. Dillard's*, 430 F.3d 1004, 1012 (9th Cir. 2005)) (emphasis added).

Yet, this "perverse incentive scheme" remains a distinct possibility under defendants' theory of the due date. At the hearing, defense counsel admitted that, in their view, if JAMS hypothetically granted a due date extension after defendants missed a first given due date, § 1281.97's 30-day grace period would only begin after defendants missed the *second* due date (Dkt. No. 81 at 14). Under this view, the arbitrator could postpone time and again, delaying the 30-day grace period for as long as the arbitrator wished. This would subvert the whole point of the new law.

Finally, a similar action involving food delivery app Postmates illustrates how other arbitration providers have responded to the new California law. There, over ten thousand

former and current Postmates drivers filed individual arbitration demands against Postmates with the American Arbitration Association on February 15, 2020, pursuant to the mandatory arbitration provisions in their contracts. The AAA notified Postmates of the filings and gave a payment due date of March 16. *The AAA wrote that, subject to the newly enacted § 1281.97, "payment must be received by April 15, 2020 or the AAA may close the parties' cases," and that it would "not grant any extensions to this payment deadline."* Postmates, now owing over $4.6 million in initial filing fees, sought a TRO to enjoin the drivers from enforcing § 1281.97. The court denied Postmates' request, finding, among other things, that payment of filing fees would not irreparably harm Postmates, and that the balances of equities favored the drivers, who "have an interest in having their claims heard in a timely matter." *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 at *4, 9 (C.D. Cal. Apr. 15, 2020) (Judge Philip Gutierrez).

There, with Postmates owing over $4.6 million in filing fees for over ten thousand arbitrations, the court refused to temporarily suspend the due date and buy Postmates more time. Here, on the other hand, defendants owed little more than $15,000 across the eight disputes. The district court also echoed California's legislature when it weighed the competing interests and found that the drivers' prevailed. "[The drivers] have an interest in being permitted to pursue their wage and hour claims in arbitration, which is supposed to be a speedy and inexpensive alternative to litigation." *Id.* at *8 (internal quotations omitted). This decision, along with the clear legislative intent to prevent delays in commencing arbitration, points towards a strict enforcement of the 30-day grace period that begins upon defendants' receipt of invoice.

When AAA said payment was due by April 15 without extensions, else the arbitrators could close their case, the court enforced that deadline. This order agrees with AAA's view of § 1281.97. Here, the JAMS invoices stated that payment was due upon receipt. It is true that JAMS, perhaps in order to keep the business, was willing to let payment slide for a few weeks, but that doesn't change the fact that it was due and payable upon receipt. Defendants then had

8

1  30 days to pay or be in material breach, even if JAMS was willing to wait.  Waiting is delay,

2  and delay is exactly what the legislature sought to stop.

## CONCLUSION

Plaintiffs' motion to vacate the March 24 order, as far as it compelled plaintiffs Barajas, Rogers, Hulsey, Piini, and Hilliard to arbitrate, is **GRANTED**.  Per §§ 1281.97(d) and 1281.99(a) defendants **SHALL** pay plaintiffs' reasonable attorney's fees and costs incurred in bringing this motion.  The parties shall meet and confer and stipulate to the amount by **AUGUST 28 AT 5:00 P.M.**  A further case management conference will be held on **AUGUST 20 AT 11:00 A.M.** to get this case back on track.

**IT IS SO ORDERED.**

Dated: August 14, 2020.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE