1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7

8          NORTHERN DISTRICT OF CALIFORNIA

9

10    GERRIE DEKKER, et al.,

11              Plaintiffs,                        No.  C 19-07918 WHA

12         v.

13    VIVINT SOLAR, INC., et al.,                  **ORDER GRANTING
                                                   MOTION TO AMEND**
14              Defendants.

15

16                              **INTRODUCTION**

17         This unfair business practices case returns upon the court of appeals' determination

18    without explanation that we lack subject-matter jurisdiction.  Plaintiffs timely move to amend

19    to expressly allege jurisdiction under the Class Action Fairness Act.  The motion is **GRANTED**.

20                               **STATEMENT**

21         This case presents a unique posture, so it's worth starting at the beginning.  Defendant

22    Vivint Solar, Inc., in its various corporate forms, installs residential solar systems and sells

23    homeowners the electricity produced for a twenty year term.  Plaintiffs' complaint, however,

24    illuminates alleged liquidated damages clauses in Vivint's agreements, provisions which

25    impose harsh and unlawful penalties onto dissatisfied customers.

26         An order dated March 24, 2020 (Dkt. No. 47), reluctantly compelled all but two plaintiffs

27    to arbitrate, finding that though plaintiffs could not, in fact, be compelled to arbitrate their

28    claims for public relief under *McGill v. Citibank, N.A.*, the agreements had ineluctably

United States District Court
Northern District of California

1    delegated that question to the arbitrator.  2 Cal. 5th 945, 393 P.3d 85 (2017); *see also*, *Blair v.*

2    *Rent-A-Center*, 928 F.3d 819 (9th Cir. 2019); *Henry Schein, Inc. v. Archer & White Sales, Inc.*,

3    586 U.S. ___, 139 S. Ct. 524, 527 (2019).  But as the agreements had not clearly delegated

4    formation defects to the arbitrator, the same order found that plaintiff Juan Bautista had not

5    agreed to arbitrate, given Vivint had the native Spanish speaker, with virtually no English

6    proficiency, sign an *English*-form contract after conducting negotiations in Spanish.  Cal. Civ.

7    Code § 1632(b); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  The

8    March 24 order also found plaintiff Gerrie Dekker, whose agreement contained no arbitration

9    clause, traversed the statute of limitations, at least on the pleadings.

10   Vivint timely appealed the denial of arbitration and plaintiff Bautista moved to amend his

11   complaint.  A May 11 order denied Vivint's motion to stay pending appeal, and a May 24

12   order granted leave to amend in part.  In brief, plaintiffs proceeded to discovery on two

13   theories, seeking injunctive relief both from Vivint's unlawful liquidated damages provisions

14   and from those agreements never actually formed due to the language barrier (Dkt. No. 63).

15   If the language snafu wasn't enough, though, Vivint walked into another snag.  Those

16   plaintiffs compelled to arbitrate did so.  But Vivint missed JAMS's fee deadline, a material

17   breach of the arbitration agreements under California's recently enacted Code of Civil

18   Procedure Section 1281.97.  So an August 14 order vacated the March 24 order as far as it

19   compelled select plaintiffs to arbitrate and invited those plaintiffs back into this forum.  479 F.

20   Supp. 3d 834 (N.D. Cal. 2020).  True to form, Vivint timely appealed and a September 15

21   order denied its motion to stay.

22   So then, this is how things stood.  Some named plaintiffs were at JAMS.  Many,

23   including Bautista and Dekker, remained here.  Vivint's parallel appeals pended.  And,

24   discovery plodded along, though we vacated the remaining deadlines because COVID-19

25   foiled the planned February 2021 trial.

26   Our court of appeals then issued an unexpected order on January 25:

27           We dismiss this case for lack of jurisdiction.  Oral argument
         scheduled for February 2, 2021 is vacated.  We remand to the

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> district court for it to determine if Plaintiffs should be granted
> leave to amend the complaint.

As it were, our parties had submitted supplemental briefing regarding subject-matter jurisdiction on appeal, suspecting that the court of appeals questioned whether plaintiffs' complaint and amended complaint had adequately alleged jurisdiction under the Class Action Fairness Act (Case No. 20-15572, Dtk. Nos. 40, 41, 43).  But our court of appeals' delphic prescription leaves us, for the most part, to speculate.  Indeed, the parallel appeal still appears to pend before the court (Case No. 20-16584).

Undaunted, however, plaintiffs have promptly moved to amend (Dkt. No. 112).  The proposed complaint adds little new matter.  Rather it formalizes, which the prior complaints had not done, plaintiffs' reliance on CAFA jurisdiction, alleging the putative class size, minimal diversity, and amount in controversy.  Defendants oppose.  This motion is appropriate for disposition on the papers.

**ANALYSIS**

Given the prior vacatur of all deadlines, defendants concede that Rule 15's lenient, and not Rule 16's elevated, standard governs here (Dkt. No. 95).  Rule 15 dictates that leave to amend shall be freely given "when justice so requires."  Absent undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility, leave should be granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Vivint does not seriously dispute that plaintiffs timely amend in good faith.  Nor could it — Vivint acknowledged subject-matter jurisdiction in the joint case-management statement (Dkt. No. 39), the undersigned labored with the understanding that CAFA conferred jurisdiction here, and Vivint relied on that jurisdiction to compel arbitration under the Federal Arbitration Act.  Capitalizing on the turn of events, however, Vivint challenges the proposed amendments as futile.

The Class Action Fairness Act confers subject-matter jurisdiction over a proposed class action of more than one hundred members putting more than five million dollars in controversy with any plaintiff diverse from any defendant.  *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 788 (9th Cir. 2018).  We interpret CAFA "expansively." *Ibarra v. Manheim Invests.*, 775 F.3d 1193, 1197 (9th Cir. 2014).

3

1      Vivint contests our putative class size and amount in controversy but no one disputes the

2      minimal diversity between our California plaintiffs and Utah defendants.  As detailed below,

3      the proposed amendments establish an adequate putative class and sufficient amount in

4      controversy.

5          **1.    AMENDMENT AN ADEQUATE REMEDY.**

6      Before diving in, however, we must assure ourselves that amendment may, in fact,

7      remedy plaintiffs' deficient allegations of subject-matter jurisdiction.  It may.  Although Rule 8

8      requires "a short and plain statement of the grounds for the court's jurisdiction," 28 U.S.C.

9      Section 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon

10     terms, in the trial or appellate courts."  And recall, Rule 15 bestows leave to amend freely

11     "when justice so requires."  Thus our court of appeals has held that defective allegations of

12     jurisdiction may be remedied via amendment, even on appeal.  *Snell v. Cleveland, Inc.*, 316

13     F.3d 822, 828 (9th Cir. 2002) (citing *Molnar v. NBC*, 231 F.2d 684, 686 (9th Cir. 1956)); *see*

14     *also* 5 WRIGHT & MILLER, FED. PRACT. & PROC. CIV. § 1214 (3d ed. 2004).

15         **2.    PLAINTIFFS' BURDEN.**

16     Though a viable path, we next must discern plaintiffs' burden if they are to establish

17     jurisdiction by amendment.  Vivint contests the new allegations of jurisdiction with brief

18     evidence and contends that plaintiffs must respond to a preponderance.  This dispute requires

19     some unpacking.

20     To begin, Vivint is incorrect that plaintiffs must go beyond their amended complaint.

21     True, the party invoking federal jurisdiction must establish it.  *Lewis v. Verizon Commc'ns*, 627

22     F.3d 395, 399 (9th Cir. 2010).  But allegations *can* support jurisdiction.  After all, jurisdiction

23     generally begins on the face of the well-pleaded complaint.  *See, e.g.*, *Exxon Mobil Corp. v.*

24     *Allapattah Servs.*, 545 U.S. 546, 559 (2005).  A notice of removal requires only "a short and

25     plain statement" of its grounds.  Sufficient allegations in the notice will support jurisdiction

26     unless contested.  And, Rule 8 requires no more of a complaint.  For that reason the United

27     States Supreme Court has long held that "[w]hen a plaintiff invokes federal-court jurisdiction,

28     the plaintiff's amount-in-controversy allegation is accepted if made in good faith."  *See Dart*

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    *Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 87 (2014) (citing *St. Paul Mercury Indem. Co.*

2    *v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).

3          That said, a contested removal will require evidence.  *Ibid.*  On a motion to remand, then,

4    a defendant must establish jurisdiction by a preponderance.  *See Fritch*, 899 F.3d at 793;

5    *Ibarra*, 775 F.3d at 1198; *Rodriguez v. AT&T Mob. Servs.*, 728 F.3d 975, 980–81 (9th Cir.

6    2013); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

7          So too, defendant's contest of *original* jurisdiction will require a showing by plaintiff.

8    The limited nature of federal jurisdiction "precludes the idea that jurisdiction may be

9    maintained by mere averment or that the party asserting jurisdiction may be relieved of his

10   burden by any formal procedure."  Allegations of jurisdiction, when challenged, must be

11   supported by competent proof to a preponderance of the evidence.  *McNutt v. G.M. Acceptance*

12   *Corp. of Indiana*, 298 U.S. 178, 189 (1936).  All allegations except for the amount in

13   controversy it seems.  "[W]here the amount in controversy is in doubt, the Supreme Court has

14   drawn a sharp distinction between original jurisdiction and removal jurisdiction."  *Gaus v.*

15   *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), *overruled on other grounds*, *Dart*, 574 U.S. at

16   87–89.  To refute original jurisdiction, "[i]t must appear to a legal certainty that the claim is

17   really for less than the jurisdictional amount . . . ."  *St. Paul*, 303 U.S. at 288–89.

18         In short, our proposed amended complaint alone may support subject-matter jurisdiction,

19   though that may be contested with competent evidence.  In such event, the preponderance

20   carries us forward, except that allegations for the amount in controversy will stand unless

21   refuted to a legal certainty.

22         **3.    A SUFFICIENT PUTATIVE CLASS.**

23         The amended complaint proposes a primary class of all Californians who entered into a

24   residential solar agreement with Vivint and a sub-class of those Californians who signed an

25   English agreement after conducting the negotiations in another language.  In support, the

26   amended complaint alleges (as had the prior two complaints) that Vivint had installed solar

27   systems in more than one hundred fifty thousand homes nationwide by the end of 2018, with

28   about one third of Vivint's cumulative power production located in California.  From this, the

1    amendments allege a primary class of over fifty thousand members and a thirteen hundred

2    member subclass.  The amended complaint further alleges that Vivint has held two thousand

3    Californians in default and that six thousand have sought to cancel their agreements (Prop.

4    Amend. Compl. at ¶¶ 13, 77–78, 81).  Suffice it to say, we will have more than one hundred

5    putative class members.

6         Vivint protests that few putative class members have accrued claims yet.  This

7    misapprehends the March 24 order and ignores the May 20 order, and it helps to begin with the

8    substance of plaintiffs' claims.  The amended complaint (as did the prior complaints) primarily

9    seeks relief from Vivint's alleged liquidated damages provisions, a slew of fees and costs

10   thrust on customers who seek early termination of the twenty-year agreement term, including

11   the sum of the remaining monthly payment (minus a *de minimis* discount), any other amounts

12   due, and system removal fees (Prop. Amend. Compl. at ¶ 48).

13        In practical effect, these provisions place a dissatisfied customer in a quandary: keep the

14   solar system and make twenty years of payments, or forfeit the solar system and the electricity,

15   yet still pay just about the remaining twenty-year sum.  That is, the agreements extract *all*

16   twenty years of payment by foreclosing any rational alternative.  This, the May 20 order

17   explained, is exactly what California prohibits.  *See Blank v. Borden*, 11 Cal. 3d 963, 969–72,

18   524 P.2d 127 (1974).

19        Because such liquidated damages provisions would coerce monthly payments from the

20   beginning, it makes sense that a customer's claim for relief would accrue at formation.  *Cf.*

21   *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979).  So the March

22   24 and May 20 orders addressed the statutes of limitations and observed that California's

23   common law claim accrual carries a battery of equitable exceptions, including continuing

24   accrual.  Rather than concluding, as Vivint now reads, that plaintiffs' claims only accrued *upon*

25   Vivint's later enforcement, the prior orders instead held that those later efforts *restarted* the

26   clock, keeping this suit timely (at least on the pleadings) (Dkt. Nos. 47, 63).  *Aryeh v. Canon*

27   *Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191–93, 292 P.3d 871 (2013) (quotation omitted); *Howard*

28   *Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 818–22, 23 P.3d 601 (2001).

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1       For our present purposes, this means that Vivint's California customers have already

2   accrued claims for relief from the alleged liquidated damages clauses and that the statute of

3   limitations does not (at this stage at least) bar them.  Invalidation of Vivint's liquidated

4   damages provisions would relieve all fifty three thousand alleged putative primary-class

5   members and invalidation of Vivint's "contracts" would release all thirteen hundred members

6   of the translation subclass.  Regardless, the proposed complaint also alleges six thousand

7   putative class members who have requested cancellation of their agreements and two thousand

8   who have been held in default.  Even under Vivint's narrowed construction, these several

9   thousand claims have accrued and the putative class meets CAFA's floor.

10      Vivint nevertheless persists that its arbitration agreements will cut our class size to fewer

11  than one hundred members.  Off the cuff this objection fails as illogical.  If the anticipated

12  compulsion to arbitrate divested us of subject-matter jurisdiction, then we too would lack

13  jurisdiction to compel arbitration in the first place.  Vivint can't have it both ways.

14  Unsurprisingly, this argument also fails on the law.  Even more established than the principle

15  that a defense does not grant subject-matter jurisdiction is the tenet that "if [federal]

16  jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by

17  subsequent events."  *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)

18  (per curiam) (citing, among others, *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537 (1824)); *see*

19  *Louisville & Nashville Ry. Co. v. Mottley*, 211 U.S. 149 (1908).

20      Vivint's declaration of class size relies on this errant arbitration argument and so is not

21  probative of our operative class size, though it also seems to admit that about eight hundred

22  customers have requested cancellation.  This alone would satisfy CAFA's class size (Dkt. No.

23  116-5).  Regardless, even excluding arbitration-bound class members, the thirteen hundred

24  who did not agree to arbitrate due to the language barrier will remain in this forum.  Under any

25  of the frameworks presented, our putative class will exceed one hundred members.

26      **4.      AN ADEQUATE AMOUNT IN CONTROVERSY.**

27      CAFA's requisite five million dollar amount in controversy isn't just an estimate of

28  liability.  *Lewis*, 627 F.3d at 400.  It "is the amount at stake in the underlying litigation."  This

United States District Court
Northern District of California

1   naturally includes any payment by defendant, excluding interest and costs, such as damages

2   and attorney's fees under any relevant fee-shifting statute or contract.  Yet it also includes any

3   *relief* to which plaintiffs would be entitled if successful, such as the costs of complying with an

4   injunction.  *Fritsch*, 899 F.3d at 793–94 (quotes omitted).  With some basic arithmetic and

5   inferences, the proposed complaint alleges well beyond five million dollars in controversy.

6        Recall again the underlying allegations.  A Vivint customer can either make the twenty

7   years of payments and get the electricity, or terminate the agreement early, trigger the unlawful

8   liquidated damages provisions, receive no more electricity, and pay nearly the same amount.

9   The proposed complaint offers (as did the prior complaints) the examples of several plaintiffs

10  caught in this web.  Vivint demanded around forty thousand dollars from plaintiff Dekker and

11  nearly twenty three thousand each from plaintiffs Rogers and Bautista.  It actually extracted

12  twenty one thousand dollars from plaintiff Barajas and over seventeen thousand from plaintiff

13  Hilliard (Prop. Amend. Compl. at ¶¶ 17–26, 48).

14       This sample supports the ready inference that a cancellation request or default would

15  provoke *at least* a ten thousand dollar demand from Vivint.  Plaintiffs' attempt to invalidate the

16  basis for that demand, the liquidated damages provisions, would undercut Vivint's right to

17  collect.  Such financial relief may not make its way into plaintiffs' pockets, but it would come

18  off Vivint's books.  That puts it in controversy.  *See ibid*.

19       How many plaintiffs could expect relief from a ten thousand-dollar-plus demand?  The

20  proposed complaint alleges Vivint foisted its invalid liquidated damages clauses onto fifty

21  three thousand putative class members.  An injunction would relieve *all* from coercive

22  demands, potentially totaling five hundred thirty million dollars.  But suppose we apply our

23  conservative estimate of Vivint's demand to only those six thousand members who have

24  already requested cancellation.  This still yields a sixty million dollar tab.  And, what if we

25  further limit ourselves to just the two thousand Californians Vivint has already held in default?

26  A twenty million dollar amount in controversy remains.  Cut the class even further to the

27  thirteen hundred plaintiffs who never agreed to Vivint's terms, putting their *entire* financial

28  relationship in dispute, our low estimate of relief still places thirteen million dollars in

8

United States District Court
Northern District of California

1    controversy.  Or, perhaps look from the other direction.  At ten thousand dollars per class

2    member, plaintiffs need only five hundred members to invoke CAFA.  On the unrefuted

3    allegations of several to tens of thousands of class members, plaintiffs sail past the five million

4    dollar mark.

5    But don't just take plaintiffs' word for it.  Vivint acknowledges that its average customer

6    defaulted for thirty-thousand plus dollars, and that the average buyout fee for cancellation

7    came to sixteen thousand dollars.  That average default bill by the two thousand defaulted

8    customers yields sixty million in controversy.  And, the average buyout times the six thousand

9    cancellation requests yields a ninety six million dollar total.  Even plaintiffs' worst-case

10   scenario, Vivint's assertion that only seven hundred ninety five Californians sought to cancel

11   their agreements (an undercount which does not appear to capture defaults or other disputes),

12   generates nearly thirteen million dollars in controversy (Dkt. No. 116-5).  All this without yet

13   considering plaintiffs' entitlement to attorney's fees under California Code of Civil Procedure

14   Section 1021.5, which offers fees in successful suits to vindicate the public interest.  In sum,

15   Vivint has not, to a legal certainty, cut the amount in controversy to below five million dollars.

16   *St. Paul*, 303 U.S. at 288–89.

17       **5.    REPLY EVIDENCE.**

18   Plaintiffs submit in reply several hundred pages in support of the putative class size and

19   amount in controversy.  Given our conclusions above, and given defendants have had no

20   opportunity to respond, this order does not rely on the new evidence.

21                                **CONCLUSION**

22   Leave to amend is **GRANTED**.  The March 18 hearing is **VACATED**.  Our subject-matter

23   jurisdiction under CAFA is confirmed.  The parties shall please inform our court of appeals.

24       **IT IS SO ORDERED.**

25

26   Dated:  March 3, 2021.

27                                        _____

28                                        WILLIAM ALSUP
                                         UNITED STATES DISTRICT JUDGE

9