Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
mmatern@maternlawgroup.com
jboxer@maternlawgroup.com

Corey B. Bennett (SBN 267816)
**MATERN LAW GROUP, PC**
1330 Broadway, Suite 428
Oakland, California 94612
Telephone: (510) 227-3998
Facsimile: (310) 531-1901
cbennett@maternlawgroup.com

*Attorneys for Plaintiffs, individually, and on behalf of all others similarly situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, KAREN BARAJAS as executor of the Estate of Thompson Bryson, MARLENE ROGERS, DANIEL THOMPSON, JAE CHONG, MARCI HULSEY, CINDY PIINI, PHYLLIS RUNYON, GENNIE HILLIARD, and JUAN BAUTISTA, individually and on behalf of all others similarly-situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VIVINT SOLAR, INC., VIVINT SOLAR HOLDINGS, INC., VIVINT SOLAR DEVELOPER, LLC, and VIVINT SOLAR PROVIDER, LLC, DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: 4:19-cv-07918-WHA <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR EQUITABLE AND PUBLIC INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Gerrie Dekker, Karen Barajas, as executor of the estate of Thompson Bryson, as well as Marlene Rogers, Daniel Thompson, Jae Chong, Marci Hulsey, Cindy Piini, Phyllis Runyon, Gennie Hilliard, and Juan Bautista ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC ("Defendants" or "Vivint Solar"):

## **INTRODUCTION**

1. Vivint Solar specifically targets vulnerable consumers—the elderly, active duty military personnel, low-income participants in the California Alternate Rates for Energy ("CARE") program, non-native English speakers, and at-risk borrowers.

2. Vivint Solar employs an aggressive door-to-door salesforce, trains its representatives to deceive consumers, incentivizes their deception, and traps consumers into long-term obligations that encumber their real property and threaten them with financial ruin.

3. At consumers' front doors and around their kitchen tables, Vivint Solar sales representatives falsely promise consumers they will only pay for the energy they use. Touting the simplicity of a single, lower energy bill, sales representatives boast about the ease of transferring the Solar System if a consumer sells her home, which is also false. Further, claiming the Solar System will actually increase property value, and they assure consumers installation and customer service is their forte. It most certainly is not.

4. Vivint Solar's primary product is the residential power purchase agreement ("PPA")—an increasingly convoluted contract for the power generated by Vivint Solar's photovoltaic cells (i.e. solar panels) and the accompanying equipment (collectively, "Solar Systems"). The PPA provides for a 20-year term, and has evolved from a few pages (of microscopic print) to 20-plus-page electronic documents, the terms of which consumers are rarely shown until it is too late.

5. Vivint Solar advertises and represents that it will design, install, and maintain these Solar Systems "for free." What consumers learn later is that in exchange for "free"

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE, SUITE 200 MANHATTAN BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

Solar Systems and the promised energy savings, consumers are obligated to **purchase all of the power produced by the Solar System** *installed on their homes* leading to multiple energy bills and higher costs. Even when a Solar System is offline or broken, regardless of the cause, the Vivint Solar can still charge the consumer estimated monthly rates under the PPA.

6.      Perhaps worst of all, consumers learn—often when attempting to sell their homes—that Vivint Solar utilizes UCC-1 Financing Statements which lead reasonable consumers to believe there is a lien on their homes. These filings identify consumers as "debtors"—a deliberate tactic aimed at scaring consumers and which also deters prospective home buyers. Consequently, consumers are trapped. Either they must give in and pay Vivint Solar extortionate prices to buy out their contracts or have the Solar Systems removed, or reduce the selling price of their homes to accommodate buyers that do not want the Solar Systems.

7.      Vivint Solar admits its stranglehold over customers to investors: "When customers decide to move or sell the home prior to the end of their contract term, the customer contracts allow our customers to transfer their obligations to the new home buyer. If the home buyer does not wish to assume the customer's obligations, the contract allows us to *require* the customer to purchase the system."[1]  In this way, Vivint Solar's business operates as equal parts hostage situation and pyramid scheme.

8.      Therein lies the PPAs' fatal flaw. Contrary to Vivint Solar's representations, the PPAs contain onerous terms regarding early termination or transfer of the agreement. Specifically, the contracts contain "buy out payments," "prepayment prices," and "default payments" that consumers will be required to pay in the event of early termination of their contract (collectively, "termination fees"). These termination fees generate substantial revenues and profits for Vivint Solar, but pose grave financial danger to consumers.

---

[1] Vivint Solar 2018 Annual Report, at p. 2 (emphasis added), available online at https://s2.q4cdn.com/820306591/files/doc_financials/2018/annual/Vivint_Solar_2018_Annual_Report.pdf.

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

9.     The termination fees constitute unlawful penalties that are void and unenforceable under California Civil Code section 1671; unlawful and unfair under California's Unfair Competition Law, Business & Professions Code section 17200, *et seq.* ("UCL"); and unconscionable under California's Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*

10.    Moreover, Vivint Solar violated the California Translation Act, Civil Code section 1632(b)(1), by failing to provide PPAs and contract cancellation notices in the language in which they were negotiated and which otherwise comply with these statutory requirements.

11.    Plaintiffs therefore seek relief from this Court including to (a) permanently enjoin Vivint Solar from collecting the termination fees and from using unlawful liquidated damages provisions in its agreements, (b) provide all Class Members the opportunity to rescind their agreements, and (c) provide all members of the Translation Class with restitution, damages and all other relief available under Civil Code § 1780 and Business and Professions Code § 17203.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction in this action because Defendants entered into PPAs for Solar Systems with Plaintiffs and other Class members in Contra Costa County and throughout the Northern District of California. Further, Plaintiffs complaint is not subject to arbitration under *Blair v. Rent-A-Ctr., Inc.,* 928 F.3d 819 (9th Cir. 2019) (upholding California's *McGill* rule) because it seeks public injunctive relief.Plaintiffs' claims arise under 42 U.S.C. § 1981 and this Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because the proposed class consists of at least 100 members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and one member of the proposed class is a citizen of a state different from that of one defendant. No mandatory CAFA exclusion applies.

13.    Plaintiffs allege on information and belief that the California Class contains

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-3-

SECOND AMENDED CLASS ACTION COMPLAINT

1  more than 53,000 members and the Translation Class contains more than 1,300 members.

2  Plaintiffs further allege on information and belief that, from these class members, Vivint

3  Solar has received nearly 6,000 cancellation requests, held nearly 2,000 customers in

4  default with tens of millions of dollars in associated default prices, and transferred more

5  than 9,300 solar systems between customers (presumably, in conjunction with real

6  property transactions).

7        14.     Plaintiffs allege on information and belief that the tens of thousands of dollars

8  Vivint Solar charges, or threatens to charge, each customer in order to cancel an agreement

9  represent a reasonable estimate of the value of the relief sought. As detailed in paragraphs

10  17-27, Vivint Solar sought to charge, or did charge, the named Plaintiffs tens of thousands

11  of dollars.  When aggregated, this relief amounts to tens of millions of dollars.

12        15.     CAFA's amount in controversy requirement is met given the value of the

13  public injunctive relief sought, the costs of complying with said injunctive relief, and

14  "attorney's fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transp.*

15  *Co. of Arizona LLC*, 899 F.3d 785, 793-94 (9th Cir. 2018) (quoting *Chavez v. JP Morgan*

16  *& Chase Co.*, 888 F.3d 413, 417 (9th Cir. 2018); see also *Anderson v. Seaworld Parks and*

17  *Entertainment, Inc.*, 132 F. Supp. 3d 1156, 1161 (9th Cir. 2015) (citing *Int'l Padi, Inc. v.*

18  *Diverlink*, No. 03-56478, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) ("[I]n

19  determining the amount in controversy, we may also include the value of the requested

20  injunctive relief to either party.").

21        16.     Venue is proper in this district pursuant to 28 U.S.C. section 1391 because a

22  substantial part of the unlawful conduct alleged in this Complaint occurred in this district.

23                                   **PARTIES**

24        **A.**     **Plaintiffs**

25        17.     Plaintiff Gerrie Dekker is a California citizen and resident domiciled in

26  Antioch, California. Dekker entered into a PPA in September 2012. She was a PG&E

27  CARE program participant at the time. In 2017, after discovering that she was improperly

28  billed while her Solar System was offline for roughly two years, Ms. Dekker requested

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-4-

SECOND AMENDED CLASS ACTION COMPLAINT

1   removal of the system, but Vivint Solar demanded approximately $40,000.

2       18.   Plaintiff Karen Barajas, as executor of the estate of Thompson Bryson, is a

3   California citizen and resident domiciled in Oroville, California. Mr. Bryson entered into

4   a 20-year PPA in February 2016 when he was terminally ill and visibly ailing. He was a

5   PG&E CARE program participant at the time. In July 2017, Mr. Bryson died. Following

6   his death, his daughter, Plaintiff Barajas, prepared the property for sale and learned that

7   the Solar System was a significant impediment. Vivint Solar denied Plaintiff Barajas'

8   request to rescind the contract—demanding instead that Plaintiff Barajas "buy out" the

9   contract and threatening to put a lien on the property. Ultimately, Plaintiff Barajas was left

10  with no viable choice but to pay $21,000 to buy out the contract. During this time, the

11  estate expended time and financial resources to its damage as a direct result of the delayed

12  sale.

13      19.   Plaintiff Marlene Rogers is a California citizen and resident domiciled in

14  Lake Elsinore, California. Ms. Rogers entered into a Residential Solar Power Purchase

15  Agreement on or about October 07, 2016, after Vivint Solar represented that the Solar

16  System would be 100% transferable to a new home, that excess panels would be removed

17  at no cost to the consumer, and the transfer process would be "quick and easy." Ms. Rogers

18  saw none of the terms in writing at the time of purchase. Rather, the entire transaction took

19  place on the sales representative's electronic tablet with no opportunity for Ms. Rogers to

20  review or negotiate the terms, print a hard copy, or otherwise verify the oral

21  representations. When Ms. Rogers attempted to sell her home, the title company informed

22  her that Vivint Solar had put a lien on her property. Ms. Rogers contacted the company to

23  complain and was informed that a buyout of the Solar System would have to wait until the

24  sixth anniversary of the agreement and would cost upwards of $23,000. Ms. Rogers is

25  unable to sell her house for fair market value because buyers are wary of Vivint Solar and

26  she remains financially burdened and entangled by the agreement's unconscionable terms.

27      20.   Plaintiff Daniel Thompson is a California citizen and resident domiciled in

28  Clovis, California. Relying on Vivint Solar's representation that he would only pay for the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-5-

SECOND AMENDED CLASS ACTION COMPLAINT

power he used, Mr. Thompson entered into a PPA in August 2014. Thompson was not given an opportunity to review the agreement's terms. Mr. Thompson attempted to rescind the contract after receiving bills from PG&E as well as Vivint Solar, but Vivint Solar refused. Mr. Thompson is now stuck with a Solar System that he does not want, and he is financially burdened and entangled by the agreement's unconscionable terms.

21.   Plaintiff Jae Chong is a California citizen and resident domiciled in Lake Elsinore, California. Mr. Chong entered into a PPA in August 2016 with no opportunity to review or negotiate the terms, print a hard copy, or otherwise verify the oral representations as the entire transaction took place on the sales representative's tablet. Mr. Chong later attempted to rescind the contract, but Vivint Solar refused. Instead, Vivint Solar demanded an exorbitant amount of money to buy out the contract. Mr. Chong is now stuck with a Solar System that he does not want, and he is unable to sell his house for fair market value because buyers are wary of Vivint Solar.

22.   Plaintiff Marci Hulsey is a California citizen and resident domiciled in Madera, California. Relying on Vivint Solar's representation that consumers only pay for the power that they use, Ms. Hulsey entered into a PPA in February 2014. The entire transaction took place on the sales representative's tablet, with no opportunity to review or negotiate the terms, print a hard copy, or otherwise verify the oral representations. After receiving unexpectedly high bills and learning that Vivint Solar charged for all power produced by the panels, Ms. Hulsey requested cancellation of the contract. However, the only way out, she was told, was to buy the panels outright–a very expensive proposition. Plaintiff Hulsey is now stuck with a Solar System that she does not want, and she is financially burdened and entangled by the agreement's unconscionable terms.

23.   Plaintiff Cindy Piini is a California citizen and resident domiciled in Lake Elsinore, California. Piini entered into a Residential Solar Power Purchase Agreement in September 2016, and the entire transaction took place on the sales representative's tablet, with no opportunity to review or negotiate the terms, print a hard copy, or otherwise verify the oral representations. Following an eight-month installation process, and after realizing

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-6-

SECOND AMENDED CLASS ACTION COMPLAINT

the true nature of the Solar System, Ms. Piini attempted to cancel her contract. However, Vivint Solar was nonresponsive when she called or texted to complain. Ms. Piini is now saddled with a Solar System that she does not want and financially burdened with the potential fees to cancel the contract.

24.     Plaintiff Phyllis Runyon is a California citizen and resident domiciled in Stockton, California. In June 2017, Clint Williams (badge no. 94791), a Vivint Solar sales representative, came to her home offering a "free" Solar System and promising she would only pay for what she uses. During that first meeting, Williams advised Plaintiff Runyon to replace her roof prior to installation, which she did with his assurances that it was necessary and would not slow down installation. Months later, after several occasions during which Vivint Solar employees were discovered on her property without prior notice, in or around December 2017, Williams presented Plaintiff Runyon with an electronic tablet and instructed her to sign what was actually a PPA without allowing her to see the terms. Despite Plaintiff Runyon's requests, she was not given a copy of the PPA until September 2018—long after cancellation would have been possible. By that time, Plaintiff Runyon had received her first billing statements and was stunned at the increase. After getting the run-around from customer service, Plaintiff Runyon discovered on her own that Vivint Solar had represented to PG&E that the Solar System usage was 13,000 kWh, when in fact it was only 9,700. Furthermore, Plaintiff Runyon's Solar System consists of 39 panels on her roughly 1600 square-foot home, whereas her neighbor's 2100 square-foot home only has 19 panels, resulting in excessive monthly charges from Vivint Solar's over-installation.

25.     Plaintiff Gennie Hilliard is a California citizen and resident currently domiciled in Imperial, California. Ms. Hilliard entered into a PPA in or around August 2013. When the Solar System did not deliver as promised, Ms. Hilliard attempted to have it removed. Eventually, Ms. Hilliard had to sell her house due to a work relocation, and she was forced to pay Vivint Solar's buyout fees in the amount of $17,491 because the

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE, SUITE 200
MANHATTAN BEACH, CA 90266

home buyers did not want the Solar System. During this process, Vivint Supervisor Dallin West admitted to Plaintiff's husband that many sales representatives had been misleading consumers regarding the ability to transfer or remove the Solar System.

26.    Plaintiff Juan Bautista is a California citizen and resident domiciled in Moorpark, California. He is a native Spanish speaker with virtually no proficiency in English. In or around July 2014, a Vivint Solar sales representative came to his house. The sales representative spoke Spanish very well and conducted all negotiations in Spanish. Specifically, he told Plaintiff the Solar System was "totally free for 20 years" and lured him into signing the PPA. Knowing that Plaintiff Bautista could not understand the PPA, the Vivint Solar representative made certain to highlight the "0"—circling the pen multiple times—to deceive Plaintiff Bautista and induce his signature. Plaintiff Bautista was not given a Spanish language version of the PPA or the cancellation notice, nor was a translated explanation offered, at the time of signing.  Notwithstanding the lack of enforceable agreement, Vivint Solar continued to bill Plaintiff Bautista exorbitant sums for the power generated by his system, and seeking to hold him in default. In 2018, Plaintiff Bautista received a bill from Vivint Solar for more than $2,000, with a threat that failure to pay within 30 days would increase the debt to nearly $18,000. In 2019, Plaintiff Bautista received correspondence from Vivint Solar, threatening to hold him liable for $22, 946.99 plus the costs of removal, court costs, and "applicable taxes."

**B.    Defendants**

27.    Defendant Vivint Solar, Inc. is a limited liability corporation formed under the laws of Delaware. Vivint Solar, Inc.'s principal office is located at 3301 North Thanksgiving Way, Suite 500, Lehi, Utah 84043. According to its filings with the Securities and Exchange Commission ("SEC"), Vivint Solar, Inc. operates through its subsidiaries, including Vivint Solar Holdings, Inc., which in turn own "subsidiaries and other entities related to various solar energy system financing vehicles." It conducts business throughout California, and is engaged in the business of leasing, servicing, and

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

maintaining Solar Systems.

28.     Defendant Vivint Solar Holdings, Inc. ("Vivint Holdings") is a wholly-owned subsidiary of Vivint Solar, Inc., and, according to SEC filings, wholly or partially owns subsidiaries and other entities related to various solar energy system financing vehicles. One of these subsidiaries is Vivint Solar Developer, LLC, through which Vivint Holdings conducts business throughout California.

29.     Defendant Vivint Solar Developer, LLC ("Vivint Developer") is a limited liability corporation formed under the laws of Delaware. It is managed by Vivint Solar, Inc. and its principal office is located at 1800 West Ashton Blvd., Lehi, Utah 84043. Vivint Developer conducts business, and maintains permits in municipalities, throughout California. Vivint Developer sells, services, and otherwise maintains the Solar Systems and/or the power generated by the Solar Systems.

30.     Defendant Vivint Solar Provider, LLC ("Vivint Provider") is a limited liability corporation formed under the laws of Delaware and a wholly-owned subsidiary of Vivint Solar, Inc. On information and belief, Vivint Provider provides administrative, collection and other management services for various Vivint Solar financing subsidiaries.

31.     The true names and capacities of DOES 1 through 50, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such DOE Defendants under fictitious names.  Plaintiffs are informed and believe, and thereon allege, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that Plaintiffs and the class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants.  Plaintiffs will seek leave of the court to amend this Complaint to allege their true names and capacities when ascertained.

32.     Plaintiffs are informed and believe, and thereon allege, that the conduct, actions, and omissions described herein were willful, known, and intended to violate law, and that officers, directors, and managing agents of Defendants, and each of them, approved, ratified, and directed the conduct in order to unjustly enrich themselves at the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-9-

SECOND AMENDED CLASS ACTION COMPLAINT

expense of consumers.

33.     At all relevant times, Defendants participated in the acts described herein and, each of them, were the agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

34.     At all relevant times, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership, and common enterprise, and acted within the course of, scope of, and in pursuance of said joint venture, partnership, and common enterprise.

35.     At all relevant times, the acts and omissions of various Defendants, and each of them, agreed with or contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries, and damages alleged herein.

36.     At all relevant times, Defendants, and each of them, approved of, condoned, or otherwise ratified each and every one of the acts or omissions described herein, or aided and abetted the acts and omissions of each and every one of the other Defendants, thereby proximately causing the damages as herein alleged.

## FACTUAL ALLEGATIONS

### A.     Vivint Solar's Residential Solar Power Purchase Agreement

37.     The PPA is a standardized 20-year contract prepared by Vivint Solar, and its terms and conditions are not subject to negotiation. As such, Vivint Solar enjoys a superior bargaining position and uses that position to trap consumers in these contracts of adhesion.

38.     Under the PPA, Vivint Solar receives income from the sale of electricity, along with tax credits and incentives.

39.     The only mention of credits, rebates, allowances, tax benefits, or certificates is in a single paragraph wherein the consumer purportedly disclaims any credits, rebates, incentives, allowances, or certificates that are attributed, allocated, or related to the Solar System, the energy, or environmental attributes thereof, to Vivint Solar.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

40.     Vivint Solar agrees to "complete all required inspections" in one paragraph and then in a subsequent paragraph obligates the consumer to represent, warrant, and agree that their "roof is in good condition and repair, without material defects," and is sufficient for installation of the Solar System.

41.     Contrary to what Vivint Solar promises in sales pitches, advertising, and marketing materials, the PPA includes a unilateral authorization for Vivint Solar to "make filings and recordings with relevant governmental authorities as may be necessary to provide notice of and to take security interest" in Solar Systems. This includes financing statements and fixture filings.

42.     Vivint Solar controls the act of signing the PPA. In recent years, it has utilized an electronic signature on an electronic tablet, which method substantially affects and frustrates consumers' ability to review and understand the terms of agreement. Consumers are not given physical copies of the PPA at the time of signing, nor do sales managers review the terms with them on the electronic tablets, nor are they given two physical copies of the Notice of Cancellation.

43.     Vivint Solar's supervisors, officers, or managers train sales representatives not to scroll through every page of the PPA at the time of execution.

44.     Vivint Solar's supervisors, officers, or managers train sales representatives to cursorily and deceptively describe arbitration as "faster and cheaper" than the courts when prompting consumers to initial the arbitration provision.

**B.     Termination Fees**

45.     Plaintiffs and class members entered into iterations of Vivint Solar's PPA which are substantially similar. With each iteration, Vivint Solar slightly modified the language regarding customer payments in the event that the customer moves or otherwise terminates the contract prior to the contract's 20-year term. Each iteration of the contract requires defined payments from the consumer in the event of early termination. These defined payments all constitute unlawful liquidated damages under California law.

46.     Plaintiff Hilliard's contracts includes a termination fee related to sale of the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

property upon which the solar system is installed, which is subject to Vivint Solar's unilateral determination: "[I]f we determine that Property Transferee is not adequately creditworthy to assume Your obligations under this Agreement, or Property Transferee refuses to assume Your Obligations under this Agreement, We may terminate this Agreement on written notice to You and You will be obligated to pay us an amount equal to Four Dollars ($4) per watt installed, subject to a reduction of five percent (5%) per year." In addition, Plaintiff Hilliard's contract includes the following termination fee if the agreement is cancelled or terminated for other reasons, other than due to a force majeure event or seller default: "The 'Buy-Out Payment' shall be an amount equal to Seven Dollars ($7) per watt installed, subject to a reduction of five percent (5%) per year." (emphasis in original).

47.     The PPAs of Plaintiffs Dekker, Thompson, Hulsey, and Bautista are nearly identical to Plaintiff Hilliard's.

48.     The newer iterations of PPAs of Plaintiffs Rogers, Chong, Piini, Runyon and Barajas include the following termination fee related to sale of the property upon which the solar system is installed: "The 'Prepayment Price' will be equal to the sum of the remaining monthly payments of the Energy Price (based on Our reasonable estimation of the energy to be produced) due to Us during the Term, discounted by five percent (5%)." (emphasis in original). They also include the following "Default Payment" termination fee: "an amount equal to the sum of: (1) the Prepayment Price, (2) any other amounts due and owing under this Agreement, including (without limitation) late fees, (3) Our fees and costs associated with removal of the System from Your Property, (4) loss of expected benefits from the System, including (without limitation) benefits and sources of revenue associated with the System Interests, and (5) Our other documented losses."

49.     Vivint Solar imposed or threatened to impose these termination fees on Plaintiffs and members of the proposed class. Vivint Solar collected significant revenues from imposing these termination fees on Plaintiffs and members of the proposed class.

50.     It is neither impracticable nor extremely difficult to calculate the purported

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

damages, if any, that Vivint Solar claims to suffer as a result of Plaintiffs' termination of their contracts. The termination fees provided for in the Solar System contracts are not a reasonable measure or approximation of such damages and do not provide fair average compensation for any damages. Moreover, the termination fees are unreasonable and unconscionable. On information and belief, Vivint Solar did not conduct a reasonable inquiry to calculate fair average compensation for losses, if any, that it incurs, would incur, or has incurred by virtue of any customer terminations. The termination fees were not negotiated or discussed with Plaintiffs or the members of the proposed class.

51.     The termination fees imposed by Vivint Solar are unconscionable, void, and unenforceable under Civil Code sections 1670.5, 1671(b), and 1671(d), constitute an unlawful, unfair, and deceptive practice under the UCL, and violate the CLRA, including without limitation Civil Code sections 1770(a)(14) and 1770(a)(19).

## C.     **Vivint's Door-to-Door Sales Model**

52.     Vivint Solar "primarily uses a direct-to-home sales model."[2] Employees or independent contractors, often called "sales managers," work on a commission basis, thereby incentivizing aggressive tactics as they go door-to-door in pursuit of the next sale. These deceptive, high-pressure tactics are aimed at inducing consumers into signing PPAs.

53.     Vivint Solar has also recently "begun compensating based on system size"— thereby incentivizing over-installation.[3]

54.     On its website, Vivint Solar describes a "simple, painless, and free" process from beginning to end, including consultation, design, permitting, installation, and activation.[4]

55.     Vivint Solar's "Residential Customer Operations Manual" directs sales managers to target "qualifying homes," deliver a "Solar Renewable Energy Presentation," explain the "Customer Agreement," and describe local success stories. The Operations

---

[2] *Id.* at p. 39 (last visited on October 28, 2019)
[3] *Id.* at 14. (last visited on October 28, 2019)
[4] https://www.vivintsolar.com/solar-made-simple (last visited on October 28, 2019).

-13-

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

Manual further directs sales managers to introduce himself and the company by presenting his company badge and door-to-door sales license.

56.    From the highest levels of the company, sales managers are directed and incentivized to deliver pitches that go far beyond what is stated on the website and the Operations Manual. For example, the sales model permits and encourages overstating energy cost savings. Specifically, sales managers represent that consumers will enjoy significant savings off current utility bills and much lower rates than competitors. Vivint Solar urges consumers to "lock in [an] energy rate for the next 20 years" by "simply paying a low, predetermined price for every kilowatt-hour your solar panels generate."

57.    Vivint Solar's supervisors, officers, or managers train sales representatives to target low and fixed-income individuals, such as those on public assistance programs like the California Alternate Rates for Energy (CARE) Program, non-native English speakers, and active duty military.

### D.   <u>Vivint Solar's False and Deceptive Representations</u>

58.    Vivint Solar's supervisors, officers, or managers train sales representatives to misrepresent energy savings to potential customers by omitting or distorting key details of utility bills.

59.    For example, Vivint Solar requires sales managers to inform consumers that their energy rate will <u>not increase by more</u> than 2.9% each year, which suggests they may see smaller increase or none at all, when, in fact, their power rate will <u>increase</u> by 2.9% each year.

60.    Vivint Solar further deceives consumers by promising them that, if they ever sell their home, the company will remove the Solar System for no charge and cancel the contract.

61.    Vivint Solar permits and encourages sales managers to deceive consumers into thinking a Solar System is a significant home upgrade, will increase the home's value, and will make the home easier to sell. The truth is exactly the opposite.

62.    Vivint Solar's sales model permits sales managers to conceal or omit material

-14-

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

facts, including, but not limited to the following:

    a. Upon entering into a PPA, Vivint Solar will file a UCC Statement or a fixture filing in their home's real property records identifying the consumer as a "debtor," thereby clouding the title;

    b. Vivint Solar, not the consumer, will receive all credits, rebates, incentives, allowances, tax benefits, or certificates related to the Solar System;

    c. Any credits, rebates, incentives, allowances, tax benefits, or certificates Vivint Solar receives will never be credited against the price of the Solar System.

63.    In California, Vivint Solar Vice President of Sales, Jordan Williams, was asked by an ABC 10 interviewer whether the Solar System adds value to one's home. "Yeah, it can," calling it an "asset on top of your house that has to add value to it."[5]

64.    Vivint Solar publishes testimonials or commercials on a YouTube channel that is available to the public. These videos make the following claims that reinforce its deceptive sales and marketing practices:

    a. Vivint Solar "has delivered on all their promises…"[6]

    b. "No-brainer…How could you walk away from it?...Bottom line is you're going to save some money."[7]

    c. Claiming other solar companies had hidden costs in previous sales pitches, but only Vivint had no costs. "They would be like our new energy company" for 20 years.[8]

---

[5] https://www.youtube.com/watch?v=eO61OhR9P6Y (last visited on April 4, 2019)

[6] https://www.youtube.com/watch?v=ihK5wN_P898 (last visited on September 13, 2018).

[7] https://www.youtube.com/watch?v=K7U7EQ8O_NA (last visited on November 20, 2019)

[8] https://www.youtube.com/watch?v=RKdWiUeoAC0 (last visited on September 13, 2018).

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE, SUITE 200
MANHATTAN BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

d.  "You don't have all of the worries and you just pay them instead of your local energy company…[9]

e.  How much will I save with a solar power system? "Bottom line: we charge less than your current utility. Today, many of our customers are saving 10-30%..."[10]

f.  What if the person buying my home doesn't want solar? Claiming homes with solar sell faster than those without, monthly energy savings would be an incentive for a purchaser.[11]

g.  GO™ by Vivint Solar Big Game Commercial: "Save 20-40% on your power bill."[12]

65.     Vivint Solar represents to consumers that a PPA is a superior option to purchasing electricity from a utility. On its website, Vivint Solar recently represented "No upfront cost, save up to 20%* on your utility rate."[13] In giant font above the form to request a quote, it restated this "up to 20%*" savings language. At the bottom of the page, in barely legible font, it states, "On average, Vivint Solar customers across the United States save up to 20% with Vivint Solar's PPAs and Leases relative to their current utility rates…." On a different page, it currently states, "Most Vivint Solar customers pay 20-30% less than their current utility rate, and they also get price protection."[14]

66.     Consumer complaints reveal widespread common violations that feature promises of significant savings and a pay-only-for-what-you-use appeal, but ultimately

---

[9] https://www.youtube.com/watch?v=Q1GEeUQn4bw (last visited on September 13, 2018).

[10] https://www.youtube.com/watch?v=xr9qIiH_rR0 (last visited on September 13, 2018).

[11] https://www.youtube.com/watch?v=QehklH7Fe7o (last visited on September 13, 2018).

[12] https://www.youtube.com/watch?v=FxJIOwSfrBE (last visited on September 13, 2018).

[13] https://www.vivintsolar.com/solar-plans (last visited on September 13, 2018).

[14] "Pay less for power ~~TM~~", ~~,~~ http://vintsolar.com/go-solar.html (last visited on September 13, 2018).

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

turn out to be false. Because Vivint Solar fails to provide consumers with hard copies of the PPAs, and by training sales managers to avoid discussing or providing an opportunity to review the terms at the time of execution, consumers are unable to ascertain that they are being lured into a trap.

67.     In December 2017, the non-partisan consumer watchdog Campaign for Accountability released a report[15] following a year-long investigation that concluded,

> [P]romises of clean energy at reduced cost have proven deceptive. Unscrupulous actors have exploited vulnerable populations, preying on the elderly and those on fixed-incomes. Companies have misled consumers about the true costs of installing solar panels, provided shoddy craftsmanship, and left homeowners with higher utility costs, all while forcing them to sign unconscionable contracts that leave little possibility of recourse.

68.     In March 2018, the New Mexico Attorney General filed a 17-count complaint against Vivint Solar alleging fraud, deceptive business practices, and racketeering.[16]

69.     In October 2019, the New Jersey Division of Consumer Affairs announced that Vivint Solar agreed to pay roughly $122,000 in penalties, investigative costs, and legal fees following complaints from homeowners of misrepresented potential savings, faulty installations, unlawfully obtained credit reports, and poor customer service.[17] Acting Director of Consumer Affairs Paul R. Rodriguez said, "Vivint portrayed itself as an affordable alternative for New Jersey consumers looking to lower their energy bills, but sales reps allegedly misled consumers about solar energy contracts and failed to

---

[15] https://campaignforaccountability.org/work/what-consumer-complaints-reveal-about-the-solar-industry/

[16] Art Raymond, *New Mexico A.G. files fraud, racketeering suit against Vivint Solar,* Deseret News, https://www.deseret.com/2018/3/9/20641469/new-mexico-a-g-files-fraud-racketeering-suit-against-vivint-solar

[17] Jeff Goldman, *Vivint Solar agrees to pay $122K fine over charges of deceptive door-to-door sales practices,* NJ.com, https://www.nj.com/news/2019/10/vivint-solar-agrees-to-pay-122k-fine-over-charges-of-deceptive-door-to-door-sales-practices.html

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

provide essential information that would have allowed consumers to make informed decisions." Additionally, Vivint Solar agreed to train employees to not trick customers.

### E.   Vivint Solar's Misrepresented Fixture Filings

70.   On the first page of the PPA, under "Our Promises" and "Our Promises to You," the PPA states, "We will not place a lien on Your Property."

71.   Then, buried in the agreement–where consumers are not allowed to look at the time of execution–the PPA contains the following statements:

> We will not place a lien on Your Property. You authorize Us to make filings and recordings with relevant governmental authorities as may be necessary to provide notice of and to take security interest in Our ownership in the System and the System Interests, and Our right to access Your Property, including (without limitation) financing statements, UCC-1 financing statements and fixture filings.

> Notwithstanding the manner in which the System is attached to Your Property, **nor any fixture filing by Us,** You and We hereby agree that the System and the System Interests shall remain Our sole personal property and shall not be deemed or characterized as a "fixture" or any part of the "realty", as those terms may be defined by applicable law. It is further agreed that the installation of the System shall not be a repair, remodel, alteration, conversion, modernization of, or addition to, Your Property.

(emphasis added).

72.   "'Fixture filing' means the filing of a financing statement covering goods that are or are to become fixtures … The term includes the filing of a financing statement covering goods of a transmitting utility which are or are to become fixtures." Cal. Com. Code section 9102(40).

73.   "'Fixtures' means goods that have become so related to particular real property that an interest in them arises under real property law." Cal. Com. Code section 9102(41).

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

74.     Contrary to its representations to consumers, the fixture filings by Vivint Solar are effectively liens because they identify the consumer as a "debtor" and Vivint Solar as a "secured party." The effect of these filings is the clouding of title, which delays, interferes with, or precludes the sale or refinancing of real property. Vivint Solar's written and oral representations assure consumers that the Solar Systems will not affect the transfer of their real property, but rather boost property values and otherwise render real property more attractive to prospective buyers.

75.     Consumers are typically unaware of these filings until and unless they seek to refinance their mortgages or sell their homes. When they do, banks and title companies discover that the homeowner is identified as a "debtor" on the UCC filings that Vivint Solar filed with County Recorders. These false "debtor" and "secured party" designations, which imply the existence of a lien, are made despite the fact that consumers owe no debt to Vivint Solar.

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and/or (b)(1), (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

77.     The proposed California Class is defined as follows:

> All persons in California who entered into a Residential Solar Power Purchase Agreement with Vivint Solar.

78.     The proposed UCL Translation Class is defined as follows:

> All persons in California who signed only an English-language Residential Solar Power Purchase Agreement with Vivint Solar after negotiations were conducted in a language other than English.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

79.     Excluded from the Classes are: (A) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (B) the Judge to whom this case is assigned and the Judge's staff; and (C) anyone employed by counsel in this action. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in another way.

**A.     Numerosity and Ascertainability**

80.     While the exact number of Class members is uncertain, the size of the Classes can be estimated with reasonable precision, and the number is great enough that joinder is impracticable.

81.     As of December 31, 2018, Vivint Solar reported that it had installed Solar Systems at approximately 154,600 homes nationwide, with approximately 34% of their cumulative megawatts located in California.[18] Accordingly, the number of Class members is likely in the tens of thousands, and the disposition the Class members' claims in a single action will provide substantial benefits to all parties and to the Court. Class members are readily identifiable from information and records in possession, custody, or control of Defendants and Class members.

**B.     Typicality**

82.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, entered into a PPA with Defendants, who designed, manufactured, installed, operated, and maintained the Solar Systems. The representative Plaintiffs, like all Class members, were damaged by Defendants misconduct in that they have suffered actual damages as a result of their purchase of the Solar System and the imposition of Termination Fees. Furthermore, the factual bases of Defendants' misconduct are common to all Plaintiffs and represent a

---

[18]

https://s2.q4cdn.com/820306591/files/doc_financials/2018/annual/Vivint_Solar_2018_Annual_Report.pdf at pages 2, 17

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

common thread of misconduct resulting in injury to all Class members.

### C. **Adequate Representation**

83.   Plaintiffs are members of the Class and will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions.

84.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

### D. **Predominance of Common Issues**

85.   There are numerous issues of law and fact common to Plaintiffs and Class members that predominate over any issue affecting only individual Class members. Resolving these common issues will advance resolution of the litigation as to all Class members. These common legal and factual issues include:

    a.   Whether Vivint Solar's Termination Fees are illegal, void and unenforceable contractual penalties pursuant to Cal. Civil Code. section 1671(d);

    b.   Whether Vivint Solar's damages, if any, are extremely difficult or impracticable to determine when consumers terminate their PPA;

    c.   Whether Vivint Solar conducted a reasonable endeavor, prior to imposing the Termination Fees or including them in the PPA, to fix fair average compensation for losses, if any, that it suffers when customers terminate their contract;

    d.   Whether Vivint Solar's Termination Fees are unconscionable;

    e.   Whether Vivint Solar's Termination Fees violate the UCL;

    f.   Whether Vivint Solar's Termination Fees violate the CLRA;

    g.   Whether negotiations for the Solar System were conducted in a language other than English and whether Vivint Solar failed to provide translations of the PPA in the language of negotiation;

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

h.  Whether Vivint Solar violated the California Translation Act, Civil Code section 1632;

i.  Whether Plaintiffs and Class members are entitled to declaratory relief;

j.  Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, a preliminary or permanent injunction; and

k.  Whether Plaintiffs and Class members are entitled to an award of reasonably attorneys' fees and costs.

**E.  <u>Superiority</u>**

86.  Plaintiffs and Class members have suffered, and will continue to suffer, harm as a result of Defendants' uniformly unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

87.  Without a class action, many, if not most, Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy at law. Because of the modest size of individual Class members' claims, it is likely that few, if any, Class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members' damages will go uncompensated, and Defendants' misconduct and ill-gotten gains will persist and go unpunished.

88.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

89.  Defendants have acted uniformly manner with respect to the Plaintiffs and Class members.

90.  Class-wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants' acts apply generally to the class, and inconsistent adjudications as to Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-22-

SECOND AMENDED CLASS ACTION COMPLAINT

interests. Class-wide relief assures fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in Defendants' discharge of their duties to perform corrective action regarding the Solar Systems.

## **FIRST CLAIM FOR RELIEF**

**Unlawful Liquidated Damages**

**Cal. Civil Code section 1671(d)**

**(Injunctive relief only)**

91.   Plaintiffs re-allege the factual allegations in the preceding paragraphs above as if fully set forth herein.

92.   Vivint Solar's termination fees are impermissible liquidated damages provisions under California law. The termination fees themselves, the contractual provisions that provide for them and their imposition and collection by Vivint Solar violate Cal. Civil Code section 1671(d) and are unlawful, void, and unenforceable under that statute.

93.   Civil Code section 1671(d) states that a contractual provision, in a contract for the retail purchase or rental of personal property or services primarily for the party's personal, family, or household purposes, liquidating damages for the breach of contract, is void except that the parties to such contract may agree on an amount that shall be presumed to be the amount of the damage sustained by a breach thereof, when, from the nature of the cause, it would be impracticable or extremely difficult to fix that actual damage. The PPA is a contract for the rental of personal property or for services primarily for personal, family, or household use by Plaintiffs and members of the proposed class.

94.   It would not be impracticable, nor would it be extremely difficult, to determine what, if any, damages Vivint Solar suffers due to termination of Plaintiffs and Class Members' PPAs. The liquidated damages in the PPA do not reflect a reasonable endeavor by Vivint Solar to fix fair average compensation for any harm that Vivint Solar would suffer, may suffer, or has suffered, if any from, contract termination.

95.   The PPA is a contract of adhesion drafted by Vivint Solar and provided on a

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

"take it or leave it" basis with no opportunity for any prospective customers to negotiate any of the terms and conditions. The termination fees contained in these contracts are liquidated damages that fail to comply with the standards set forth in Civil Code section 1671(d), and therefore constitutes impermissible contractual penalties.

96.     Vivint Solar's imposition and collection of termination fees from Plaintiffs and the members of the class violations, and at all relevant times has violated, section 1671(d).

97.     Plaintiffs and the members of the class have suffered an injury in fact resulting in the loss of money or property as a result of Vivint Solar's unlawful collection of liquidated damages alleged herein. Pursuant to Civil Code section 1671(d), Plaintiffs seek an order of this Court preliminarily and permanently enjoining Vivint Solar from further enforcement and collection of termination fees as alleged herein.

## SECOND CLAIM FOR RELIEF

### Unfair Business Practices in Violation of the Unfair Competition Law

### Cal. Bus. & Prof. Code sections 17200 *et seq.*

### (Injunctive relief only)

98.     Plaintiffs re-allege the factual allegations of the preceding paragraphs above as if fully set forth herein.

99.     Vivint Solar's conduct constitutes an unfair business practice within the meaning of Bus. & Prof. Code sections 17200, *et seq*.

100.    Vivint Solar violated the "unfair" prong of the UCL by requiring clients to enter into contracts of adhesion that include termination fees provisions, and by imposing and collecting the termination fees.

101.    Vivint Solar's practices with respect to termination fees violate the "unfair" prong of the UCL because the termination fees: (1) constitute unfair and wrongful penalties inconsistent with the language and policy of Civil Code section 1671; and (2) constitute unconscionable provisions, in violation of various laws and policies recognized by the California legislature and the California courts, including without limitation Civil

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

1    Code section 1670.5 and the CLRA.

2        102.   Vivint Solar's practices with respect to termination fees also violate the

3    "unfair" prong of the UCL because the utility of the termination fees is significantly

4    outweighed by the gravity of the harm that they impose on consumers. The termination

5    fees have limited or no utility as compared with alternatives that would more fairly

6    measure the harm, if any, incurred by Vivint Solar when a client terminates their contract.

7    The gravity of the harm that the termination fees impose on consumers is substantial in

8    that they exceed the actual amount of harm, if any, incurred by Vivint Solar. Through their

9    imposition and collection of the termination fees, Vivint Solar has been massively and

10   unjustly enriched. Vivint Solar's termination fees also violate the "unfair" prong of the

11   UCL because their inclusion in the PPA, imposition, and collection are and at all relevant

12   times have been, oppressive, unscrupulous, or substantially injurious to customers.

13       103.   Vivint Solar's practices with respect to termination fees also violate the

14   "unfair" program of the UCL because the termination fees, the provisions of the PPA

15   imposing the termination fees, and Vivint Solar's enforcement of them through the

16   imposition and collection of the termination fees causes substantial harm that is not

17   outweighed by countervailing benefits to consumers or competition, and consumers could

18   not reasonably have avoided the harm.

19       104.   Vivint Solar also violates the "unfair" prong of the UCL by conducting

20   negotiations in a language other than English and failing to provide a translation of the

21   language of negotiation as required by the California Translation Act, Cal. Civil Code §

22   1632. Plaintiff Bautista is a native Spanish speaker with virtually no proficiency in

23   English. He was targeted by a Vivint Solar sales representative who spoke Spanish very

24   well and conducted all negotiations in Spanish, but who did not provide Mr. Bautista with

25   a Spanish translation of the PPA and contract cancellation notice, as required by California

26   Civil Code section 1689.5, *et seq.* Accordingly, the PPA and cancellation notice, both of

27   which are agreements covered under the California Translation Act, Civil Code section

28   1632(b)(1), were not prepared or provided in a language understandable by Plaintiff

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

Bautista. Plaintiffs allege that this unfair practice is common to the UCL Translation Class.

105.   Plaintiffs and Class Members have suffered an injury in fact resulting in the loss of money or property as a result of having paid the termination fees.

106.   Pursuant to Bus. & Prof. Code section 17203, Plaintiffs seek an order of this Court permanently enjoining Vivint Solar from continuing to engage in their unfair and unlawful conduct as alleged herein.

## THIRD CAUSE OF ACTION

### Violation of the California Consumers Legal Remedies Act

### Cal. Civil Code sections 1750 *et seq.*

### (Injunctive relief only)

107.   Plaintiffs re-allege the factual allegations of the preceding paragraphs above as if fully set forth herein.

108.   Vivint Solar has engaged in deceptive practices, unlawful methods of competition or unfair acts as defined by Civil Code section 1750, et seq., to the detriment of Plaintiffs and members of the proposed California subclass. Plaintiffs and members of the California subclass have suffered harm as a proximate result of the violations of law and wrongful conduct of Vivint Solar alleged herein.

109.   Vivint Solar intentionally, knowingly, and unlawfully perpetrated harm upon Plaintiffs and members of the California subclass by inserting unconscionable, unenforceable, and illegal provisions in their PPA in violation of Civil Code section 1770(a)(19), and by enforcing those provisions. By inserting unconscionable, unenforceable, and void termination fees in the PPA, and then enforcing those termination fees, Vivint Solar also violated Cal. Civil Code section 1770(a)(14), which prohibits them from representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

110.   Vivint Solar's policy and practice with respect to their inclusion of termination fees in the PPA and their collection of termination fees is unlawful, unethical, oppressive, fraudulent, and malicious. The gravity of harm to all consumers from Vivint

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

SECOND AMENDED CLASS ACTION COMPLAINT

Solar's policies and practices far outweighs any purported utility those policies and practices have.

111.    Plaintiffs and Class Members suffered harm as a proximate result of the violations of law and wrongful conduct of Vivint Solar alleged herein and will continue to suffer such harm if Vivint Solar's illegal practices are not abated.

112.    Under Cal. Civil Code section 1780(a)(2) and 1780(a)(5), Plaintiffs and Class Members seek injunctive and equitable relief, and any other relief that Court deems proper, for Vivint Solar's violations of the CLRA. Plaintiffs have mailed an appropriate demand letter consistent with Cal. Civil Code section 1782(a) and Vivint Solar failed to take corrective action within 30 days of receipt of the demand letter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, request that the Court order the following relief and enter judgment against Defendants as follows:

A.    Enjoining Defendants from further enforcement and collection of the termination fees;

B.    Declaring that Defendants' sales practices are unfair and lawful, thereby rendering all PPAs unconscionable;

C.    Declaring that this action is a proper class action, certifying the Class, designating Plaintiffs as representatives of the Class, and appointing Plaintiffs' attorneys as Class Counsel;

D.    Enjoining Defendants from continuing the unfair business practices alleged herein, including those that violate California Civil Code section 1632(b), requiring Defendants to submit to independent audits of its sales and energy tracking practices, or otherwise eliminate unfair business practices;

E.    Ordering Defendants to pay an award of reasonable attorneys' fees and costs of this action;

F.    Ordering such other and further relief as the Court deems necessary, just, and proper.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

G.     For attorney's fees under California Code of Civil Procedure § 1021.5 because this action will result in the enforcement of an important right affecting the public interest and because (a) a significant benefit, whether pecuniary or nonpecuniary, will be conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not, in the interest of justice, be paid out of the recovery, if any.

DATED: March 5, 2021                    Respectfully submitted,


By: */s/ Corey B. Bennett*
Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
mmatern@maternlawgroup.com
jboxer@maternlawgroup.com

Corey B. Bennett (SBN 267816)
**MATERN LAW GROUP, PC**
1330 Broadway, Suite 428
Oakland, California 94612
Telephone: (510) 227-3998
Facsimile: (310) 531-1901
cbennett@maternlawgroup.com

*Attorneys for Plaintiffs, individually, and all others similarly situated*

SECOND AMENDED CLASS ACTION COMPLAINT

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: March 5, 2021                    Respectfully submitted,

By: <u>*/s/ Corey B. Bennett*</u>
Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
mmatern@maternlawgroup.com
jboxer@maternlawgroup.com

Corey B. Bennett (SBN 267816)
**MATERN LAW GROUP, PC**
1330 Broadway, Suite 428
Oakland, California 9461
Telephone: (510) 227-3998
Facsimile: (310) 531-1901
cbennett@maternlawgroup.com

*Attorneys for Plaintiffs, individually, and all others similarly situated*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-29-

SECOND AMENDED CLASS ACTION COMPLAINT