Fred Norton (SBN 224725)
Bree Hann (SBN 215695)
George C. Harris (SBN 111074)
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, CA 94607
Telephone: (510) 906-4907
Fax: (510) 906-4910
fnorton@nortonlaw.com
bhann@nortonlaw.com
gharris@nortonlaw.com

Attorneys for Defendants
VIVINT SOLAR, INC., VIVINT SOLAR
HOLDINGS, INC., VIVINT SOLAR DEVELOPER, LLC, AND
VIVINT SOLAR PROVIDER, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GERRIE DEKKER, KAREN BARAJAS as executor of the Estate of Thompson Bryson, MARLENE ROGERS, DANIEL THOMPSON, JAE CHONG, MARCI HULSEY, CINDY PIINI, PHYLLIS RUNYON, GENNIE HILLIARD, and JUAN BAUTISTA, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>          v.<br><br>VIVINT SOLAR, INC., VIVINT SOLAR HOLDINGS, INC., VIVINT SOLAR DEVELOPER, LLC, and VIVINT SOLAR PROVIDER, LLC, DOES 1 through 50, inclusive,<br><br>                       Defendants. | Case No.  3:19-CV-07918-WHA<br><br>**DEFENDANTS' (1) MOTION FOR JUDGMENT ON THE PLEADINGS AND (2) WITH REGARD TO PLAINTIFF BAUTISTA, MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:        May 20, 2021<br>Time:        8:00 a.m.<br>Courtroom:  12, 19th Floor<br>Judge:      The Honorable William H. Alsup |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**
**(1) FOR JUDGMENT ON THE PLEADINGS AND (2) WITH REGARD TO**
**PLAINTIFF BAUTISTA, TO COMPEL ARBITRATION OR**
**IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 20, 2021, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William H. Alsup, located at 450 Golden Gate Avenue, Courtroom 12, San Francisco, California 94102, Defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC (collectively, "Vivint Solar") will and hereby do:  (1) move for judgment on the pleadings and (2) with regard to Plaintiff Bautista, move to compel arbitration and in the alternative, for judgment on the pleadings.  Vivint Solar's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Request for Judicial Notice and exhibits thereto, the pleadings and other papers on file in this action, and any other evidence and argument that the parties may present in briefing or at the hearing.

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND .............................................................................. 3

    A.    Vivint Solar's PPAs Allow Customers to Reap the Benefits of Solar Power Without Having to Own or Purchase Costly Solar Panels................................. 3

    B.    The Plaintiffs Executed Four Versions of the PPAs, Which Can Be Grouped Into Two Sets.................................................................................................... 4

    C.    Vivint Solar's Customers Have at Least Two Alternatives Available to Them to Perform Under the PPAs........................................................................... 5

        1.    A Property Transfer Allows the Customer to Take Ownership of the Solar Photovoltaic System............................................................................. 6

        2.    Customers Can Take Ownership of the Solar Photovoltaic System Even When There Is No Sale of the Property................................................... 7

III.    LEGAL STANDARD ........................................................................................ 8

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNLAWFUL LIQUIDATED DAMAGES. ...................................................................................................... 9

        A.    The Termination Provisions Are Not Liquidated Damages Provisions Because They Are Alternatives to Performance....................................... 9

        B.    The PPA Termination Fees Are Not Liquidated Damages Because They Are Not Triggered by a Breach of the Contract. ....................................... 12

        C.    Plaintiffs Have Failed to State a Claim That the Termination Fees Constitute Unlawful Liquidated Damages Because They Have Not Alleged Any Breach of the Agreement. ............................................................... 15

V.    PLAINTIFFS' OTHER CLAIMS BASED ON AN ALLEGATIONS THAT THE PPA TERMINATION FEE PROVISIONS ARE UNLAWFUL ALSO FAIL AS A MATTER OF LAW ........................................................................................... 16

VI.    ANY CLAIMS OF DECEPTIVE SALES PRACTICES ARE FACIALLY BARRED BY THE STATUTORY AND CONTRACTUAL LIMITATIONS PERIODS ........................ 17

VII.    THE COURT SHOULD GRANT VIVINT SOLAR'S MOTION TO COMPEL ARIBTRATION BY PLAINTIFF BAUTISTA OR IN THE ALTERNATIVE, GRANT VIVINT SOLAR JUDGMENT ON THE PLEADINGS ON MR. BAUTISTA'S CLAIMS ............................................................................ 19

    A.    The Court Should Grant Vivint Solar's Motion to Compel Arbitration by Plaintiff Bautista. ...................................................................................... 19

    B.    Plaintiff Bautista's Claims Fail as a Matter of Law....................................... 20

VIII.    CONCLUSION ................................................................................................. 23

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Anderson, McPharlin & Connors v. Yee*,
135 Cal. App. 4th 129 (2005) ....................................................................................13, 15

5

6

*Aryeh v. Canon Bus. Solutions, Inc.*,
55 Cal.4th 1185 (2013) ......................................................................................................17

7

*Asencio v. Miller Brewing Co.*,
283 Fed. Appx. 559 (9th Cir. 2008)...................................................................................22

8

*Asencio v. Miller Brewing Co.*,
2006 WL 8446875 (C.D. Cal. August 11, 2006) ...............................................................22

9

10

*Bauer v. Atlantis Events, Inc.*,
645 F. App'x 545 (9th Cir. 2016) ......................................................................................11

11

*Beasley v. Wells Fargo Bank*,
235 Cal. App. 3d 1383 (1999) ...........................................................................................18

12

13

*Beeman v. Anthem Prescription Mgmt., LLC*,
689 F.3d 1002 (9th Cir. 2012) ...........................................................................................11

14

*Blank v. Borden*,
524 P.2d 127 (Cal. 1974) ........................................................................................ *passim*

15

16

*Bothwell v. Abbott Laboratories, Inc.*) (*In re Vaccine Cases*),
134 Cal. App. 4th 438 (2005) ......................................................................................21, 23

17

*Brown v. Blackbaud, Inc.*,
2018 WL 9619430 (C.D. Cal. Nov. 6, 2018)....................................................................16

18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal.4th 163, 937 P.2d 527 (1999) ................................................................................21

19

20

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) .............................................................................................8

21

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ...........................................................................................12

22

23

*Chodos v. West Publ'g Co.*,
292 F.3d 992 (9th Cir. 2002) ......................................................................................13, 15

24

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ...........................................................................................19

25

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990) .............................................................................................12

26

27

*Emp'rs Ins. of Wausau v. Granite State Ins. Co.*,
330 F.3d 1214 ....................................................................................................................12

28

*Fageol Truck & Coach Co. v. Pac. Indem. Co.*,
   18 Cal. 2d 748 (1941) ...................................................................................................18

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ........................................................................................9

*Free Range Content, Inc. v. Google Inc.*,
   2016 WL 2902332 (N.D. Cal. May 13, 2016) ....................................................13, 15

*Han v. Mobil Oil Corp.*,
   73 F.3d 872 (9th Cir. 1995) ..........................................................................................18

*Hutchison v. Yahoo! Inc.*,
   396 Fed. Appx. 331 (9th Cir. 2010)..............................................................................11

*ING Bank, fsb v. Ahn*,
   717 F.Supp.2d 931 (N.D. Cal. 2010) ...........................................................................20

*Jaquez v. Prot. One Alarm Monitoring, Inc.*,
   2014 WL 962601 (Cal. Ct. App. Mar. 12, 2014)..........................................................11

*Landayan v. Washington Mut. Bank*,
   2009 WL 3047238, (N.D. Cal. Sept. 18, 2009) ...........................................................22

*Madden v. Kaiser Foundation Hospitals*,
   17 Cal.3d 699 (1976) ....................................................................................................19

*Mahlum v. Adobe Sys. Inc.*,
   2015 WL 124663 (N.D. Cal. Jan. 8, 2015) .........................................................9, 11, 12

*McSherry v. Block*,
   880 F.2d 1049 (9th Cir. 1989) ...............................................................................11, 12

*Morris v. Redwood Empire Bancorp*,
   128 Cal. App. 4th 1305 (2005) ...............................................................................9, 13

*Ochoa v. McDonald's Corp.*,
   133 F. Supp. 3d 1228 (N.D. Cal. 2015) .......................................................................12

*Ramos v. Westlake Services LLC*,
   242 Cal.App.4th 674 (2015) .........................................................................................19

*Randas v. YMCA of Metro. Los Angeles*,
   17 Cal. App. 4th 158 (1993) .........................................................................................19

*Ryti v. State Farm Gen. Ins. Co.*,
   2012 WL 5878387 (N.D. Cal. Nov. 21, 2012) .............................................................18

*Schneider v. Verizon Internet Servs., Inc.*,
   400 Fed. Appx. 136 (9th Cir. 2010)..............................................................................11

*Stephens v. Allied Ins. Co.*,
   2006 WL 3290582 (N.D. Cal. Nov. 13, 2006) .............................................................18

*Sullivan v. Allstate Ins. Co.*,
   964 F. Supp. 1407 (C.D. Cal. 1997) .............................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................................9

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) .........................................................................................8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...........................................................................................9

*Wahl v. Yahoo! Inc.*,
   2017 WL 4098884 (N.D. Cal. Sept. 15, 2017) ........................................................14, 15

**Statutes**

26 U.S.C. § 50(a)(1) .............................................................................................................6

26 U.S.C. § 48 ......................................................................................................................6

Cal. Bus. & Prof. Code § 17200 ...................................................................................20, 22

Cal. Bus. & Prof. Code § 17208 .......................................................................................18

Cal. Civil Code §1632..................................................................................................19, 23

Cal. Civil Code § 1783....................................................................................................17

Cal. Civil Code § 1750....................................................................................................20

Cal. Civil Code § 1671 ........................................................................................... *passim*

Cal. Civil Code § 1770....................................................................................................16


**Rules**

Cal. Rule of Court 977 ....................................................................................................11

Fed. Rule Civ. Proc.12.....................................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

As to all Plaintiffs other than Plaintiff Juan Bautista, Vivint Solar seeks judgment on the pleadings on two grounds:  (1) Plaintiffs' claims that Vivint Solar's contracts contain unlawful liquidated damages clauses under California Civil Code Section 1671(d), and their derivative claims under the Unfair Competition Law ("UCL") and the Consumers Legal Remedies Act ("CLRA"), fail as a matter of law and (2) to the extent that Plaintiffs assert claims based on allegedly deceptive sales practices, those claims are facially time-barred by statutory and contractual limitations periods.

As to Plaintiff Bautista, Vivint Solar:  (1) renews its motion to compel arbitration, the Court's denial of which was fully briefed on appeal in the Ninth Circuit prior to the Ninth Circuit's *sua sponte* dismissal and remand of this case to determine if Plaintiffs should be allowed leave to amend their complaint and (2) moves, in the alternative, for judgment on the pleadings because Plaintiff Bautista has failed to state any legally cognizable claim.

Plaintiffs' Unlawful Liquidated Damages Claims

In its May 20, 2020 order denying in part and granting in part Plaintiffs' motion for leave to amend their complaint, the Court noted that the "details remain fuzzy" but found that there was a plausible allegation that "Vivint imposed (or attempted to impose) unlawful liquidated damages" through the termination provisions in its contracts.  (Dkt. 63 at 11-12.)  But the Court correctly noted that "further discovery and review of the agreement might reveal a different scenario."  (*Id.* at 11.) Discovery is not necessary.  Review of the agreements alone reveals not only a different scenario, but also that Vivint Solar is entitled to judgment as a matter of law.

Vivint Solar's customers who enter into a residential Power Purchase Agreement ("PPA") can get 20 years of solar energy by making monthly payments for the energy generated by the solar panels without ever purchasing or owning the solar energy system.  However, if a customer changes his or her mind after Vivint has incurred the cost to build and install the system, the customer has a rational alternative.  Rather than make monthly payments for the balance of the 20-year term, the customer can make a lump-sum payment, acquire ownership of the solar energy system, and continue using the solar

energy generated by the system.  Under this alternative, the customer acquires outright ownership of the system.  Customers pay a lump sum, but they get a valuable asset in return—a solar photovoltaic system that can generate solar energy for their home for many years beyond the contract's 20-year term.

In its May 20, 2020 order, the Court assumed that a Vivint Solar customer had a choice between:  (a) making 20 years of monthly payments and getting solar energy or (b) making 20 years of monthly payments (even if discounted), *forfeiting the system*, and getting no solar energy.  (*See* Dkt. 63 at 11.)  The Court concluded "[t]hat's not a rational alternative."  (*Id.*)  But that is not in fact the choice that Vivint Solar's PPAs present.  Customers get much more than "nothing" under the alternative; they get ownership of the solar photovoltaic system and the use of the solar energy generated by the system for the rest of the system's life.

Because customers have a realistic and rational choice in electing to terminate their contracts with Vivint Solar, the termination fees are an alternative to performance—not liquidated damages. Plaintiffs have therefore failed to state a claim for unlawful liquidated damages under California Civil Code Section 1671.  Plaintiffs' UCL claim, which alleges violation of the UCL's unfairness prong because the termination fees allegedly violate Section 1671, and their CLRA claim, which also alleges unlawful termination fees, fail for the same reason.

Claims for Deceptive Sales Practices

To the degree that Plaintiffs intend to assert claims based on allegedly deceptive sales practices, those claims also fail as a matter of law.  Any claims that Plaintiffs were induced to enter into PPAs by deceptive sales practices accrued at the time that Plaintiffs signed their PPAs.  Those claims are facially time-barred for all Plaintiffs by three and four-year statutory limitations periods and/or by the one-year contractual limitations period in all of the PPAs.

Claims by Plaintiff Bautista

In its March 24, 2020 order, the Court denied Vivint Solar's motion to compel arbitration by Plaintiff Juan Bautista on the grounds that Mr. Bautista had not entered into an agreement with Vivint Solar and therefore had not agreed to arbitration.  Vivint Solar timely appealed that order, and that

appeal (the "Bautista Appeal") was fully briefed and awaiting oral argument in the Ninth Circuit when the Ninth Circuit *sua sponte* requested briefing on subject matter jurisdiction and then dismissed this case subject to remand to this Court to consider whether Plaintiffs should be granted leave to amend. This Court subsequently granted Plaintiffs leave to amend to file their Second Amended Complaint ("SAC").  The Ninth Circuit then denied Vivint Solar's request to reinstate the Bautista Appeal "without prejudice to the timely filing of a new notice of appeal from any final or appealable order that the district court enters in this action."  (Dkt. 126.)  Because it is in the best interest of judicial economy that the arbitrability of Mr. Bautista's claims be finally adjudicated at this time, Vivint Solar renews its motion to compel arbitration.

In the alternative, Vivint Solar moves for judgment on the pleadings as to Plaintiff Bautista's claims.  The Court's May 20, 2020 order denied Mr. Bautista leave to amend to assert claims under the California Translation Act ("CTA"), for related injunctive relief under the CLRA, and for related unlawfulness under the UCL.  But it granted him leave to assert claims for unlawful liquidated damages and for violation of the UCL's unfairness prong based on alleged failure to comply with the CTA.  Mr. Bautista's unlawful liquidated damages claims fail along with those of other Plaintiffs.  His UCL unfairness claim based on alleged violation of the CTA also fails as a matter of law.  Under controlling California precedent, a UCL claim based on violation of statutory requirements alleges unlawful not unfair competition.  When a statutory claim fails, a plaintiff is prohibited from recasting it as a UCL unfairness claim.  Mr. Bautista's  UCL claim therefore fails for the same reasons that his CTA claim failed.

## II.   FACTUAL BACKGROUND

### A.   Vivint Solar's PPAs Allow Customers to Reap the Benefits of Solar Power Without Having to Own or Purchase Costly Solar Panels.

Vivint Solar[1] offers an innovative way for consumers to use solar power without having to bear the upfront cost of purchasing a solar photovoltaic energy system.  Vivint Solar agrees to bear the cost

---

[1] Unless otherwise specified, "Vivint Solar" refers to Vivint Solar Developer, LLC.

1   of purchasing, installing, and maintaining the solar panels on a customer's roof with no upfront

2   payment by the customer.  (Ex. B,[2] § 1(A) (version 2.6 standard agreement); Dkt. 122 ¶ 5.)  In return,

3   the customer agrees to purchase all the electricity generated by the solar panels (at a specified rate per

4   kilowatt hour of energy) for 20 years.  (Ex. B, §§ 2(A), 10(a); Dkt. 122 ¶¶ 4-5.)

5         This arrangement is memorialized in a PPA between Vivint Solar[3] and the consumer.  (Dkt. 122

6   ¶ 4.)  Absent early termination of the agreement, throughout the 20-year term of the PPA, Vivint Solar

7   maintains ownership of the solar panels.  (Ex. B, § 1(C).)  The solar energy systems installed on

8   Plaintiffs' roofs have a life expectancy well beyond the 20-year contractual term.[4]  At the end of the 20-

9   year term, customers have the option of purchasing the solar panels at market value and continuing to

10  use, at no additional cost, the solar energy generated by the panels.  (Ex. B, § 2(A).)  If the customer

11  decides not to purchase the system, Vivint Solar will remove the system at no cost to the customer, and

12  the customer has no further obligations to Vivint Solar.  (*Id.*)

### B.   The Plaintiffs Executed Four Versions of the PPAs, Which Can Be Grouped Into Two Sets.

15        Each Plaintiff entered into one of four versions of the PPA.  Plaintiff Gerrie and Kristen Dekker

16  signed version 1.0.  Plaintiff Christopher Hilliard signed version 2.6.  Plaintiffs Travis and Marci

17  Hulsey and Juan Bautista signed version 2.8.  The remaining three Plaintiffs—Karen Barajas (as

---

[2] References to "Ex." refer to exhibits attached to Defendants' Request for Judicial Notice, filed herewith.

[3] Plaintiffs also named various affiliates of Vivint Solar Developer, LLC (i.e., Vivint Solar, Inc., Vivint Solar Holdings, Inc., and Vivint Solar Provider, LLC) as defendants, but those other affiliates do not enter into PPAs with customers.

[4] Defendants have included the references below in their accompanying Request for Judicial Notice ("Request").  Although properly the subject of judicial notice, as detailed in the Request, to the extent that the Court denies the Request as to Exhibits D-E, Vivint Solar does not rely on the information therein for their Motion.

*See* Ex. D (website of the National Renewable Energy Laboratory, part of the United States Department of Energy, stating that solar photovoltaic energy systems have a useful life of 25 to 40 years); Ex. E ("U.S. Solar Photovoltaic System Cost Benchmark: Q1 2018," Report of the National Renewable Energy Laboratory, part of the United States Department of Energy, at page 31 (stating as an "important assumption[]" for its financial analysis of residential solar energy systems, a "system lifetime of 30 years")).

1    executor for Tom Bryson), Cindy Piini, and Steven and Marlene Rogers—signed version 3.2 or its

2    subversions.[5]

3        With respect to the termination provisions at issue, three of the four versions are "nearly

4    identical," as acknowledged by Plaintiffs in their Second Amended Complaint ("SAC").[6]  (Dkt. 122

5    ¶ 47 ("The PPAs of Plaintiffs Dekker, Thompson, Hulsey, and Bautista are nearly identical to Plaintiff

6    Hilliard's.")  Accordingly, the PPAs signed by Plaintiffs Dekker, Hilliard, Hulsey, and Bautista,

7    consisting of versions 1.0, 2.6, and 2.8, can be analyzed together ("Earlier PPAs").[7]  Version 2.6, the

8    version signed by Plaintiff Hilliard, will be referenced in this Motion as representative of the Earlier

9    PPAs.

10       The subversions of the version 3.2 PPAs signed by Plaintiffs Barajas/Bryson, Piini, and Rogers

11   ("Newer PPAs") are identical with respect to the termination provisions at issue.  The PPA signed by

12   Plaintiff Piini, who signed version 3.2, will be referenced in this Motion as representative of the Newer

13   PPAs.

14       **C.    Vivint Solar's Customers Have at Least Two Alternatives Available to Them to Perform Under the PPAs.**

15

16       Customers can choose to use and pay for the solar energy produced by the panels provided by

17   Vivint Solar for the entire 20-year term of the PPAs, but they also have options for ending the

18   agreement early if they choose not to finish the term or cannot do so.  Plaintiffs' SAC refers to two

19   such alternatives:  (1) transfer fees and (2) customer default fees (collectively, "termination fees").  The

20   transfer fees are limited to situations in which there is a sale of the real property on which the solar

21   panels are installed.  All other termination situations (other than cancellation within the first three days

_____

[5] Plaintiff Daniel Thompson, whose claims are in arbitration, signed version 2.8.  Plaintiffs Jae Chong and Phyllis Runyon, whose claims are in arbitration, signed version 3.2 or its subversions.
[6] However, version 1.0 of the PPA, the version signed by Plaintiff Dekker, does not include an arbitration provision, while versions 2.6 and 2.8 do.
[7] The Earlier PPAs were printed on old-fashioned carbon copy paper and do not scan well.  Accordingly, the copies of the PPAs previously filed with the Court are difficult to read.  (*See* Dkt. 25-1 (Dekker PPA); Dkt. 22-1 (Hilliard PPA); Dkt. 22-2 (Hulsey PPA); Dkt. 22-3 (Bautista PPA); Dkt. 22-4 (Thompson PPA).)  Vivint Solar has attached as exhibits to this motion more legible copies of the standard PPA for each version.  (Exs. A (version 1.0), B (version 2.6), and C (version 2.8).)

and force majeure events) call for the customer default fees.[8]

### 1.     A Property Transfer Allows the Customer to Take Ownership of the Solar Photovoltaic System.

*Earlier PPAs*.  If there is a sale of the property on which the solar photovoltaic system is installed, the Earlier PPAs allow customers to transfer and assign the PPA to the new property owner. If the purchaser of the property declines to assume the rights and obligations of the PPA or is not creditworthy, however, the Earlier PPAs provide that ownership of the solar panels will transfer to the customer in exchange for payment of an amount equal to four dollars per watt installed with a 5% reduction per year that the system has been installed.

> Alternatively, if We determine that Property Transferee is not adequately creditworthy to assume Your obligations under this Agreement, or Property Transferee refuses to assume Your obligations under this Agreement, We may terminate this Agreement on written notice to You and You will be obligated to pay to Us an amount equal to Four Dollars ($4) per watt installed, subject to a reduction of five percent (5%) per year (the "Transfer Payment").  After You pay to Us the Transfer Payment, *We will transfer ownership of the System to You on an "As Is, Where Is" basis*.

(Ex. B, § 13 (version 2.6 standard PPA) (emphasis added); Dkt. 22-1, § 13 (Hilliard PPA); Dkt. 122 ¶ 46.)  Thus, the customer must pay the discounted contractual amount but obtains ownership of the system and the energy it produces for the rest of its useful life.

*Newer PPAs*.  The Newer PPAs also allow customers to transfer the PPA to a new property owner.  But the Newer PPAs provide three additional alternatives when there is a sale of the property: (1) prepay the remaining monthly payments, keep the system on the property, and continue getting solar energy; (2) relocate the system to a new property; or (3) purchase the system if the sale of the property occurs after the sixth year.[9]  (Dkt. 22-7, § 5(n) (Piini PPA).)  Under the last option, a customer

---

[8] Under the Newer PPAs, customers also have an Early Purchase Option, by which customers "have a one-time option to purchase the System on the sixth (6th) anniversary . . . ."  Under that option, the customer obtains ownership of the solar photovoltaic system.  (Dkt. 22-7, § 3(c).)

[9] The limitation on purchases to systems that have been installed for six years is related to the fact that the owner of the system when it is installed receives the federal tax incentives for renewable energy systems, which offsets the cost of the installation.  *See* Dkt. 22-7 §4(i)(i);  U.S.C. § 48.  However, under Internal Revenue Code Section 50, the original owner of the system is liable to repay those tax credits (called "recapture") if the renewable energy system is sold in the first five years of operation.  *See* 26 U.S.C. § 50(a)(1).  The American Recovery and Reinvestment Act of 2009 (ARRA), which provided

can take ownership of the system by paying the contracted amount:

> The "Early Purchase Option Price" will be an amount equal to the greater of the Purchase Option Price and the Prepayment Price.  The valuation will be provided to You in writing and will be binding.  If You elect the Early Purchase Option, then We will need to receive Your payment of the Early Purchase Option Price, plus applicable taxes, and all other amounts then owing and unpaid hereunder not less than thirty (30) days thereafter.  Upon receipt of the foregoing, *We will transfer ownership of the System to You on an "As Is, Where Is" basis*, and continue to operate and maintain the System pursuant to Section 4(a) of the Agreement.

(Dkt. 22-7, § 3(c) (emphasis added).  Thus, the Newer PPAs also provide an alternative for the customer to take ownership of the system when there is a sale of the property.

> **2.**     **Customers Can Take Ownership of the Solar Photovoltaic System Even When There Is No Sale of the Property.**

*Earlier PPAs*.  At any time in the PPA term, rather than electing to pay for solar energy for 20 years, customers who signed the Earlier PPAs have the option of taking ownership of the solar photovoltaic system by paying seven dollars per watt installed with a 5% yearly reduction.

> If this Agreement is cancelled or terminated for any reason, other than due to a Force Majeure Event (as defined in Section 17) or a Seller Default, You will pay to Us the Buy-Out Payment. The "Buy-Out Payment" shall be an amount equal to Seven Dollars ($7) per watt installed, subject to a reduction of five percent (5%) per year.  After You pay to Us the Buy-Out Payment, *We will transfer ownership of the System to You on an "As Is, Where Is" basis*.

(Ex. B, § 14 (version 2.6 standard PPA) (emphasis added); Dkt. 22-1, § 14 (Hilliard PPA); Dkt. 122 ¶ 46.)  This payment of seven dollars per watt installed is referred to as the "Buy-Out Payment" or the

---

solar developers with cash incentives in lieu of tax credits for part of the relevant time period here, had a similar recapture clause.  *See* ARRA § 1603(f) (Pub. L. 111-5).  *See also Power Purchase Agreement Checklist for State and Local Governments*, National Renewable Energy Laboratory, at page 7 (noting that solar PPAs may include provisions for the customer to buy the system, which "can occur at any point during the life of the contract but almost always after the sixth year because of tax recapture issues related to the ITC [investment tax credit]").

The foregoing footnote is provided only for the Court's information, and Vivint Solar does not rely on it for its Motion.

"Default Payment."[10]  Rather than making payments for 20 years without ever taking ownership of the system, as the Court assumed was the case, customers can make the Buy-Out Payment or Default Payment and take ownership of the solar photovoltaic system.

 ***Newer PPAs***.  Similarly, customers under the Newer PPAs can terminate their agreements early and take ownership of the solar photovoltaic system.  The Newer PPAs, however, set forth a different formula for calculating the amount due, referred to as the "Default Payment":

> (v) Default Payments.  If this Agreement is terminated for any reason, other than pursuant to the Notice of Cancellation, Section 6(d), or a Seller Default, You will pay to Us the Default Payment.  The "Default Payment" shall be an amount equal to the sum of:  (1) the Prepayment Price, (2) any other amounts due and owing under this Agreement, including (without limitation) late fees, (3) Our fees and costs associated with removal of the System from Your Property, (4) loss of expected benefits from the System, including (without limitation) benefits and sources of revenue associated with the System Interests, and (5) Our other documented losses.  You agree that the Default Payment fairly reflects the value of the System, and, in the case of a Customer Default, is a fair representation of the damages and losses that We expect to incur.  After You pay to Us the Default Payment, *We will transfer ownership of the System to You on an "As Is, Where Is" basis*; provided that We will retain all right and title to the System Interests.

(Dkt. 22-7, § 6(b)(v) (Piini PPA) (emphasis added); Dkt. 122 ¶ 48.)  The Prepayment Price, which is one component of the Default Payment, is defined as "the sum of the remaining monthly payments" due, "discounted by five percent (5%)."  (Dkt. 22-7, § 5(n)(ii).)  By terminating the contract early and making the Default Payment, customers can take ownership of the solar energy system outright.

## III. LEGAL STANDARD

 Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings. The analysis under Rule 12(c) is "substantially identical to [the] analysis under Rule 12(b)(6)."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). Under that standard, all factual allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party.  *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and

---

[10] Version 2.8, the version signed by Plaintiffs Hulsey and Bautista, refers to the payment as the "Default Payment."  (Dkt. 22-2, § 13 (Hulsey PPA); Dkt. 22-3, § 13 (Bautista PPA); Ex. C, § 13 (version 2.8 standard PPA).)

the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925

(9th Cir. 2009) (citation and footnote omitted).

Generally, courts reference only the pleadings in evaluating the merits of a motion for judgment

on the pleadings. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  But a court may also

consider certain documents incorporated by reference into a complaint "if the plaintiff refers

extensively to the document or the document forms the basis of the plaintiff's claim." *United States v.

Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Although the ***validity*** of a liquidated damages provision is a fact-based inquiry normally not

appropriately determined on a motion for judgment on the pleadings, whether a provision is a

liquidated damages provision in the first place—the issue raised by this motion—is a question of law

for the court to decide.  *Mahlum v. Adobe Sys. Inc.*, 2015 WL 124663, at *6 (N.D. Cal. Jan. 8, 2015),

*aff'd*, 690 F. App'x 474 (9th Cir. 2017) (whether early termination fee "is a liquidated damages

provision or one for alternate performance is an appropriate determination for this Court to make in

ruling on a motion to dismiss").

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNLAWFUL LIQUIDATED DAMAGES.

### A. The Termination Provisions Are Not Liquidated Damages Provisions Because They Are Alternatives to Performance.

The PPA termination provisions fall outside the scope of California Civil Code Section 1671,

the statute governing liquidated damages because they are alternatives to performance, not liquidated

damages.  "Where a contract for a specified period of time permits a party to terminate the agreement

before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely

an alternative to performance, and not a penalty." *Morris v. Redwood Empire Bancorp*, 128 Cal. App.

4th 1305, 1314 (2005) (citing *Blank v. Borden*, 524 P.2d 127, 130–31 (Cal. 1974)).

That is exactly what the PPA provisions at issue here permit.  The transfer and default payments

allow customers to choose whether to:  (1) make monthly payments for 20 years for the solar energy

generated without owning the solar photovoltaic system or (2) pay a lump-sum fee and take ownership

of the system.  In either case, the customer continues to receive the solar energy generated by the

1   system.

2        In *Blank v. Borden*, 11 Cal. 3d 963 (Cal. 1974), the California Supreme Court addressed

3   whether a contractual provision was liquidated damages or an alternative to performance.  There, the

4   plaintiff, a real estate broker, received the exclusive and irrevocable right to sell the property during a

5   specified seven-month period for a commission of six percent of the selling price.  *Id.* at 966.  The

6   contract also provided that if the property were withdrawn from sale without the consent of the broker,

7   the broker would still receive the six percent commission.  *Id.*  The court held that this provision was an

8   alternative means of performance because it presented the customer "with a true option or alternative."

9   *Id.* at 970.  The owner could allow the broker to sell the house, pay a six percent commission on the

10  selling price, and get the proceeds from the sale.  Or the owner could change his mind and keep the

11  house, pay a six percent commission on a specified price for the property, and forgo the benefits of a

12  sale.  *Id.* at 966, 971.  The court found that "the contract clearly reserve[d] to the owner the power to

13  make a realistic and rational choice in the future with respect to the subject matter of the contract."  *Id.*

14  at 971.

15       Here, as in *Blank*, the Vivint Solar customers have "a realistic and rational choice":

16  (1) continue using Vivint Solar's services, make monthly payments for the energy, and continue using

17  the solar energy—***without owning the solar panels*** or (2) pay a termination fee, continue using the

18  solar energy, ***and take ownership of the solar panels***.  If the choice were between:  (1) paying 20 years

19  of monthly payments and getting solar energy or (2) paying 20 years of monthly payments, not getting

20  solar energy, and forfeiting the solar photovoltaic system (as the Court's prior orders assume

21  (Dkt. 63 at 11; Dkt. 121 at 6))—that would indeed not be a rational choice.  But that is not the case.

22  The PPAs confer an additional benefit upon payment of the termination fee—ownership of the solar

23  photovoltaic system with continued solar power service.[11]  The terminations provisions allow

24  customers to withdraw from a monthly payment system in which they do not own the system and elect

---

[11] In the context of a sale of the property, the Prepayment Option in the Newer PPAs does not transfer ownership to the customer.  (Dkt. 22-7, at § 5(n)(ii).)  As discussed in Section IV.B, however, because transfer fees such as the Prepayment Option do not arise in the event of breach, the Prepayment Option does not constitute liquidated damages.

instead to make a lump-sum payment and take ownership of the system.

The Ninth Circuit and courts in this district have found that early termination fees constitute alternative performance.  For example, in *Mahlum v. Adobe Sys. Inc.*, 2015 WL 124663, at *3 (N.D. Cal. Jan. 8, 2015), *aff'd*, 690 F. App'x 474 (9th Cir. 2017), the court, on a motion to dismiss, considered whether an early termination fee for an annual subscription to a suite of software programs constituted liquidated damages.  The district court, affirmed by the Ninth Circuit, held that providing a customer with the option to either:  (1) continue to receive services under the subscription plan and pay the remaining monthly installments or (2) cancel, pay 50 percent of the remaining payments, and stop receiving services was a "realistic and rational choice."  *Id.*  The court held that such an alternative did not possess "the invidious qualities characteristic of a penalty or forfeiture."  *Id.* at *4.  Similarly, the Ninth Circuit in *Bauer v. Atlantis Events, Inc.*, 645 F. App'x 545, 547 (9th Cir. 2016), held that a cruise cancellation fee of 40 percent of the purchase price remained a realistic alternative to boarding the ship.  *See also Schneider v. Verizon Internet Servs., Inc.*, 400 Fed. Appx. 136, 137–39 (9th Cir. 2010) (defined-length contract for internet service which allowed plaintiff to cancel contract early for $99 early termination fee provided alternative to performance and was not void under California law); *Hutchison v. Yahoo! Inc.*, 396 Fed. Appx. 331, 333–34 (9th Cir. 2010) (one-year contract for phone and internet service with $200 early termination fee was alternative to performance and not void under California law even with only two weeks remaining in term).

Moreover, the California Court of Appeal has held that even where a termination fee was equal to the amount remaining in the term, the fee still gave the consumer a "rational choice" and was therefore not a liquidated damages clause under Section 1671.  *Jaquez v. Prot. One Alarm Monitoring, Inc.*, 2014 WL 962601, at *8 (Cal. Ct. App. Mar. 12, 2014).[12]  The court found that it was an alternative

---

[12] *Jacquez* is unpublished, but this Court may consider unpublished decisions of the California Court of Appeal as instructive on California law.  *See McSherry v. Block*, 880 F.2d 1049, 1052 n.2 (9th Cir. 1989) ("We find therefore that we may not summarily disregard the Appellate Department's construction of section 653g merely on the basis that its construction was rendered in an unpublished opinion."); *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 n.2 (9th Cir. 2012) ("Although they are not precedent under California Rule of Court 977(a), we may nonetheless rely on the unpublished opinions in *A.A.M.* and *Bradley* to 'lend support' to the contention that *ARP Pharmacy*

to performance that allowed the customer to choose whether to fulfill the three-year contract or pay an early termination fee.  *Id.*

Here, even if the PPA termination fees sometimes equal the payments remaining in the term, which the *Jacquez* court approved, Vivint Solar's termination provisions go one step further and afford the customer a benefit not available in the normal course:  ownership of the solar photovoltaic system with continued solar power service for the life of the system.  Because the early termination alternative results in ownership of the system and continued solar power service, the alternative is certainly rational and does not possess "the invidious qualities characteristic of a penalty or forfeiture" the courts have found problematic.  *Mahlum*, 2015 WL 124663, at *4; *Blank*, 11 Cal.3d at 970.

Because the termination provisions are an alternative means of performance and fall outside the scope of California Civil Code Section 1671(d), Plaintiffs have failed to state a claim and Vivint Solar is entitled to judgment on the pleadings.

Moreover, the Court should grant judgment without leave to amend because no plausible set of facts could save Plaintiffs' liquidated damages claim.  *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) ("Although leave to amend 'shall be freely given when justice so requires,' it may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit.")  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (affirming dismissal without leave to amend where district court determined "the pleading could not be cured by the allegation of other facts").

## B.   The PPA Termination Fees Are Not Liquidated Damages Because They Are Not Triggered by a Breach of the Contract.

Plaintiffs have failed to plead a violation of Section 1671 for the additional reason that the PPA provisions for termination fees are not triggered by a breach of contract.

---

'accurately represents California law.'") (quoting *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003)); *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1234 (N.D. Cal. 2015) ("Federal courts may consider depublished California state court decisions.") (citing *McSherry*).

Courts have made clear that liquidated damages are amounts paid in response to a breach of contract. *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) ("California courts define liquidated damages as 'an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain."); *Anderson, McPharlin & Connors v. Yee*, 135 Cal. App. 4th 129, 135, n.2 (2005) (citing Morris, 128 Cal. App. 4th at 1314–15) (liquidated damages "by definition" are only assessed after a breach). "Thus, to constitute liquidated damages, the contractual provision must . . . arise from a breach." *Free Range Content, Inc. v. Google Inc.*, 2016 WL 2902332, at *10 (N.D. Cal. May 13, 2016).

Here, the PPA provisions for transfer payments are triggered only when there is a sale of the property on which the solar panels reside, not a breach of the contract. Plaintiffs Barajas/Bryson and Hilliard, the only Plaintiffs the SAC alleges paid transfer fees (Dkt. 122 ¶¶ 18, 25),[13] and Vivint Solar performed exactly as they promised each other they would under the contract. Plaintiffs paid Vivint Solar the contracted amount to facilitate the sale of their property, and Vivint Solar transferred the ownership of the solar photovoltaic system to Plaintiffs. The parties thus performed according to the terms of the PPA. There was no breach of contract.

Where there is no breach, there can be no liquidated damages. *Blank*, 11 Cal. 3d at 970 (holding that contract provision was not liquidated damages, in part, because provision "in no sense contemplate[d] a default or breach of an obligation" to trigger payment). Because Plaintiffs cannot allege any breach of contract or the existence of a liquidated damages provision, Vivint Solar is entitled to judgment on the pleadings with regard to the PPA transfer fees.

As to the PPA default fees, Plaintiffs again have failed to plead fees triggered by a breach and therefore failed to plead a violation of Section 1671. Even though default fees can be triggered when a customer has breached his obligations, Plaintiffs Dekker, Hulsey, and Piini (the Plaintiffs whose claims relate to customer default fees rather than transfer fees)[14] have not so pled. (Dkt. 122, ¶¶ 17, 22, 23.)

---

[13] Plaintiff Rogers was merely discouraged from selling her property due to the transfer fees but did not pay any transfer fees. (Dkt. 122 ¶ 19.)

[14] The claims of Plaintiffs Chong, Runyon, and Thompson are in arbitration. The Court has held that no contract was formed with Plaintiff Bautista. It continues to be Vivint Solar's position that the Court

1   They allege instead that they either attempted to terminate the PPA affirmatively and voluntarily, or

2   that they were levied a fee in response to their affirmative and voluntary request to terminate the

3   agreement.  (Dkt. 122 ¶¶ 17-25.)  Thus, the termination fees pled in the SAC did not arise in the event

4   of breach.  They are fees for the right to terminate the contract before its term expires, not liquidated

5   damages for a breach of contract.  *See Blank*, 11 Cal.3d at 970.

6         Plaintiffs in *Wahl v. Yahoo! Inc.*, 2017 WL 4098884, at *2 (N.D. Cal. Sept. 15, 2017), brought a

7   putative class action against the defendant for engaging in a pattern of unfair and unlawful business

8   practices through its allegedly deceptive sales of monthly and annual subscriptions to its website.  *Id.* at

9   *1.  The complaint alleged a single cause of action for violating California's UCL, arguing that

10  defendant's UCL liability under the "unlawful" prong arose from its alleged violation of two predicate

11  statutes, one of which was the Section 1671 liquidated damages statute.  *Id.* at *1.  The plaintiff had

12  signed up for a one-year subscription to the defendant's website, which automatically renewed in the

13  second and third years.  *Id.*  After he paid the subscription fee for the third year, he attempted to cancel

14  his subscription and get a refund but learned that the subscription fees were non-refundable.  *Id.*

15        In defending against a motion to dismiss for failure to plead any breach of contract, the plaintiff

16  argued that "regardless of whether [the plaintiff] himself breached the contract by terminating the

17  contract prior to its end date, it [went] without saying that any consumer who does so can be accused of

18  a breach under the terms and conditions imposed on all customers by" the defendant.  *Id.* at *2.  The

19  court held that it was "limited to the four corners of the [c]omplaint and need not concern itself with

20  what hypothetical other customers [of defendant] might do."  *Id.*  The court noted that in order for a

21  contractual provision to constitute liquidated damages, the provision must arise from a breach.  The

22  court went on to hold that because "the Complaint does not allege any liquidated damages arising from

23  a breach of the contract," the plaintiff had "failed to allege facts to state a plausible claim for a violation

24  of" California Civil Code Section 1671.  Here, Plaintiffs' Section 1671 claim, like that in *Wahl*, fails

25  with regard to the PPA default fees because the challenged fees were not triggered by a breach of

26  _____

27  erred in holding that no contract was formed with Bautista.  Plaintiff Bautista's claims should be
    dismissed as a matter of law for the reasons set forth in Section VII below.

28

1    contract.

2    **C.      Plaintiffs Have Failed to State a Claim That the Termination Fees Constitute
         Unlawful Liquidated Damages Because They Have Not Alleged Any Breach of the
3        Agreement.**

4         Plaintiffs have also failed to plead a violation of Section 1671 because they have not alleged

5    that any party has breached a PPA.  *Chodos*, 292 F.3d at 1002 (holding that liquidated damages must

6    arise from event of breach); *Anderson, McPharlin & Connors*, 135 Cal. App. 4th at 135, n.2 (same);

7    *Free Range Content*, 2016 WL 2902332, at *10 (same).  As discussed above, the court is bound "to the

8    four corners of the [c]omplaint and need not concern itself with what hypothetical other customers [of

9    defendant] might do."  *Wahl*, 2017 WL 4098884, at *2 (holding that it was bound to allegations in

10   complaint in ruling on whether contractual provision constituted liquidated damages on motion to

11   dismiss).

12        Here, Plaintiff's allegations[15] make no mention of any breach.  (Dkt. 122 ¶¶ 17-25.)

13   Specifically, the SAC alleges only that:

14        • Plaintiff Dekker requested removal and was met with a request for payment (*id.* ¶ 17);

15        • Plaintiff Barajas/Bryson sold their property and paid the transfer fee pursuant to the PPA
16          (*id.* ¶ 18);

17        • Plaintiff Rogers was discouraged from selling her property due to the PPA provisions
            governing transfer of property and did not sell her property (*id.* ¶ 19);

18        • Plaintiff Hulsey requested cancellation of the contract an indefinite time after entering
19          into the PPA but did not cancel the contract and retained the solar photovoltaic system
            (*id.* ¶ 22);

20        • Plaintiff Piini attempted to cancel the contract more than eight months after entering into
21          the PPA but did not cancel the contract and retained the solar photovoltaic system
            (*id.* ¶ 23); and

22        • Plaintiff Hilliard attempted to have the system removed but ultimately sold her property
23          and paid the transfer fee pursuant to the PPA (*id.* ¶ 25).

24        Plaintiffs have not alleged in their SAC that they breached the PPA, and they have thus failed to

25   allege that the termination fees here constitute liquidated damages.  Their claim of allegedly unlawful

26   _____

27   [15] For the reasons noted in footnote 14, these allegations refer to those of Plaintiffs Dekker, Hilliard,
     Hulsey, Barajas/Bryson, Piini, and Rogers.

28

1    liquidated damages under California Civil Code Section 1671(d) fails as a matter of law.

2    **V.    PLAINTIFFS' OTHER CLAIMS BASED ON AN ALLEGATIONS THAT THE PPA
3         TERMINATION FEE PROVISIONS ARE UNLAWFUL ALSO FAIL AS A MATTER
         OF LAW**

4         Plaintiffs' derivative claims also fail.  The SAC's cause of action for violation of the unfair

5    prong of the UCL (Dkt. 122, ¶¶ 98-106) rests in large part on the claim that the PPA's termination fees

6    are unlawful liquidated damages.[16]  (*See* Dkt. 122, ¶ 101 ("Vivint Solar's practices with respect to

7    termination fees violate the "unfair" prong of the UCL because the termination fees . . . constitute

8    unfair and wrongful penalties inconsistent with the language and policy of Civil Code section

9    1671 . . . .").)  That claim fails for the same reasons that Plaintiffs' Section 1671 claim fails—the PPA

10   termination fees are not unlawful liquidated damages.[17]

11        The SAC's CLRA claim alleges that the PPA termination provisions violate two provisions of

12   the CLRA:  (1) California Civil Code Section 1770(a)(19), which prohibits "[i]nserting an

13   unconscionable provision in the contract" and (2) California Civil Code Section 1770(a)(14), which

14   prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it

15   does not have or involve, or that are prohibited by law."  (*Id.* at ¶ 109.)  Plaintiffs contend that Vivint

16   Solar violates these sections because it "insert[s] unconscionable, unenforceable, and illegal provisions

17   in their PPA" and "enforces those provisions" and because it "insert[s] unconscionable, unenforceable,

18   and void termination fees in the PPA" and "enforce[es] those termination fees."  (*Id.*)  Thus, these

19   allegations are tethered to the premise that the PPA termination fees are unlawful liquidated damages.

20   As discussed above, that premise fails as a matter of law—the termination fees are not unlawful

21   liquidated damages.  Plaintiffs' derivative CLRA claim therefore also fails as a matter of law.  *See*

22   *Brown v. Blackbaud, Inc.*, 2018 WL 9619430, at *4 (C.D. Cal. Nov. 6, 2018) (dismissing CLRA claim

23   premised on violation of Section 1671 where plaintiff had not adequately pled violation of

24

25   _____

26   [16] The SAC's UCL unfairness prong cause of action also alleges violation of the CTA.  That allegation
     is addressed in Section VII.B below.

27   [17] As discussed in Section VII.B below, controlling California precedent prohibits recasting a failed
     allegation of a statutory violation as a violation of the UCL's unfairness prong.

28

1    Section 1671).

2    **VI.   ANY CLAIMS OF DECEPTIVE SALES PRACTICES ARE FACIALLY BARRED BY**
3    **THE STATUTORY AND CONTRACTUAL LIMITATIONS PERIODS**

4          The SAC's UCL claim ("Second Claim for Relief") and CLRA claim ("Third Cause of

5    Action"), as well as its Unlawful Liquidated Damages claim ("First Claim for Relief"), are founded

6    largely on the allegation that Vivint Solar's termination fees are impermissible liquidated damages.

7    (*See* Dkt. 122 ¶ 100 ("Vivint Solar violated the 'unfair' prong of the UCL by requiring clients to enter

8    into contracts of adhesion that include termination fee provisions, and by imposing and collecting the

9    termination fees."); ¶ 109 (Vivint Solar violated the CLRA "by inserting unconscionable,

10   unenforceable, and void termination fees in the PPA, and then enforcing those termination fees")).  As

11   demonstrated above, this allegation fails as a matter of law.

12         Though not repeating them in its statement of causes of action (Dkt. 122 ¶¶ 91-112), the SAC

13   also makes factual allegations of deceptive sales practices.  (*See, e.g.*, ¶¶ 52-75.)  And the SAC's Prayer

14   for Relief seeks a declaration "that Defendants' sales practices are unfair and unlawful, thereby

15   rendering all PPAs unconscionable."  (Dkt. 122 at 28.)  To the degree that Plaintiffs intend to assert

16   claims based on alleged sales practices, those claims are time-barred.

17         The implied harm from the alleged deceptive sales practices is that those practices induced

18   Plaintiffs to enter into PPAs that they would otherwise not have entered into.  Any such claims

19   therefore accrued when Plaintiffs entered into the PPAs.  The alleged "wrongdoing, harm, and

20   causation" were complete at that time.  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1191

21   (2013).

22         The statute of limitations for a CLRA claim is three years.  Cal. Civil Code § 1783.  All

23   Plaintiffs entered into PPAs more than three years before filing the original Complaint in this action on

24   December 3, 2019.[18]  Any CLRA claims based on deceptive sales practices are therefore barred by the

25   _____

26   [18] *See* Dkt. 25-1 (Dekker PPA dated September 21, 2012); Dkt. 22-1 (Hilliard PPA, dated August 9,
     2013); Dkt. 22-2 (Hulsey PPA, dated February 21, 2014); Dkt. 22-3 (Bautista PPA dated July 12, 2014);
27   Dkt. 22-5 (Bryson PPA dated February 26, 2016); Dkt. 22-7 (Piini PPA, dated September 7, 2016); Dkt.
     22-8 (Rogers PPA, dated October 7, 2016).

28

1    three-year statute of limitations.

2         The UCL statute of limitations is four years.  Cal. Bus. & Prof. Code § 17208.  The statute of

3    limitations for the SAC's Section 1671 liquidated damages claim is also four years.  *See Beasley v.*

4    *Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1401-02 (1999).  Any UCL or Section 1671 claims based on

5    deceptive sales practices are thus likewise statutorily barred for Plaintiffs Dekker, Hilliard, Hulsey, and

6    Bautista, each of whom entered into a PPA prior to December 3, 2015.[19]

7         Plaintiffs' claims are also subject to contractual limitations periods.  "California permits

8    contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed

9    by statute, so long as the time allowed is reasonable."  *Han v. Mobil Oil Corp*., 73 F.3d 872, 877 (9th

10   Cir. 1995).  "A contractual limitation period requiring a plaintiff to commence an action within 12

11   months following the event giving rise to a claim is a reasonable limitation which generally manifests

12   no undue advantage and no unfairness."  *Id*.; *see also Ryti v. State Farm Gen. Ins. Co*., 2012 WL

13   5878387, at *3 (N.D. Cal. Nov. 21, 2012) (one-year contractual limitations periods are "considered

14   reasonable"); *Stephens v. Allied Ins. Co*., 2006 WL 3290582, at *8 (N.D. Cal. Nov. 13, 2006)

15   ("Plaintiff's action is time-barred by the one-year Suit Provision contained in the insurance contract.");

16   *Sullivan v. Allstate Ins. Co*., 964 F. Supp. 1407, 1411 (C.D. Cal. 1997) (enforcing one year contractual

17   limitation period in insurance policy); *Fageol Truck & Coach Co. v. Pac. Indem. Co.*, 18 Cal. 2d 748,

18   753 (1941) (upholding one-year contractual limitation period).

19        The only Plaintiffs whose deceptive sales practices claims would not be barred by the four-year

20   statutes of limitations—Bryson, Piini, and Rogers—entered into PPAs in which they agreed to a one-

21   year contractual limitations period (as did all Plaintiffs).  (*See* Dkt. 22-5 (Bryson PPA) at 14 (agreeing

22   that no claim "IN ANY WAY RELATED TO THIS AGREEMENT MAY BE BROUGHT,

23   COMMENCED OR FILED MORE THAN ONE (1) YEAR AFTER THE INCIDENT GIVING RISE

24   TO SUCH CLAIM"); Dkt. 22-7 (Piini PPA) at 14 (same); Dkt. 22-8 (Rogers PPA) at 14 (same).)

25        All of Plaintiffs' claims, if any, based on alleged deceptive sales practices, are therefore barred

26

27   _____
     [19] *See supra* note 18.

28

by the statutory limitations periods and/or the contractual limitations period.  Vivint Solar is entitled to judgment on the pleadings with respect to any such claims.

**VII.    THE COURT SHOULD GRANT VIVINT SOLAR'S MOTION TO COMPEL ARIBTRATION BY PLAINTIFF BAUTISTA OR IN THE ALTERNATIVE, GRANT VIVINT SOLAR JUDGMENT ON THE PLEADINGS ON MR. BAUTISTA'S CLAIMS**

### A.    The Court Should Grant Vivint Solar's Motion to Compel Arbitration by Plaintiff Bautista.

Vivint Solar renews its motion to compel arbitration by Plaintiff Bautista.  It contends that the Court erred as a matter of law in denying Vivint Solar's prior motion.  (Dkt. 47.)

Controlling California law provides that signing a contract in a language one does not understand does not by itself raise an issue of contract formation, only a factor that bears on analysis of procedural unconscionability.  *See, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (quoting *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699, 710 (1976) ("[T]he general rule is that 'one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument.'")); *Randas v. YMCA of Metro. Los Angeles*, 17 Cal. App. 4th 158 (1993) (quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987) § 120, p. 145 ("As Mr. Witkin states: "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.  If he cannot read, he should have it read or had it explained to him.")); *Ramos v. Westlake Services LLC*, 242 Cal.App.4th 674, 687 (2015) ("Under the general contract principles just discussed, the fact that Ramos signed a contract in a language he may not have completely understood would not bar enforcement of the arbitration agreement.  If Ramos did not speak or understand English sufficiently to comprehend the English Contract, he should have had it read or explained to him.").

Nor is this controlling precedent negated by the CTA, which was enacted in 1976.  The CTA does not void or nullify an agreement but only gives an option to rescind.  *See* Cal. Civil Code §1632(k) ("Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement . . . .").  CTA liability does not correspond to principles of contract formation.  Indeed, "a party's fluency in English is irrelevant to section 1632, which makes no

1   reference to a party's English-language proficiency." *ING Bank, fsb v. Ahn*, 717 F.Supp.2d 931, 933

2   (N.D. Cal. 2010).

3       It is in the best interest of judicial economy that this issue, which was fully briefed and pending

4   on appeal in the Ninth Circuit prior to the Ninth Circuit's *sua sponte* dismissal of this case for lack of

5   subject matter jurisdiction, should be finally resolved at this time.  If left for resolution on appeal after

6   final judgment, it could require relitigating Mr. Bautista's claims.

7       **B.      Plaintiff Bautista's Claims Fail as a Matter of Law.**

8       The original Complaint in this action alleged five causes of action:  (1) unlawful liquidated

9   damages under Cal. Civil Code § 1671(d); (2) violation of the California Consumers Legal Remedies

10   Act, Cal. Civil Code §§ 1750 *et. seq.* ("CLRA"); (3) unlawful business practices in violation of the

11   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); (4) unfair business practices in

12   violation of the UCL; and (5) violation of the California Translation Act ("CTA"), alleged by Plaintiff

13   Bautista only.  Dkt. 1 at ¶¶ 89-132.

14       In an order dated March 24, 2020, the Court dismissed the first four causes of action with

15   respect to Plaintiff Bautista, leaving intact only his CTA claim, but granted Mr. Bautista leave to

16   amend.  As the Court explained:

17           [P]laintiffs' liquidated damages, and derivative unconscionability claims—each predicated
             upon an unlawful contract—appear inapplicable to Mr. Bautista given this order's
18           observation that, on this record, he likely lacks an agreement with Vivint.  Thus, this order
             dismisses Mr. Bautista's first four claims for relief and invites him to move for leave to
19           amend his complaint.

20   (Dkt. 47 at 12.)

21       In its May 20, 2020 order, the Court granted in part and denied in part Plaintiffs' motion for

22   leave to file a First Amended Complaint ("FAC").  (Dkt. 63.)  The Court denied without prejudice

23   leave to amend to assert claims by Plaintiff Bautista directly under the CTA, for related injunctive relief

24   under the CLRA, and for related unlawfulness under the UCL; denied with prejudice leave to assert to

25   assert related CLRA damages; and granted leave to assert a related UCL unfairness claim and to

26   reassert claims regarding allegedly liquidated damages provisions in the PPAs.  (*Id.*)

27

28

1    For the reasons discussed above, Plaintiff Bautista's claims based on the allegation of unlawful

2    liquidated damages in the PPAs fail as a matter of law along with those of all Plaintiffs.  That includes

3    UCL claims based on allegedly unlawful liquidated damages under Section 1671.

4    Mr. Bautista's only remaining claim in the SAC is for violation of the UCL unfairness prong.

5    (Dkt. 122 at 26-28.)  In its May 20, 2020 Order, the Court denied leave to amend to assert a violation of

6    the UCL unlawfulness prong, holding that "absent a live Translation Act claim the unlawful prong fails

7    because it 'borrows violations of other laws.'"  (Dkt. 63 at 8, quoting *Cel-Tech Commc'ns, Inc. v. Los*

8    *Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 937 P.2d 527 (1999).)  The Court granted leave to amend to

9    file a UCL unfairness prong claim, however, finding that allegation of conduct in violation of the CTA

10   could state a UCL unfairness claim:  "As alleged, Vivint's conduct certainly violates the California

11   public policy embodied in the Translation Act, that is, businesses who negotiate with customers in

12   Spanish (among other languages) must provide Spanish copies of any agreement and not foist an

13   English copy upon a customer who has absolutely no reason to understand it."  (Dkt. 63 at 9.)

14   The SAC, like the FAC, adds one paragraph to the original Complaint's assertion of a UCL

15   unfairness claim.  That paragraph alleges violation of the UCL unfairness prong by failure to comply

16   with CTA requirements:  "Vivint Solar also violates the 'unfair' prong of the UCL by conducting

17   negotiations in a language other than English and failing to provide a translation of the language of

18   negotiation as required by [the CTA]."  (Dkt. 122 ¶ 104.)

19   The California Court of Appeal, applying *Cel-Tech*, has held, however, that when a plaintiff

20   alleges a cause of action based on violation of statutory requirements it "alleges unfair competition that

21   is 'unlawful' rather than 'unfair' or 'deceptive.'"  *Bothwell v. Abbott Laboratories, Inc*.) (*In re Vaccine*

22   *Cases*), 134 Cal. App. 4th 438, 457 (2005).  The court in *In re Vaccine Cases* held that the plaintiffs,

23   who had failed to meet the procedural requirements of a Proposition 65 action, were "prohibited . . .

24   from recasting their Proposition 65 action as an unfair competition action."  *Id*. at 458.

25   As another court in this district explained in granting a motion for judgment on the pleadings:

26        The California Supreme Court in *Cel-Tech Communications, Inc. v. Los Angeles Cellular*
         *Telephone Co.*, held that even if conduct was not unlawful, the plaintiff could maintain a
27        UCL cause of action on the basis that the defendant's conduct was unfair.  20 Cal.4th 163,

28

180 (1999).  Nonetheless, when a plaintiff alleges only violations of a statute, the unfair competition claim is properly considered as one for "unlawful" as opposed to "unfair" or "deceptive" business practices.

*Landayan v. Washington Mut. Bank*, 2009 WL 3047238, (N.D. Cal. Sept. 18, 2009) at *3 (citing *In re Vaccine Cases*).  *Landayan* held that the plaintiff could not assert a UCL unfairness claim based on violation of Truth in Lending Act ("TILA") requirements where the statute had run on the plaintiff's TILA claim.

Asencio v. Miller Brewing Co., 2006 WL 8446875 (C.D. Cal. August 11, 2006), confirms the controlling California law.  In that case, the plaintiff asserted claims for disability discrimination and retaliation in violation of the California Fair Employment and Housing Act ("FEHA") and for violation of the UCL unfairness prong based on the same alleged conduct.  *Id*. at *1.  The district court granted summary judgment on all claims because the plaintiff had failed to obtain a right to sue letter as required by the FEHA.  The Ninth Circuit reversed summary judgment on the UCL claim "opin[ing] that even if Asencio cannot successfully establish a FEHA violation, she may still prove that [defendant's] conduct constituted an 'unfair' business practice."  *Id*.  On remand, the district court granted the defendant's motion for judgment on the pleadings, holding that the California Court of Appeal's intervening decision in *In re Vaccine Cases* "contravene[d] the Ninth Circuit's conclusion that Asencio may proceed with her third cause of action based on an 'unfair' business practice theory, even if Asencio cannot successfully establish a FEHA violation."  *Id*. at *2.  Applying the holding in *In re Vaccine Cases*, the court concluded that "by alleging violations of the statute, in this case FEHA, Asencio's § 17200 cause of action alleges unfair competition that is 'unlawful' rather than 'unfair' or 'deceptive.'"  *Id*. at *3.  The Ninth Circuit agreed and affirmed on appeal.  *Asencio v. Miller Brewing Co.*, 283 Fed. Appx. 559, 561 (9th Cir. 2008) ("After the prior panel issued its decision, the California Court of Appeal decided [*In re Vaccine Cases*].  Pursuant to the reasoning in that case, Asencio's claim under the unfair 'prong' of UCL must fail.").

Like the plaintiffs in *Landayan* and *Asencio*, Plaintiff Bautista here asserts a UCL unfairness claim based on alleged violation of statutory requirements.  The SAC alleges that "Vivint Solar . . . violates the 'unfair prong' of the UCL by conducting negotiations in a language other than English and

1  failing to provide a translation of the language of negotiation as required by the California Translation

2  Act, Cal. Civil Code § 1632." (Dkt. 122 ¶ 104.)  By relying on alleged statutory violations in an

3  attempt to state a UCL claim, the SAC thus "alleges unfair competition that is 'unlawful' rather than

4  'unfair' or 'deceptive.'"  *In re Vaccine Cases*, 134 Cal.App.4th at 457.  Because Mr. Bautista's CTA

5  action fails, his UCL action based on the alleged CTA violation also fails.  The California Supreme

6  Court's decision in *Cal-Tech Communications* "prohibits plaintiffs from recasting their [CTA] action as

7  an unfair competition action."  *Id.* at 458.

## VIII.   CONCLUSION

9      For all of the reasons stated above, Vivint Solar respectfully requests that the Court (1) enter

10  judgment on the pleadings without leave to amend with regard to all Plaintiffs other than Plaintiff

11  Bautista and (2) with regard to Mr. Bautista, compel arbitration or, in the alternative, enter judgment on

12  the pleadings without leave to amend.

Dated:  April 20, 2021               Respectfully submitted,

                                     THE NORTON LAW FIRM PC

                                     By:  */s/ Fred Norton*_____
                                            Fred Norton

                                     Attorneys for Defendants
                                     VIVINT SOLAR, INC., VIVINT SOLAR
                                     HOLDINGS, INC., VIVINT SOLAR
                                     DEVELOPER, LLC, AND
                                     VIVINT SOLAR PROVIDER, LLC