Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
mmatern@maternlawgroup.com
jboxer@maternlawgroup.com

Corey B. Bennett (SBN 267816)
**MATERN LAW GROUP, PC**
1330 Broadway, Suite 428
Oakland, California 94612
Telephone: (510) 227-3998
Facsimile: (310) 531-1901
cbennett@maternlawgroup.com

*Attorneys for Plaintiffs, individually, and
on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, KAREN BARAJAS as executor of the Estate of Thompson Bryson, MARLENE ROGERS, DANIEL THOMPSON, JAE CHONG, MARCI HULSEY, CINDY PIINI, PHYLLIS RUNYON, GENNIE HILLIARD, and JUAN BAUTISTA, individually and on behalf of all others similarly-situated, <br><br> Plaintiffs, <br><br> vs. <br><br> VIVINT SOLAR, INC., VIVINT SOLAR HOLDINGS, INC., VIVINT SOLAR DEVELOPER, LLC, and VIVINT SOLAR PROVIDER, LLC, DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: 3:19-cv-07918-WHA <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' (1) MOTION FOR JUDGMENT ON THE PLEADINGS AND (2) WITH REGARD TO PLAINTIFF BAUTISTA MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS** <br><br> **[REDACTED VERSION OF DOCUMENT TO BE SEALED]** <br><br> Date:       May 27, 2021 <br> Time:       8:00 a.m. <br> Courtroom:  12, 19th Floor <br> Judge:      Hon. William H. Alsup |

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................5

II.     FACTUAL BACKGROUND ..............................................................................6

III.    LEGAL STANDARD ..........................................................................................7

IV.     PLAINTIFFS STATE A CLAIM FOR UNLAWFUL LIQUIDATED ....................
        DAMAGES ..........................................................................................................7

        A.      The Termination Fees Are Unlawful Liquidated Damages ............................8

        B.      The Termination Fees Are Not An "Alternative to Performance"...............10

        C.      Real Property Transfers Can Also Trigger Breach .......................................14

V.      CLAIMS FOR DECEPTIVE BUSINESS PRACTICES ARE NOT TIME-
        BARRED ............................................................................................................16

VI.     THE COURT SHOULD NOT COMPEL PLAINTIFF BAUTISTA TO
        ARBITRATION ................................................................................................17

        A.      No Contract Was Formed ...........................................................................17

        B.      The Agreement Is Unconscionable and Unenforceable ..............................19

VII.    CONCLUSION ..................................................................................................21

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

## Federal Cases

*Aanderud v. Superior Court*,
(Ct. App. 2017) 13 Cal. App. 5th 880 .................................................................20

*Adamson v. ADT, LLC*,
(C.D. Cal., Apr. 7, 2014, No. CV1210558DMGPLAX) 2014 WL 12551405 ........13, 14

*Bauer v. Atlantis Events, Inc.*,
(9th Cir. 2016) 645 F. App'x 545 ..........................................................................11

*Brobeck, Phleger & Harrison v. Telex Corp.*,
(1979) 602 F.2d 866 .........................................................................................16, 17

*Cal Fire Local 2881 v. Cal. Pub. Empls. Ret. Sys.*,
(Cal. 2019) 435 P.3d 433 .......................................................................................17

*Castillo v. CleanNet USA, Inc.*,
(N.D. Cal. 2018) 358 F. Supp. 3d 912 ....................................................................18

*Chavez v. United States*,
(9th Cir.2012) 683 F.3d 1102 ..................................................................................7

*Chodos v. West Publ. Co.*,
(9th Cir. 2002) 292 F.3d 992 ...................................................................................7

*Hutchison v. AT & T Internet Servs., Inc.*,
(C.D. Cal. May 5, 2009) No. CV07-3674 SVW (JCX), 2009 WL 1726344 ................13

*Jaquez v. Protection One Alarm Monitoring, Inc.*,
(Cal. Ct. App., Mar. 12, 2014, No. B245829) 2014 WL 962601 ..................................12

*Mahlum v. Adobe Sys. Inc.*,
(N.D. Cal. Jan. 8, 2015) No. C 14-02988 LHK, 2015 WL 124663 ...................8, 11, 12

*Nguyen v. Barnes & Noble Inc.*,
(9th Cir. 2014) 763 F.3d 1171 ............................................................................17, 18

*Pokorny v. Quixtar, Inc.*,
(9th Cir. 2010) 601 F.3d 987 ..................................................................................21

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

*Ridgley v. Topa Thrift & Loan Ass'n.,*
(Cal. 1998) 953 P.2d 484....................................................................................8, 15

*Schenider v. Verizon Internet Services, Inc.,*
(9th Cir. 2010) 400 Fed.Appx. 136 ....................................................................11, 12

*Seraphin v. SBC Internet Servs., Inc.,*
(D. Idaho, Mar. 29, 2010, No. CV 09-131-S-REB) 2010 WL 1326820................12, 13

*Specht v. Netscape,*
(2d Cir. 2002) 306 F.3d 17 .......................................................................................18

*Vasquez v. Libre by Nexus, Inc.,*
(N.D. Cal. Aug. 20, 2018) 2018 WL 5623791.........................................................18

*Walter v. Hughes Commc'ns, Inc.,*
(N.D. Cal. 2010) 682 F. Supp. 2d 1031 ...................................................................21

**State Cases**

*Armendariz v. Foundation Health Psychare Services, Inc.,*
(2000) 24 Cal.4th 8.................................................................................................20

*Beasley v. Wells Fargo Bank,*
(1991) 235 Cal. App. 3d 1383 .................................................................................16

*Biles v. Robey,*
(1934) 43 Ariz. 276 .................................................................................................15

*Blank v. Borden,*
(1974) 11 Cal. 3d 963, 970.............................................................10,11, 12, 13

*Ebbert v. Mercantile Trust Co.,*
(1931) 213 Cal. 496 .................................................................................................15

*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.,*
(1973) 9 Cal.3d 731 ........................................................................... 10, 11, 15

*Grand Prospect Partners, L.P. v. Ross Dress for Less*, Inc.,
(2015) 232 Cal.App.4th 1332 ..................................................................................19

*Gutzi Associates v. Switzer,*
(1989) 215 Cal.App.3d 1636 ...................................................................................15

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

*Harper v. Ultimo*,
(2003) 113 Cal. App. 4th 1402 ...........................................................................19

*Howard Jarvis Taxpayers Ass'n v. City of La Habra*,
(Cal. 2001) 23 P.3d 601, 607–09 ...............................................................16, 17

*Lennar Homes of California, Inc. v. Stephens*,
(2014) 232 Cal.App.4th 673 ................................................................................19

*Little v. Auto Stiegler, Inc.*,
(2003) 29 Cal. 4th 1064 ......................................................................................20

*Morris v. Redwood Empire Bancorp*,
(2005) 128 Cal.App.4th 1305 ............................................................................8, 9

*Ramos v. Westlake Servs. LLC*,
(2015) 242 Cal. App. 4th 674 ..............................................................................18

## **Statutes**

California Business and Professions Code § 17208 ........................................................16

California Civil Code § 1632(b) .....................................................................................18

California Civil Code § 1783 ..........................................................................................16

California  Civil Code § 1671(d) ................................................................................8, 11

California Code of Civil Procedure § 337 ......................................................................16

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

1

## I.    **INTRODUCTION**

2       Months after this Court rejected the same arguments Vivint Solar advanced in its

3   Rule 12(b)(6) motion, Defendants now ask this Court for reconsideration—arguing they

4   are entitled to judgment on the pleadings based on the same contracts this Court previously

5   considered, and that Plaintiff Bautista should be compelled to arbitration.

6       Focusing on Plaintiffs' unlawful liquidated damages claim, Defendants largely

7   ignore Plaintiffs' allegations that these provisions are also unconscionable and unlawful

8   under the California Consumer Legal Remedies Act and the unfairness prong of the Unfair

9   Competition Law. (Dkt. No. 122, Second Amended Complaint ("SAC"), ¶ 9).   Instead,

10  Defendants contend this Court misunderstood or failed to read the (admittedly miniscule)

11  print of the Residential Power Purchase Agreements ("PPA"), and that it simply *assumed*

12  that the provisions allowed Vivint Solar to retain ownership of the solar panel systems

13  after demanding consumers pay termination fees. Accordingly, they further argue, the

14  offending provisions are actually "alternatives to performance," are not triggered by

15  breach, and therefore should not be analyzed as potentially unlawful liquidated damages.

16  The unambiguous contractual language—much of which their motion omits—tells a

17  different story.

18      First, in *every version of the PPA,* Vivint Solar reserves for itself several remedies

19  in the event of "customer default." These remedies include the right to terminate the

20  agreement and demand full payment, force the customer to keep the solar panels on their

21  roof but only to generate power for Vivint Solar's benefit, disconnect and remove the

22  system, put a lien on real property, engage collection agencies, and report consumers to

23  credit reporting agencies. (See, e.g., Dkt. No. 22-7, § 5(n)(ii).) These options are designed

24  to compel performance, not provide reasonable alternatives.

25      Second, *every version of the PPA* allows Vivint Solar to "***retain all right and title***

26  ***to the System Interests***" after a default (or buy-out) payment is made. (Dkt. No. 128 at p.

27  14, emphasis added).  Thus, Defendants' argument that "ownership is transferred" to the

28

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

customer is illusory, as a customer could not sell unwanted solar panels without legal title to them.

Third, while some homebuyers consent to transfer of the system from the original customer, the PPA effectively turns the sale of one's home into a default event if the homebuyer refuses—forcing the customer either to pay a transfer fee that is calculated just like a default payment, or to refuse to pay the transfer fee and be held in default. Section 1671 applies because both the default and transfer payment provide clearly inferior modes of performance, and merely exist to coerce the customer to choose the first one. For these reasons, Defendants are not entitled to judgment on the pleadings for any of Plaintiffs' claims.

Finally, Defendants' renewed motion to compel Plaintiff's claims to arbitration should be denied because no contract was formed. Spanish was the language of negotiation and under the California Translation Act and Vivint Solar was required to provide to him a copy in Spanish at the time of signing, but failed to do so. Consequently, the arbitration provision in his PPA is not only unenforceable, the delegation clause cannot be invoked because it, too, is unconscionable.

## II.   FACTUAL BACKGROUND

Defendants Vivint Solar, Inc., Vivint Solar Holdings, Inc., Vivint Solar Developer, LLC, and Vivint Solar Provider, LLC ("Defendants" or "Vivint Solar") ensnared Plaintiffs Gerrie Dekker, Karen Barajas, as executor of the estate of Thompson Bryson, as well as Marlene Rogers, Marci Hulsey, Cindy Piini, Gennie Hilliard, and Juan Bautista ("Plaintiffs"), along with tens of thousands of other families in California alone, using deceptive sales tactics to secure their consent to PPAs which included unlawful liquidated damages provisions.

This lawsuit concerns two primary fee-triggering events: customer defaults and real property transfers (collectively, "termination fees"). While the issues Defendants raise can be resolved based on the PPAs alone, it is worth noting that Defendants disclosed in discovery that there have been roughly 2,000 customer defaults (with $66 million in

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-6-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

associated "default payments") and 9,300 system transfers from more than 53,000 total California customers during the class period. (SAC ¶ 13) In other words, the vast majority of customers have paid, or would have to pay, exorbitant customer default fees if they sought cancellation or sold their home to a buyer who would not consent to the assignment.[1]

Even after Vivint Solar extracts these payments, the PPAs provide that Vivint Solar shall "own and hold all property rights" in the "System Interests"—i.e. "(1) the System; and (2) any credits, rebates, incentives, allowances, tax benefits, or certificates that are attributed, allocated, or related to the System, the Energy, or environmental attributes thereof…." (See, e.g., Dkt. No. 22-7, § 4(i)) Thus, the notion that termination fees meaningfully transfer ownership of the system to the customer is at odds with the plain language of the agreements Vivint Solar drafted.

## III.   LEGAL STANDARD

"Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir.2012) (quotations omitted).

## IV.   PLAINTIFFS STATE A CLAIM FOR UNLAWFUL LIQUIDATED DAMAGES

In their first claim for relief, Plaintiffs allege that the PPAs contain unlawful liquidated damages provisions. California defines liquidated damages as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement …." *Chodos v. West Publ. Co.*, 292 F.3d 992, 1002 (9th Cir. 2002). Such provisions in consumer contracts are generally "void[,] except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount

---

[1] ███████████████████████████████████████████████████

(Declaration of Corey B. Bennett ("Bennett Decl.") ¶ 4)

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." Cal. Civil Code § 1671(d).

"[A] liquidated damages clause will be construed as an unenforceable penalty, unless there is a relationship between the liquidated damages and the damages the parties anticipated would result from a breach." *Mahlum v. Adobe Sys. Inc.*, No. C 14-02988 LHK, 2015 WL 124663, at *3 (N.D. Cal. Jan. 8, 2015) (Judge Lucy H. Koh) (citing *Ridgley v. Topa Thrift & Loan Ass'n.,* 953 P.2d 484, 488 (Cal. 1998)). In assessing such a provision, however, the court must "examine its true function and operation, not the manner in which it is characterized in the contract." *Morris v. Redwood Empire Bancorp*, (2005) 128 Cal.App.4th 1305, 1314.

## A.  The Termination Fees Are Unlawful Liquidated Damages

As the Court correctly observed, when Vivint Solar deemed Plaintiff Bautista to be in default, it "demanded the twenty years' worth of payments anyway (remaining payments plus amounts already due) along with system removal costs. So Vivint [Solar] would get both the twenty years of payments and the solar system back, presumably to lease it out again. That's a forfeiture." (Dkt. No. 63 at p. 11)

Vivint Solar took this action against Mr. Bautista based on the language in the PPA, in which it expressly reserves the right to not only demand payment in full, but also to:

> (2) leave the System in place on Your Property, but deny You use of the Energy it produces, which may be redirected and sold at Our election; (3) disconnect or take back the System as permitted by applicable law; (4) engage a collection agency to collect payments from You; (5) report Your default to credit reporting agencies; (6) suspend Our performance under the Agreement; and/or (7) exercise any other remedy available to Us in this Agreement or under applicable law.

(*Id.* at § 5(n)(ii).) These remedies are found in the "earlier PPAs"[2] and "newer PPAs."[3]

---

[2] Plaintiffs Dekker, Hilliard, Hulsey, and Bautista entered into PPAs that are virtually identical with respect to customer default and transfer fees.

[3] Plaintiffs Barajas, Rogers, and Piini entered into PPAs that are identical with respect to customer default and transfer fees.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

In the "earlier PPAs," Defendants highlight only a portion of the provision— suggesting that after paying a "Buy-Out Payment" ($7 per watt installed reduced by 5% per year), ownership is transferred to the consumer on an "As Is, Where Is" basis." (See, e.g., Dkt. No. 22-1, § 14 (Hilliard PPA)) They omit the remainder of the "remedies for customer default" section, which provides Vivint Solar the option to (1) terminate the PPA and demand the buy-out payment, (2) leave the system on the house, deny the consumer use thereof, and sell the energy it produces, (3) remove the system, (4) place a lien on the property, (5) engage a collection agency, (6) report the delinquency to credit reporting agencies, and (7) exercise any other remedies provided by law.[4] (*Id.*)

In the "newer PPAs," Defendants cite only the provision defining "default payment" as "(1) the Prepayment Price, (2) other amounts owed, (3) removal fees and costs, (4) lost expected benefits, and (5) other documented losses. After the consumer pays the default payment, ownership is transferred to the consumer on an "As Is, Where Is" basis; provided that We will retain all right and title to the System Interests." (See, e.g., Dkt. No. 22-7, § 6(b)(v) (Piini PPA)) Again, they omit the language from Section § 5(n)(ii), which reserves substantially similar remedies as described above.

These termination fees are triggered by customer breach or default, such as where the consumer fails to pay monthly bills, turns off the system, or refuses to follow (or cannot follow) the transfer procedures upon sale of a home.[5] Under these circumstances, Vivint

---

[4] It should be noted that this language is barely legible both in the Plaintiff's copy and the enlarged digital and hard copies previously provided to the Court at oral argument.

[5] Defendants' attempt to distinguish transfer fees is unavailing and serves only to distract. (Dkt. No. 128 at p. 12, citing (Dkt. No. 22-1, § 13 (Hilliard PPA)). Just like default payments, after a transfer fee, "[Vivint Solar] shall own and hold all property rights in the System and System Interests." (*Id.*, § 12) In other words, if the home-buyer is either not creditworthy or simply refuses to assume the PPA's obligations, the customer must pay a "transfer payment" which is calculated just like the default payment. After paying that huge sum, Vivint Solar still owns the system, but is no longer required to operate or maintain it. As Plaintiffs allege, these onerous transfer provisions can result in a home sales falling through or Vivint Solar customers being forced to reduce the home price to secure the buyer's consent to the transfer. (See, e.g., SAC ¶¶ 18, 19, 21, 25)

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-9-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

1   Solar retains an array of contractual and legal remedies in addition to "all right and title to
2   the System Interests." Defendants' argument that "ownership" is transferred to the
3   customer is belied by the agreement itself.

4   **B. The Termination Fees Are Not An "Alternative to Performance"**

5       In determining whether a provision is a liquidated damages clause versus an
6   alternative to performance, courts look to the "'true function and character' of
7   arrangements which are challenged on this ground." *Blank v. Borden*, 11 Cal. 3d 963, 970
8   (1974), quoting *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.,* 9 Cal.3d 731, 738
9   (1973). However, "when it is manifest that a contract expressed to be performed in the
10  alternative is in fact a contract contemplating but a single, definite performance with an
11  additional charge contingent on the breach of that performance, the provision cannot
12  escape examination in light of pertinent rules relative to the liquidation of damages."
13  *Garrett,* 9 Cal.3d at 738.

14      Here, what Vivint Solar characterizes as "a realistic and rational choice" by its
15  consumers is actually a series of options that Vivint Solar reserves *for itself* in the event
16  of a customer default.  Nor is there truth to the representation that consumers can simply
17  pay a termination fee, continue using the solar energy, "*and take ownership of the solar
18  panels.*" (Dkt. No. 128 at p. 16, emphasis in original) Rather, *every version* of the PPA
19  contains language granting Vivint Solar the right to terminate the PPA and demand
20  payment, to force the customer to keep the system on her roof *but deny her all benefits*, to
21  disconnect and remove the system, to place a lien on real property, and to engage
22  collective agencies and report consumers to credit reporting agencies, all while Vivint
23  retains title to the "System and System Interest." (See, e.g., Dkt. No. 22-7, § 5(n)(ii).)
24  None of these options is a reasonable alternative to performance.

25      As this Court previously recognized, "Vivint [Solar] thought Mr. Bautista breached
26  the contract because they sought 'to hold him in default.' Then, second, Vivint [Solar]
27  sought to extract nearly $23,000 from him, along with costs for removing the solar system,
28  court fees, and 'applicable taxes.'" (Dkt. No. 63 at pp. 10-11). Plaintiff Bautista was not

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-10-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

presented with an alternative to performance here. He was held in breach and Vivint Solar exercised remedies it expressly reserved for itself in drafting the PPAs, including demanding payment, removal, and engaging a debt collector.

Similarly, after Plaintiff Barajas' father passed away, she discovered that he had been duped into signing a 20-year PPA when he was terminally ill. (SAC ¶ 18) When she requested cancellation, Vivint Solar threatened to put a lien on the home, which, as executor of his estate, put her in a bind—forcing her to pay $21,000 so as not to thwart the sale of the home. (*Id.*) In her case, Vivint Solar again exercised remedies reserved for itself under the PPA, which put the customer in a worse financial situation without the benefits promised at the outset.

Defendants rely heavily on *Mahlum v. Adobe Systems Incorporated* (N.D. Cal., Jan. 8, 2015, No. 14-CV-02988-LHK) 2015 WL 124663, aff'd (9th Cir. 2017), a case this Court previously distinguished by noting that, in contrast to the provisions in *Mahlum* (i.e. a 50% ETF), and a 40% cruise cancellation fee in *Bauer v. Atlantis Events, Inc.*, 645 F. App'x 545 (9th Cir. 2016), here "Vivint [Solar] demanded 95% of the remaining payment." (Dkt. No. 63 at pp. 9-11).  Paying 95% of the entire contract immediately, as opposed to over 20 years, and not obtaining the benefit of either the solar power generated or title to the system, is no "realistic or rational choice."

*Mahlum* is distinguishable in a number of other respects as well.  There, the court concluded that, unlike the termination provision in *Blank v. Borden*, Adobe's "ETF is not imposed as a result of breach, [and] it is not a liquidated damages clause within the meaning of § 1671(d)." *Id.* at *5.  Here, however, the termination fees are in fact triggered by breach, whether through the failure to make the required payments, or by a new homebuyer declining to assume the contract.  In such circumstances, the newer PPAs provide Vivint Solar the exclusive right to elect from the specified remedies.

Vivint Solar's other authorities are not helpful to its cause. While the court in *Schenider v. Verizon Internet Services, Inc.* (9th Cir. 2010) 400 Fed.Appx. 136, 138, found that the plaintiff had "a rational choice: he took advantage of lower fees, but with the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-11-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

possibility of an ETF if he cancelled the service early," a default under Vivint Solar's PPA does not trigger a lump-sum payment, but instead triggers a forfeiture of title to the system. It is noteworthy that in *Schneider*, at the time Verizon imposed the ETF, the plaintiff had already "accrued a discount that far outweighed the $99 ETF." *Id.* at *138.  Upon breach here, Vivint Solar may exercise myriad punitive remedies in addition to demanding (1) the Prepayment Price, (2) other amounts owed, (3) removal fees and costs, (4) lost expected benefits, and (5) other documented losses." (See, e.g., No. Dkt. 22-7, § 6(b)(v))

These PPAs are further distinguishable from the case agreements at issue in *Jaquez v. Protection One Alarm Monitoring, Inc.* (Cal. Ct. App., Mar. 12, 2014, No. B245829) 2014 WL 962601, the unpublished California Court of Appeal decision Vivint Solar cites. In *Jaquez*, the court ruled that there were "no allegations that Protection One terminated Jaquez's contract or anyone else's. Instead, it was Jaquez who decided to terminate the contract, not Protection One." *Id.* at *7.   Here, of course, Vivint Solar not only had the right to terminate the PPAs, (and in fact did so), but also the exclusive right to impose a host of obligations and penalties, including the loss of title to the system. As a result, the PPAs in fact contain the "invidious qualities characteristic of a penalty or forfeiture." *Blank v. Borden*, 11 Cal.3d at 970.

As this Court noted, Bautista found himself in the unenviable position of having to decide to "keep the solar system, get the energy produced, and pay twenty years of monthly payments. Or, he could forfeit the system at some point, get no more energy, and still pay 95% the remaining balance. That's not a rational alternative." (Dkt. No. 63 at pp. 9-11).   The Court was correct in noting that Bautista in fact ran this risk, as the PPAs confirm that Vivint Solar retains all rights in the "System and System Interests."

This Court's decision is consistent with the holding in *Seraphin v. SBC Internet Servs., Inc.* (D. Idaho, Mar. 29, 2010, No. CV 09-131-S-REB) 2010 WL 1326820, at *4, where the plaintiff was faced with the "option" of paying a $200 cancelation plus monthly charges or the remainder of the contract. "Seraphin raises a valid concern that paying $179.40 (the total cost for 12 months of internet service at $14.95 a month) or paying $200

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

*plus* the monthly charges the consumer must pay, are not equally advantageous options." *Id*. (emphasis in original). As a result, the court concluded that, unlike the *Hutchison* case relied on by Vivint Solar, "the parties here did not enter 'into an agreement wherein alternative modes of performance were stipulated that could each benefit either party depending on subsequent circumstances.'" *Id.* at *5 (citing *Hutchison v. AT & T Internet Servs., Inc.,* No. CV07-3674 SVW (JCX), 2009 WL 1726344, at *5 (C.D. Cal. May 5, 2009), aff'd sub nom. *Hutchison v. Yahoo! Inc*., 396 F. App'x 331 (9th Cir. 2010). Instead, "it was apparent at the time of the contract that 'one mode of performance would be at all or at most times inferior.'" *Id.* The court ultimately held that "dismissal of Seraphin's claim at this stage in the litigation would be premature because he has presented a plausible claim for relief sufficient to withstand the motion to dismiss." *Id.* at *6. The same conclusion is warranted here, because all or most of the time, the PPA's default provisions present an inferior "mode of performance" designed to force payment for all 20 years of power one way or another. At a minimum, this presents a question of fact, unsuitable for resolution on the pleadings.

In *Hutchison*, the court construed *Blank v. Borden* to mean that, "if one mode of performance had been clearly inferior to the other at the time of the contract, and had existed merely to coerce the owner to choose the first mode, then the element of rational choice would have been lacking and the court indicated it would have examined the provision under Section 1671." *Id*. at *4. Again, Section 1671 applies because both of these provisions—the default payment and transfer payment—provide clearly inferior modes of performance, and merely exist to coerce the owner to choose the first mode, payment for twenty years' worth of power generation.

In *Adamson*, the court granted Defendant's motion for summary judgment because, unlike Vivint Solar's default provisions, "the ETF of 75% is *always* less than the option of paying the contract in full, the Court concludes that, viewed at the point of contracting, the option of paying the ETF was a rational choice." *Adamson v. ADT, LLC*, (C.D. Cal., Apr. 7, 2014, No. CV1210558DMGPLAX) 2014 WL 12551405, at *8 (emphasis in

-13-

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

original).  Thus, the court concluded, consumers had a rational alternative to performance "because it would be less expensive than fulfilling her obligations under the full term of the contract." *Id.* Here, the termination fees *often exceed* the cost of performing the full term. There are multiple reasons for this inequity. First, Vivint Solar's five percent annual reduction in calculating the "Prepayment Price" ("Buy-Out Payment" in "earlier PPAs")—effectively, a crude determination of the present discounted value of the energy costs—does not offset the other costs, fees, and losses the PPAs expressly allow them to recover. The discount is likely to be negated by the "other amounts owed, (3) removal fees and costs, (4) lost expected benefits, and (5) other documented losses"  (See, e.g., Dkt. No. 22-7, § 6(b)(v)) Additionally, as Defendants' motion concedes, the customer is also on the hook for "investment tax credit recapture"—the amount of tax credits Vivint Solar has to repay—though they do not mention that Vivint Solar also accounts for ██ ███████████████████████████████████████████████████████████████ ██████████████         (Bennett Decl. ¶ 3) The need to explain how these contractual remedies play out in practice is a factual question not suitable for judgment on the pleadings.

## C.    Real Property Transfers Can Also Trigger Breach

While the primary focus of the liquidated damages issue is "termination fees" that flow from customer default, there is another event that can trigger breach: real property transfers. At the time Plaintiffs entered into their PPAs, they did not know that selling their homes might put them in breach. Where a prospective homebuyer consents to transfer of the system, no breach occurs. However, where the buyer does not, the customer has two choices: (1) pay a "transfer payment" that is calculated just like a default payment, or (2) refuse to pay the "transfer payment" and be held in default.[6]

Looking at the "true function" of this fee, it treats a transfer refused by a homebuyer (through no fault of the customer) as breach—relieving Vivint Solar of any obligation to

---

[6] It is not surprising that a new homebuyer would not want to assume responsibility for a solar system that charges *more* for power than the local utility or that is notorious for deceptive business practices. (See, e.g., SAC ¶¶ 19, 21, 24)

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

operate and maintain the system all while collecting a fee that is calculated as if a breach has occurred. Thereafter, Vivint Solar still retains all right and title to the system and system interests. Thus, the transfer fee serves to compel performance of an act, a function that typifies penalty provisions. *Garrett,* 9 Cal.3d at 739, citing *Biles v. Robey* (1934) 43 Ariz. 276, 286.  It is a classic "heads I win, tails you lose" proposition.

Defendants claim there are "three additional alternatives" in "newer PPAs" when there is a sale of the property: (1) prepay the remaining monthly payments, keep the system on the property, and continue getting solar energy; (2) relocate the system to a new property; or (3) purchase the system if the sale of the property occurs after the sixth year." (Dkt. No. 128 at p. 12; Dkt. No. 22-7, § 5(n) (Piini PPA)). This first "alternative" is nonsensical. Why would a consumer prepay a 20-year contract for a system on the house they are selling and will not be living at to "continue getting solar energy"? Relocating the system to a new property is also not an alternative to performance because the customer would still be under contract at the new property. It would simply be performance of the existing agreement at a new location.

The "third alternative" Defendants tout, the "early purchase option price," is irrelevant because Plaintiffs have not alleged that it is a liquidated damages provision. "Payment before maturity is not a breach of the contract, but simply an additional mode of performance on the borrower's part; the prepayment charge is not a penalty imposed for default, but an agreed form of compensation to the lender for interest lost through prepayment, additional tax liability or other disadvantage." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 978 (1998), citing *Gutzi Associates v. Switzer* (1989) 215 Cal.App.3d 1636, 1644). This provision gives the customer a one-time option after the sixth anniversary of operation (which is still two years away for Plaintiff Piini) to purchase the system outright and have Vivint Solar continue to maintain and operate the system under the terms of the PPA. (See, e.g. Dkt. No. 22-7, § 3(c)) Unlike the customer default provisions, it is not triggered by breach. The customer elects it, and it does not function as a penalty.  *Ebbert v. Mercantile Trust Co.* (1931) 213 Cal. 496, 499 ("[A]ny provision by

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

1    which money or property would be forfeited without regard to the actual damage suffered

2    would be an unenforceable penalty.")

3        Thus, Defendants' are not entitled to judgment on the pleadings as to Plaintiffs'

4    unlawful liquidated damages claims and the derivative CLRA and UCL claims asserted.

## V.    CLAIMS FOR DECEPTIVE BUSINESS PRACTICES ARE NOT TIME-BARRED

7        This Court has already considered and rejected the argument that any Plaintiff's

8    claim is time-barred. (Dkt. No. 47 pp. 10-11) The applicable statutes of limitations for

9    Plaintiffs' claims are either three or four years. Cal. Code Civ. P. § 337; Cal. Bus. Prof.

10   Code § 17208; Cal. Civ. Code § 1783; *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d

11   1383, 1401 (1991). Typically, "whether a contract is fair or works an unconscionable

12   hardship is determined with reference to the time when the contract was made . . . ." *See*

13   *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (1979). However, Vivint

14   Solar's efforts to enforce unlawful provisions did not occur for months or years after

15   Plaintiffs entered into PPAs, thus putting their claims within the applicable three or four-

16   year statutes of limitations. Additionally, as this Court noted, "no reasonable person

17   discovers an improper bill and immediately sues. Instead, they investigate." (Dkt. No. 47

18   at p. 11) The Court also noted there were factual questions as to whether protracted

19   negotiations or delay might have tolled the limitations period, but ultimately found the

20   complaint "not facially untimely." (*Id.*) This reasoning applies to all Plaintiffs.

21       Defendants' argument underscores that this motion is a procedurally improper

22   motion for reconsideration as to Plaintiff Dekker at the very least. In addition to denying

23   the motion to dismiss Plaintiff Dekker's claims, this Court later granted a motion for leave

24   to amend—discussing the theory of continuous accrual, where "a series of wrongs or

25   injuries may be viewed as each triggering its own limitations period, such that a suit for

26   relief may be partially time-barred as to older events but timely as to those within the

27   applicable limitations period." (Dkt. No. 63 at p. 4, citing *Howard Jarvis Taxpayers Ass'n*

28   *v. City of La Habra*, 23 P.3d 601, 607–09 (Cal. 2001)). In the case of Plaintiff Bautista,

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-16-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Vivint Solar took "brand new, unforced actions" in demanding money allegedly owed, holding him in default, and sending him to debt collection. (*Id.*) "These ongoing violations do not reset the clock for earlier activity. But, Mr. Bautista having sued in December 2019, Vivint [Solar]'s renewed enforcement efforts in 2018 and 2019 remain within three and four-year CLRA and UCL limitations periods. And they remain (at least partially) within the one or four-year limitations under the Translation Act." (*Id.*)

The same reasoning applies to the remaining Plaintiffs, each of whom continued to receive monthly bills, requested cancellation, and either could not afford to buy out the PPA or begrudgingly bought it out to effectuate a real property sale. Defendants argue claims relating to deceptive sales practices would be time-barred because they must be measured from the time of the sales pitch, but they are wrong. Such logic assumes last-element accrual and completely ignores the discovery rule—as if an unwitting consumer knows she is being deceived but still enters into a 20-year contract. All of Plaintiffs' claims are within the applicable statutes of limitations.

## VI.   THE COURT SHOULD NOT COMPEL PLAINTIFF BAUTISTA TO ARBITRATION

The Court should deny Defendants' renewed motion to compel Plaintiff Bautista to arbitration for two reasons: (1) he never assented to the PPA because negotiations were conducted in a language different from the language of the written contract in violation of California law, and (2) the arbitration agreement is nevertheless unconscionable.

### A. No Contract Was Formed

In its March 24, 2020 order, this Court found Plaintiff Bautista's arbitration agreement to be defective. (Dkt. No. 63 at p. 4) Time cannot cure the defects. The "mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The manifestation of assent is judged objectively. *See Cal Fire Local 2881 v. Cal. Pub. Empls. Ret. Sys.*, 435 P.3d 433, 455 (Cal. 2019) (Kruger, J., concurring); WITKIN, SUMMARY OF CAL. L., CONTRACTS, § 767 (11th ed. 2017). When a party's conduct

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

could not reasonably manifest assent, no contract is formed. *See Barnes & Noble*, 763 F.3d at 1177–78 (citing *Specht v. Netscape*, 306 F.3d 17 (2d Cir. 2002)).

The California Legislature sought to protect vulnerable consumers by enacting the California Translation Act which provides,

> Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, that includes a translation of every term and condition in that contract or agreement.

Cal. Civ. Code § 1632(b).

Plaintiff Bautista is a native Spanish speaker with virtually no English proficiency. (Dkt. No. 1) When a Vivint Solar representative knocked on his door and delivered a sales pitch, the two spoke exclusively in Spanish. Plaintiff Bautista was then required to sign a PPA in English and was never sent a Spanish translation. (Dkt. Nos. 1, 46).

Defendants argue that "[c]ontrolling California provides that signing a contract in a language one does not understand does not by itself raise an issue of contract formation, only a factor that bears on analysis of procedural unconscionability." But the very authorities they cite equates the failure to provide a contract in the language of negotiation with fraud in the execution. *Ramos v. Westlake Servs. LLC*, 242 Cal. App. 4th 674, 688, (2015)(concluding defendant "failed to establish an agreement to arbitrate because it did not demonstrate the existence of mutual assent."); see also *Vasquez v. Libre by Nexus, Inc.*, 2018 WL 5623791 (N.D. Cal. Aug. 20, 2018)(Spanish-speaking asylum seekers fraudulently induced to signing English contract containing arbitration provision). Additionally, in *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 933 (N.D. Cal. 2018), the Court refused to enforce an arbitration provision in a franchise agreement where the Spanish-speaking plaintiff could not understand the terms of the documents he signed, had no opportunity to review the terms before signing, and reasonably relied on the representations.

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

By September 2019, Vivint Solar had begun providing a 23-page "Solar Consumer Protection Guide" from the California Public Utilities Commission at the front of each electronic PPA document package. (Bennett Decl. ¶ 5) On the third page, it states "YOU HAVE THE RIGHT…to a copy of a solar contract and financing agreement in the language in which the salesperson spoke to you. If a solar provider comes to your home to sell you solar panels and speaks to you in a language other than English (such as Spanish), you have a right to a copy of the contract in that language." (*Id*. at p. 3) Defendants failed to heed the law and therefore have no agreement with Plaintiff Bautista under which they could compel arbitration.

**B.    The Agreement Is Unconscionable and Unenforceable**

  **1.    The Agreement is Procedurally Unconscionable**

Even if Defendants' prior argument had merit, the Court still should not enforce the agreement because it is unconscionable.[7] Indeed, Defendants appear to ask the Court for such a determination. An agreement is procedurally unconscionable if there was oppression or surprise due to unequal bargaining power. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003). Surprise is "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673, 688. Oppression stems from "(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P. v. Ross Dress for Less*, *Inc.* (2015) 232 Cal.App.4th 1332, 1348, fn. omitted.)

---

[7] To the extent the Court finds that the PPA delegates arbitrability, Plaintiff Bautista challenges the unconscionability of the delegation clause on the same grounds.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Contracts of adhesion, those imposed and drafted by a party of superior bargaining strength and offered on a take-it-or-leave-it basis, are procedurally unconscionable. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003). The PPA is a contract of adhesion. *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 895 (Ct. App. 2017). Its customers are also "unsophisticated part[ies] … which, coupled with the 'arcane nature' of the delegation clause, added to its oppression and surprise." *Id.* (citation omitted). Plaintiff Bautista's PPA, a carbon copy form with miniscule type—all in English—was signed following a conversation conducted entirely in Spanish. No translation was available or offered and the representative even circled the number zero multiple times to assure Bautista that it would cost nothing. Under California law, consumers are also required to be given notice of their right to cancel within three days of signing, which the "Solar Consumer Protection Guide" cited above confirms. (Bennett Decl. ¶5, Exh. A, at p. 3) This amounts to a high degree of procedural unconscionability.

## 2. The Agreement is Substantively Unconscionable

Substantive unconscionability refers to the terms that unreasonably favor one party, or whether the terms of the agreement are "so one-sided as to shock the conscience." *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071; *see also Armendariz v. Foundation Health Psychare Services, Inc.*, 24 Cal.4th 8 at 114 (2000)(Substantive unconscionability focuses on overly harsh or one-sided results). Unable to understand the terms of the PPA and unaware of his right to cancel within three days of signing, Plaintiff Bautista was at the mercy of the PPA's terms. The resulting financial consequences have been devastating. On the hook for 20 years of estimated energy benefits and lost revenue, in addition to the Prepayment Price, removal costs, and other amounts owed, he could not remotely afford the termination fees and has since been sent to debt collection. A reasonable termination fee would not threaten most consumers with financial ruin. The impact of this threat does not stop with the consumer; it affects families, home buyers and sellers, and the market in general.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-20-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Additionally, the PPA's notice requirement is precisely the type of "[company]-controlled dispute resolution mechanism" is intended to give Vivint Solar a "free peek" at the consumer's case. Coupled with the shortened contractual limitations period, this provision further tightens the grip Vivint Solar has on consumers and confers on it an unfair advantage in any dispute that may arise, thereby rendering it unconscionable. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010).As this Court has stated, the "'shock the conscience' standard is a high one," and Plaintiff here has pleaded sufficient facts to establish unconscionability. *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1046–47 (N.D. Cal. 2010).

## VII.   CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED: May 4, 2021                    Respectfully submitted,


By: */s/ Corey B. Bennett*
Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
mmatern@maternlawgroup.com
jboxer@maternlawgroup.com

Corey B. Bennett (SBN 267816)
**MATERN LAW GROUP, PC**
1330 Broadway, Suite 428
Oakland, California 94612
Telephone: (510) 227-3998
Facsimile: (310) 531-1901
cbennett@maternlawgroup.com

*Attorneys for Plaintiffs, individually, and all others similarly situated*

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, SUITE 200
MANHATTAN
BEACH, CA 90266

-21-

PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS