**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
Email: mmatern@maternlawgroup.com
Joshua D. Boxer (SBN 280126)
Email: jboxer@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

**MATERN LAW GROUP, PC**
Corey B. Bennett (SBN 267816)
Email: cbennett@maternlawgroup.com
Kiran Prasad (SBN 255348)
Email: kprasad@maternlawgroup.com
1330 Broadway, Suite 428
Oakland, California 94612
Telephone: (510) 227-3998
Facsimile: (310) 531-1901

*Attorneys for Plaintiff GERRIE DEKKER, individually
and on behalf of all others similarly-situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, individually and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIVINT SOLAR, INC., VIVINT SOLAR HOLDINGS, INC., VIVINT SOLAR DEVELOPER, LLC, and VIVINT SOLAR PROVIDER, LLC, DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 4:19-cv-07918<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: February 25, 2022<br>Time: 9:30 a.m.<br>Courtroom: 12<br>Judge: The Honorable William H. Alsup<br><br>**[REDACTED VERSION OF DOCUMENT TO BE SEALED]** |

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 25, 2022 at 9:30 a.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William H. Alsup at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Gerrie Dekker, individually and on behalf of all others similarly situated, ("Plaintiff") will and hereby does move the Court of an order certifying the following injunctive and declaratory relief class pursuant to Federal Rules of Civil Procedure, Rules 23(a) and 23(b)(2).

Specifically, Plaintiff requests that the Court:

1.      Certify that this action is maintainable as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(a) and 23(b)(2);

2.      Certify the following class:

All persons in California who entered into Version 1 of the Residential Solar Power Purchase Agreement with Vivint Solar.

3.      Appoint Gerrie Dekker as a representative for the proposed Class; and

4.      Appoint Matthew J. Matern, Joshua D. Boxer, and Corey B. Bennett, of Matern Law Group, PC, as Class Counsel for the proposed Class.

This Motion is made on the grounds that the proposed class is are sufficiently numerous such that joinder is impracticable; there are questions of law and fact common to the class members; Plaintiff's claims are typical of the claims of the class members; and that the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

This motion is based on this notice, the attached Memorandum of Points and Authorities, the declarations of Joshua D. Boxer and Nora Ostrofe, MBA; Plaintiff's Trial Plan; the records, pleadings, and papers filed in this action, and any other documentary and oral evidence or argument that may be presented at the hearing.

\\

\\

Dated:  December 2, 2021                    **MATERN LAW GROUP, PC**


                              By:        s/ Corey B. Bennett
                                       _____
                                       MATTHEW J. MATERN
                                       JOSHUA D. BOXER
                                       COREY B. BENNETT
                                       Attorneys for Plaintiff GERRIE DEKKER,
                                       individually and on behalf of all others similarly
                                       situated

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF EVIDENCE .............................................................................. 3

      A.    The Default Provisions Are Identical ....................................................... 3

      B.    Vivint Solar Has Never Attempted to Calculate Its Losses in the Event of Default ............... 4

      C.    Vivint Solar Has Never Attempted to Calculate Losses in the Event of Transfer ................. 5

III.  PLAINTIFF'S CLAIMS ..................................................................................... 6

IV.   CLASS DEFINITION ........................................................................................ 6

V.    ARGUMENT ..................................................................................................... 6

      A.    Plaintiff Satisfies Rule 23's Certification Requirements. ........................ 7

      B.    Plaintiff Satisfies All the Requirements of Rule 23(a) ............................ 8

            1.    Joinder Is Impracticable ................................................................. 8

            2.    The Class Is Ascertainable ............................................................. 9

            3.    There Are Numerous Common Questions of Fact and Law Applicable
                  to the Class ................................................................................... 10

            4.    Plaintiff Dekker's Claims Are Typical of the Class .................... 15

            5.    Plaintiff Dekker Will Fairly and Adequately Represent the Class ........ 17

      C.    Plaintiff Satisfies the Requirements of Rule 23(b)(2) ........................... 18

            1.    Proving that Vivint Solar's Version 1.0 PPA Is Illegal, Void, and Unenforceable ....
                  Involves Common Issues ............................................................. 20

VI.   CONCLUSION ................................................................................................ 20

TABLE OF CONTENTS TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................ 8, 11

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) .............................................................................. 7

*B.K. by next friend Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) .................................................................................. 19

*Bally v. State Farm Life Ins. Co.*,
No. 18-cv-04954, 2020 WL 1643681 (N.D. Cal. April 2, 2020) .............................. 9

*Bayol v. Zipcar, Inc.*,
78 F. Supp. 3d 1252 (N.D. Cal. 2015) .................................................................... 15

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................................................... 8

*Blair v. Rent-A-Center*, No. C,
17-02335, 2018 WL 5728924 (N.D. Cal. Nov. 1, 2018) ........................................ 15

*Blank v. Borden*,
11 Cal.3d 963 (1974) .............................................................................................. 12

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ................................................................................ 10

*Caldwell v. UnitedHealthcare Ins. Co.*,
No. C 19-2861 WHA, 2020 WL 7714394 (N.D. Cal. Dec. 29, 2020) ................... 18

*Cellphone Termination Fee Cases*,
193 Cal. App. 4th 298 (2011) ................................................................. 1, 11, 13, 14

*Cole v. Asurion Corp.*,
267 F.R.D. 322 (C.D. Cal. 2010) ........................................................................ 7, 16

*Congdon v. Uber Techs., Inc.*,
291 F. Supp. 3d 1012 (N.D. Cal. 2018) .................................................................. 20

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) .................................................................................. 10

*Del Monte Props. & Invs., Inc. v. Dolan*,
26 Cal. App. 5th Supp. 20 (2018) ........................................................................... 14

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) .................................................................................... 10

*Esparza v. SmartPay Leasing, Inc.*,
    No. 17-cv-3421, 2019 WL 2372447 (N.D. Cal. June 5, 2019).................................... 11

*Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*,
    9 Cal.3d 731 (1973) ................................................................................... 11, 12, 15

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..................................................................................................... 17

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (2002) ...................................................................................... 7

*Hahn v. Massage Envy Franchising LLC*,
    Case No. 3:12-CV-00153, 2014 WL 5099373 (S.D. Cal. Apr. 15, 2014)............... 7, 12, 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................ 16, 17

*Hernandez v. Wells Fargo Bank, N.A.*,
    No. C 18-07354, 2020 WL 469893 (N.D. Cal. Jan. 29, 2020) ............................ 7, 15

*Hitz v. First Interstate Bank*,
    38 Cal. App. 4th 274 (1995) ................................................................................ passim

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011).................................................................................. 8

*Hutchison v. AT&T Internet Servs. Inc.*,
    2008 WL 11334484 (C.D. Cal. July 9, 2008).......................................................... 12

*Hutchison v. Yahoo! Inc.*,
    396 F. App'x 331 (9th Cir. 2010) ................................................................................ 2

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 1917, 2013 WL 5429718 (N.D. Cal. June 20, 2013) ...................................... 10

*In re Chase Bank USA, N.A. CHECK LOAN Cont. Litig.*, 274 F.R.D. 286 (N.D. Cal. 2011)................. 16

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010)................................................................................ 20

*In re DirecTV Early Cancellation Litig.*,
    738 F. Supp. 2d 1062 (C.D. Cal. 2010) (denying motion.......................................... 15

*In re Facebook, Inc., PPC Advertising Litig.*,
    282 F.R.D. 446 (N.D. Cal. 2012)................................................................................. 9

T<small>ABLE OF</small> A<small>UTHORITIES TO</small> P<small>LAINTIFF'S</small> M<small>OTION FOR</small> C<small>LASS</small> C<small>ERTIFICATION</small>

*In re High-Tech Employees Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................................ 16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 17

*Irwin v. Mascott*,
    96 F. Supp. 2d 968 (N.D. Cal. 1999) ..................................................... passim

J.); *I.N. by & through Zarinah F. v. Kent*, No. C,
    18-03099 WHA, 2019 WL 1516785 (N.D. Cal. Apr. 7, 2019) ......................... 18

*Johnson v. Gen. Mills, Inc.*,
    275 F.R.D. 282 (C.D. Cal. 2011) .................................................................. 7

*Jordan v. L.A. Cty.*,
    669 F.2d 1311 (9th Cir. 1982) ..................................................................... 9

*Marlo v. United Parcel Serv. Inc.*,
    251 F.R.D. 476 (C.D. Cal. 2008) .................................................................. 8

*Morgan v. U.S. Soccer Federation*,
    No. 2:19-cv-1717, 2019 WL 7166978 (C.D. Cal. Nov. 8, 2019) ....................... 8

*Munguia-Brown v. Equity Residential*,
    2017 WL 4838822 (N.D. Cal. Oct. 23, 2017) ............................................. 7, 13

*Norris Wilson v. Delta-T Group, Inc.*,
    270 F.R.D. 596 (S.D. Cal. 2010) .................................................................. 8

*O'Connor v. Boeing N. Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) ................................................................ 10

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ..................................................................... 10

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................... 19

*Perea v. Walgreen Co.*,
    939 F. Supp. 2d 1026 (C.D. Cal. 2013) ........................................................ 6

*Plascencia v. Lending 1st Mortg.*,
    259 F.R.D. 437 (N.D. Cal. 2009) ............................................................. 7, 16

*Ridgley v. Topa Thrift & Loan Ass'n*,
    17 Cal.4th 970 (1998) ................................................................................ 6

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................... 10

7

*Seraphin v. SBC Internet Servs., Inc.*,
    2010 WL 1326820 (Idaho 2010) ................................................................ 12

*Stockwell v. City & Cty. of S.F.*,
    2014 WL 1623736 (9th Cir. Apr. 24, 2014) ...................................... 10, 11, 15

*Sweet v. Devos*,
    No. C 19-03674, 2019 WL 5595171 (N.D. Cal. Oct. 30, 2019) .................. 8

*Thomas & Thomas Rodmakers v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ............................................................. 18

*Utility Consumers' Action Network, Inc.*,
    135 Cal. App. 4th 1023 (2006) ........................................................... 13, 14

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ............................................................... 11

*Vietnam Veterans of Am. v. C.I.A.*,
    288 F.R.D. 192 (N.D. Cal. 2012) ............................................................ 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................... 10, 17, 18, 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................. 16

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................. 7, 8

**<u>Statutes</u>**

Business & Professions Code § 17200 ............................................................. 6

California Civil Code § 1671(d) ........................................................... 1, 7, 20

Civil Code § 1671 .............................................................................................. 6

**<u>Rules</u>**

Fed. R. Civ. Proc., Rule 23 .................................................................. passim

Fed. R. Civ. Proc., Rule 23(g) ......................................................................... 18

Fed. R. Civ. Proc., Rule 23(a) ........................................................................... 2

Fed. R. Civ. Proc., Rule 23(a) ............................................................... passim

Fed. R. Civ. Proc., Rule 23(a)(1) ....................................................................... 8

Fed. R. Civ. Proc., Rule 23(a)(2) ..................................................................... 10

TABLE OF AUTHORITIES TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Fed. R. Civ. Proc., Rule 23(a)(4) ..................................................................................... 17, 18

Fed. R. Civ. Proc., Rule 23(b) ............................................................................................... 8

Fed. R. Civ. Proc., Rule 23(b)(2) ................................................................................... passim

Fed. R. Civ. Proc., Rule 23(b)(3) .......................................................................................... 19

**<u>Other Authorities</u>**

*Class Certification in the Age of Aggregate Proof*,
   84 N.Y.U. L. Rev. 97 (2009) ........................................................................................... 18

Newberg on Class Actions § 4:26 (West 2021) ..................................................................... 19

Rules Advisory Committee Notes,
   39 F.R.D. 69 (1966) ........................................................................................................ 19

TABLE OF AUTHORITIES TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The central question in Plaintiff Gerrie Dekker's Rule 23(b)(2) motion for class certification is whether common questions may yield common answers in determining whether Vivint Solar's Version 1.0 contracts contain unlawful liquidated damages provisions under California Civil Code section 1671(d). The answer is necessarily yes, for the following reasons:

First, it is undisputed that Ms. Dekker and approximately 825 other Class Members signed *identical* residential Power Purchase Agreements ("PPA") in which Vivint Solar reserves the right to impose cumulative remedies in the event of customer default or transfer (collectively, "Default Provisions"). As these PPAs contain the very same liquidated damages clauses, the legality of those clauses raises common issues of fact and law for adjudication. Indeed, Vivint Solar has calculated the Default Payment owed by class members based on the same specific formula throughout the class period.

Second, it is undisputed that Vivint Solar *never* made a "reasonable endeavor" to estimate losses from default or transfer before executing the very first PPA – although whether it did or not is a common question to be resolved at a later date. Liability will ultimately turn on the common issue of the steps Vivint Solar took to calculate its losses at the outset of its PPA program, as "[c]ost analyses or studies made *subsequent* to the agreements are not relevant to the validity of the fees." *Irwin v. Mascott*, 96 F. Supp. 2d 968, 977 (N.D. Cal. 1999) (citing *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 291–92 (1995)). "[P]ost hoc rationalization[s]" will not do. *Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 326 (2011).

Third, Vivint Solar can neither establish that calculating damages would be "impracticable" nor "extremely difficult to determine" in light of the fact that it set specific reserves to account for any losses from class member defaults.

Fourth, though not relevant to the liquidated damages analysis, Plaintiff will be able to rebut any post hoc attempt by Vivint Solar to claim that its Default Price is an appropriate proxy for its losses. Vivint Solar's public filings, along with its corporate designee's testimony, reveal that its business model is not significantly dependent on the revenue generated from these 20-year PPAs

(another reason it will lose on the merits, based on common, classwide evidence). Rather, Vivint Solar bundles the vast majority of its PPAs into "tranches" which it sells to third-party investment partners (*i.e.*, big banks) in which future cash flows from the PPAs (along with the accompanying tax benefits) are allocated to investment partners.[1] Vivint Solar already accounts for any risk of customer defaults when it structures the pricing for these securities. Thus, it could only experience an adverse impact from customer defaults if they were so numerous in the aggregate, i.e., defaults by a significant segment of the class, as to affect the price (or interest rate) at which they could market these securities to investors because they would appear a riskier investment.

Fifth, Vivint Solar's corporate designee's testimony and "Customer Operations Policy Manual"—common, classwide evidence—confirm that the primary purpose of its default provisions is not to account for losses actually sustained, but to coerce the consumer to choose one mode of performance—continued payment for 20 years of power generation under the PPA, depriving class members of the element of rational choice—which the Ninth Circuit found dispositive in *Hutchison v. Yahoo! Inc.*, 396 F. App'x 331 (9th Cir. 2010).

Sixth, the determination of whether these contracts contain unlawful liquidated damages provisions does not depend on any individualized inquiry, as the validity of a liquidated damages clause is determined by the circumstances existing at the time the fee provisions are inserted into an agreement, and not by subsequent events. *Irwin*, 96 F. Supp. 2d at 977 (citing *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 291, 288 (1995)). Whether Plaintiff ultimately succeeds in demonstrating that the default provisions in these identical PPAs constitute unlawful liquidated damages clauses or not, there is no doubt that such a determination poses common legal and factual questions suitable for resolution on a class-wide basis.

Last, Plaintiff's Trial Plan, filed concurrently herewith, demonstrates that the foregoing common factual and legal issues can be manageably tried over the span of three to five court days. Therefore, Plaintiff respectfully requests that the Court grant the requested class certification.

---

[1] This form of securitization, known as an "asset-backed security" or "ABS," is similar to the packaging and selling of mortgages or other consumer finance products, such as automobile loans or credit card debt.

## II. SUMMARY OF EVIDENCE

### A. The Default Provisions Are Identical

Vivint Solar's primary "product" is not actually a solar panel system, but the Residential Power Purchase Agreement ("PPA"), a 20-year agreement under which it charges customers a fee based on how many kilowatt hour of electricity the solar system generates, regardless of how much power a consumer actually uses. *See* Plaintiff's Appendix of Evidence in Support of Motion for Class Certification ("Appx.") Ex. 1, Declaration of Joshua D. Boxer ("Boxer Dec."); Appx. Ex. 2, Declaration of Nora Ostrofe ("Ostrofe Dec.") ¶ 8. REDACTED

Appx. Ex. 4, Deposition of Vivint Solar's Rule 30(b)(6) witness, Mr. Colton Burr ("Burr Dep.") 14:9–15, 16:2–11. REDACTED

. *Id.* at 13:8–14:8. REDACTED

*Id.* at 128:13–131:4, 154:2–15.

*All Version 1.0 PPAs* set forth the customer conduct that constitutes "Customer Default":

> Customer Default means the occurrence of any of the following: (i) Your Failure to make when due, any payment under this Agreement and such failure is not remedied within (30) days after we give you notice of such failure; (ii) Your failure to perform any of your material obligations under this Agreement, and such failure is not cured within (30) days after we give you written notice of such a failure; (iii) You deny us, our contractors, governmental authorities, or Electric Distribution Company access to your property and such access is not given within thirty (30) days after we give you written notice of such failure to provide such access; or (iv) Your bankruptcy, insolvency, or admission of your inability to pay your debts as they mature.

Appx. Ex. 10, VSLR0000639–40 ¶ 11.

*All Version 1.0 PPAs* also contain language granting Vivint Solar the ability to seek cumulative remedies upon default, including the right to terminate the PPA and demand payment, to force the customer to keep the system on her roof *but deny her all benefits*, to disconnect and remove the system, and to engage collective agencies and report consumers to credit reporting agencies, all while Vivint retains title to the "System and System Interest."

> If a Customer Default occurs, we may exercise any of the following remedies: (i) terminate this Agreement and demand you pay a Buy-Out Payment; (ii) leave the System in place on your home, but deny you any access to and use of the Energy it produces, which may be redirected to third parties at our election; (iii) remove the System from you home, or (iv) exercise any other remedy provided by law. Notwithstanding the foregoing, your liability arising from a Customer Default will not exceed the Buy-Out Payment that you will be required to pay upon such Customer Default plus any amounts for Energy and interest that has accrued on such unpaid amounts.

*Id.*

As this Court previously noted, "[t]he default payment definition assigns ownership of the system to the customer once payment is made, but the remedies section just above it states that Vivint can demand both default payment and—as indicted by "and/or"—pursue other listed remedies as well, such as taking back the system." Dkt. No. 140 at 4.[2]

The Buy-Out Payment referred to in the default section above is a fixed amount which is "Seven Dollars ($7) per watt installed." *Id.* REDACTED

Appx. Ex. 4, Burr Dep. 32:12–18; Ex. 6, VSLR0000954.[4]

### B. Vivint Solar Has Never Attempted to Calculate Its Losses in the Event of Default

Fatal to Vivint Solar's defense on the merits, the evidence demonstrates that REDACTED

Appx. Ex. 4, Burr Dep. 109:15–110:4, 112:4–10, 140:7–10. And the cumulative default remedies, which include the Buy-Out Payment and other fees, are not based on any projected losses or individualized circumstances. Rather, the Default Price

---

[2] This Court further held that, "The Newer PPAs continue to grant Vivint the right to seek multiple remedies, and even specify that the available remedies are "cumulative"—Vivint explicitly need not seek only default payment, for example. Plaintiffs have sufficiently pled, at minimum, that the language of the termination provisions in both the Older and Newer PPAs can be read to impose invalid liquidated-damages provisions." Dkt. No. 140 at 5.

[3] "Default Payment" and "Default Price" are used interchangeably herein and in the accompanying declarations.

[4] The Court previously took judicial notice of the ten original Plaintiffs' PPAs, including "standard copies" of Versions 1.0, 2.6, and 2.8. Dkt. No. 140. While VSLR0000954 summarizes the Default Provisions by version, the specific provisions across versions can be found at Dkt. 25-1 at 3 § 11 (Dekker, V1.0).

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Appx. Ex. 4, Burr Dep. 75:9–76:17, 76:18–77:1, 76:18–77:24, 191:5–192:10; Appx. Ex. 2, Ostrofe Dec. ¶¶ 8–13. [REDACTED]

[REDACTED] Appx. Ex. 4, Burr Dep. 46:19–24, 148:18–149:13, 190:1–191:3. Yet that hasn't stopped it from wielding the Default Price with great chilling effect—deterring cancellation with a stunningly large debt threat that it warns customers it will aggressively collect with the assistance of debt collection agencies and attorneys. [REDACTED]

[REDACTED]

The intended deterrent effect on the class is not merely speculative; it is plainly admitted in Vivint Solar's "Residential Customer Operations Manual, which explains: [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Appx. Ex. 9, VSLR0001035. That is because Vivint Solar needs to be able to market its securities with a low projected default rate, making the security more attractive than riskier alternatives. Appx. Ex. 2, Ostrofe Dec. ¶¶ 8–13.

**C. Vivint Solar Has Never Attempted to Calculate Losses in the Event of Transfer**

The relocation buy-out payment calculation was the same for all Version 1.0 PPAs. Appx. Ex. 4, Burr Dep. 29:4–16. [REDACTED]

[REDACTED]

[REDACTED] Appx. Ex. 10, VSLR0000639–40 ¶ 12; Appx. Ex. 4, Burr Dep. 69:10–24, 159:21–160:25. [REDACTED]

[REDACTED] *Id.* at 135:19–136:4, 154:2–15. [REDACTED]

[REDACTED]

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REDACTED

*Id.* at 154:2–15.

## III.   PLAINTIFF'S CLAIMS

Plaintiff Dekker asserts two claims for relief: violation of (1) Civil Code § 1671; and (2) Business & Professions Code §§ 17200 *et seq.* ("UCL"). Dkt. 122. Plaintiff's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") claims are predicated on her allegations that Vivint Solar violated section 1671 by inserting unlawful liquidated damages provisions in all PPAs.

## IV.   CLASS DEFINITION

Plaintiff defines the proposed class as "All persons in California who entered into Version 1 of the Residential Solar Power Purchase Agreement with Vivint Solar."[5]

## V.   ARGUMENT

"California law has also long recognized that a provision for liquidation of damages for contractual breach—for example, a preset late payment penalty—can under some circumstances be designed as, and operate as, a contractual forfeiture." *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal.4th 970, 976–77 (1998). California's prohibition against liquidated damages provisions has been codified since 1872, and was amended most recently in 1977. *Id.* "[T]he Code continues to apply [a] strict standard to liquidated damages clauses in certain contracts (consumer goods and services and leases of residential real property)." *Id.* at 977.

Unfair business practices, such as the inclusion of a liquidated damages provision in contracts for the sale of consumer goods, offend the state's legitimate interest in protecting its local citizens against fraudulent or deceptive marketing and sale, and actions such as this are designed to preserve a level playing field in business transactions. *See Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1037 (C.D. Cal. 2013); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 851 (2002). It has

---

[5] Excluded from the class are: (i) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (ii) the Judge to whom this case is assigned and the Judge's staff; and (iii) anyone employed by counsel in this action.

been well established that private enforcement of unfair business practice laws—including California's Consumer Legal Remedies Act and Unfair Competition Laws—by class action litigation plays an important role in the enforcement of these laws. *See, e.g., Astiana v. Kashi Co.*, 291 F.R.D. 493, 504 (S.D. Cal. 2013) (noting that "[t]he CLRA is to be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection" and holding that plaintiffs made a sufficient showing of materiality for the purposes of class certification).

For these reasons, courts often favor class certification of Section 1671(d) claims and others concerning these issues. *See, e.g., Hahn v. Massage Envy Franchising LLC*, Case No. 3:12-CV-00153, 2014 WL 5099373 (S.D. Cal. Apr. 15, 2014); *Munguia-Brown v. Equity Residential*, 2017 WL 4838822, at *4 (N.D. Cal. Oct. 23, 2017); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 288 (C.D. Cal. 2011) (certifying class in consumer's action alleging violation of California's Unfair Competition Law and Consumers Legal Remedies Act); *Cole v. Asurion Corp.*, 267 F.R.D. 322, 328 (C.D. Cal. 2010) (noting that under California law, class relief is available on claims under Unfair Competition Law without individualized proof of deception, reliance, and injury); *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) (order clarified, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011)) (same).

### A. Plaintiff Satisfies Rule 23's Certification Requirements.

In order to prevail on a motion for class certification, a plaintiff bears the burden of proving that all of the requirements of Federal Rule of Civil Procedure 23(a) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) requires that a class representative must establish: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of the class representatives and counsel. *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354, 2020 WL 469893, at *2 (N.D. Cal. Jan. 29, 2020) (Alsup, J.). "The burden, however, is slight, as 'a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied.'" *Norris Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 605 (S.D. Cal. 2010) (citing *Marlo v. United Parcel Serv. Inc.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008)).

Movants must also satisfy one of Rule 23(b)'s requirements. *Zinser*, 253 F.3d at 1186. Here, Plaintiff seeks to certify the class under Rule 23(b)(2) only, which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

While the merits of the underlying claims may have some overlap with the class certification analysis, the determination of whether the moving party has met Rule 23's requirements "does not grant 'license to engage in free-standing merits inquiries at the certification stage.'" *Sweet v. Devos*, No. C 19-03674, 2019 WL 5595171 at *6 (N.D. Cal. Oct. 30, 2019) (Alsup, J.) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013)). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant for determining whether plaintiffs have satisfied the requirements for class certification." *Id.* Although movants must show a common method of proof, movants need not prove their ultimate case now. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule."). For the purposes of this motion, the "Court is bound to take the substantive allegations of the complaint as true." *Id.* at 901 n.17.

## B. Plaintiff Satisfies All the Requirements of Rule 23(a)

### 1. Joinder Is Impracticable

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Impracticability here does not require a showing that joinder is "impossible;" it merely requires a showing that it would be difficult or inconvenient to join all members of the class. *Morgan v. U.S. Soccer Federation*, No. 2:19-cv-1717, 2019 WL 7166978, at *5 (C.D. Cal. Nov. 8, 2019); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011). Where a class includes at least forty (40) members, joinder is generally considered presumptively impracticable. *Morgan*, 2019 WL 7166978 at *5; *Bally v. State Farm Life Ins. Co.*, No. 18-cv-04954, 2020 WL 1643681, at *8 (N.D. Cal. April 2, 2020); *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452

(N.D. Cal. 2012); *see also Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 n.10 (9th Cir. 1982) (classes of fewer than 100 persons are sufficiently numerous to render joinder impracticable), *vacated on other grounds*, 459 U.S. 810 (1982).

Here, the class consists of all Californians who entered into Version 1.0 of a residential solar agreement with Vivint. Vivint Solar has represented to the Court that there are roughly 825 customers in California who signed version 1.0 of the PPA.[6] Appx. Ex. 1 (Boxer Decl., Ex. 11, 8:23–9:2; Appx. Ex. 4, Burr Dep. 132:22–24.) Plaintiff is thus entitled to a presumption of impracticability of joinder that attaches when a class includes at least forty members.

Finally, as the Court has already observed, even assuming the value of the injunctive relief would be a very conservative $10,000 per class member, the total amount in controversy here could easily reach millions of dollars. Dkt. 121 at 8–9. This is more than mere speculation; it is based on evidence that Vivint Solar in fact demanded just over $40,000 from Plaintiff Dekker, roughly $23,000 from former Plaintiffs Rogers and Bautista, and actually extracted $21,000 and $17,000 from former Plaintiffs Barajas and Hilliard, respectively. *Id.*; *see also, e.g.*, SAC at ¶¶ 17–26, 48. In such cases, individual litigation costs would dwarf potential recoveries. For these reasons, individual lawsuits, or joinder into one suit, is impracticable for these class members. Denial of class certification would prevent these vulnerable customers from obtaining recovery for the harm imposed by Vivint Solar's blatant misconduct. Accordingly, joinder of all class members is impracticable under Rule 23(a).

## 2. The Class Is Ascertainable

Additionally, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). In other

---

[6] *See also* Dkt. 121 at 7 ("Vivint's declaration of class size relies on this errant arbitration argument and so is not probative of our operative class size, though it also seems to admit that about eight hundred customers have requested cancellation. This alone would satisfy CAFA's class size (Dkt. No. 116-5). Regardless, even excluding arbitration-bound class members, the thirteen hundred who

words, the class must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). The ascertainability requirement is not exacting and can be satisfied even where some class members are unharmed. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2013 WL 5429718, at *22 (N.D. Cal. June 20, 2013) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010) ("That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification.")). Here, the class is ascertainable. The putative class is limited to all Californians who entered into a Version 1.0 PPA with Vivint Solar. The class is readily identifiable by Vivint Solar's own records, and the company has in fact produced contact information for twenty-five percent of the members. Notably, the Ninth Circuit rejected as unnecessary an "independent administrative feasibility" requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir. 2017). Accordingly, the putative class is sufficiently (and quite easily) ascertained.

### 3. There Are Numerous Common Questions of Fact and Law Applicable to the Class

Rule 23(a)(2) requires that questions of law or fact are common to the class. It does not require all questions of fact and law to be common. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) ("[A] proposed class can consist of members with widely differing experiences as they relate to the case[.]"). Rather, a single common question can suffice. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves— but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.") (quotations omitted). "Further, a common contention need not be one that 'will be answered, on the merits, in favor of the class.'" *Stockwell v. City & Cty. of S.F.*, 2014 WL 1623736, at *3 (9th Cir. Apr. 24, 2014) (quoting *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. at 459). "[C]ommonality does not require proof that the putative class

---

did not agree to arbitrate due to the language barrier will remain in this forum. Under any of the frameworks presented, our putative class will exceed one hundred members.")

will prevail on whatever common questions it identifies." *Id.* at *4. Instead, the burden in establishing commonality is "relatively light" *Esparza v. SmartPay Leasing, Inc.*, No. 17-cv-3421, 2019 WL 2372447, at *2 (N.D. Cal. June 5, 2019) (Alsup, J.) (noting that there is no requirement that "*all* the questions of law and fact raised by the dispute be common … only that common questions of law or fact predominate over individual issues") (emphasis added) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Here, Plaintiff's motion raises the common question of whether Vivint Solar's PPAs contain an unlawful liquidated damages provision—a determination that does not depend on any individualized inquiry, as "the validity of a liquidated damages clause is determined by the circumstances existing when the fee provisions are inserted into an agreement, and not by subsequent events." *Irwin*, 96 F. Supp. 2d at 977 (citing *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 291, 288 (1995). Further, a party's reasonable endeavor to estimate the loss *must precede* the setting of contractual fees. *Id.* "Cost analyses or studies made *subsequent* to the agreements are not relevant to the validity of the fees." *Id.* (citing *Hitz*, 38 Cal. App. 4th at 291–92) (1995) (emphasis added). "Because liquidated damage clauses in consumer contracts are presumed void, the burden is on the proponent of the clause to rebut that presumption." *Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 322 (2011) (citing *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n* 9 Cal.3d 731, 738 (1973)).

### a. Common Proof Will Show That the Customer Default and Transfer Payment Provisions Are Unlawful Liquidated Damages

A party can avoid a finding of an invalid liquidated damages clause if it can show the clause merely provides an alternative to the performance of an obligation. *See Garrett*, 9 Cal.3d at 735. In evaluating the legality of a provision, a court must first determine its true function and operation. *Id.*

> [W]hen it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages.

*Id.* at 738.  If the purported alternative is not a "rational choice," then the clause is properly considered a liquidated damages clause. *Blank v. Borden*, 11 Cal.3d 963, 970 (1974) ("[W]hat distinguishes the instant case from other situations in which a form of alternative performance is used to mask what is in reality a penalty or forfeiture is the element of rational choice.")

The rationality of choice (if any) presented the consumer is determined at the time of contracting.  *Seraphin v. SBC Internet Servs., Inc.*, 2010 WL 1326820 at *4–5 (Idaho 2010) (rejecting defendant's motion to dismiss where "it was apparent at the time of the contract that 'one mode of performance would be at all or at most times inferior.'")

In *Seraphin*, the court construed *Blank v. Borden* to mean that, "if one mode of performance had been clearly inferior to the other at the time of the contract, and had existed merely to coerce the owner to choose the first mode, then the element of rational choice would have been lacking and the court indicated it would have examined the provision under Section 1671." *Id.* at *4 (citing *Hutchison v. AT&T Internet Servs. Inc.*, 2008 WL 11334484 at *3 (C.D. Cal. July 9, 2008)).  Here, paying the inflated Default Payment price—an average of $35,249.44—is clearly inferior to continuing to pay the monthly PPA payments, and, by Vivint Solar's own admission, the default payment calculation merely exists to pressure the owner to choose the first mode—payment for 20 years' worth of power generation—in order to keep investment partners happy and maintain the pricing structure for its securities. *See also* Appx. Ex. 2, Ostrofe Dec. ¶ 12.

Here, there are no material issues as to which individualized evidence will be required because all Vivint Solar PPAs contain identical termination provisions.  *Irwin*, 96 F. Supp. 2d at 977 (certifying 1671(d) claim because "[t]here is no valid need for an individual inquiry into each transaction.").

Further, whether the customer was provided with alternatives is to be determined from the four corners of the contract only.  *See, e.g.*, *Garrett*, 9 Cal.3d 731; *Blank v. Borden*, 11 Cal.3d 963, 970 (1974).  And because the determination of whether the clause is a liquidated damages clause or merely another option to perform is common to all contracts and all putative class members, this Rule 23(b)(2) class should be certified.  *Hahn v. Massage Envy Franchising LLC*, Case No. 3:12-CV-00153, 2014 WL 5099373  (S.D. Cal. Apr. 15, 2014) ("The form agreements lend themselves to

interpretation by the Court on a classwide basis because they uniformly provided that unused prepaid massages expired when the membership was not 'current' or 'in good standing.'"); *Munguia-Brown v. Equity Residential*, 2017 WL 4838822 at *4 (N.D. Cal. 2017) (certifying section 1671(d) class because the two-part test raises common questions where plaintiff alleged the company's contracts contained the "same late fee provision" and the company "underwent the same process when setting the uniform fee policies").

In sum, while the determination of the true nature of the clause is a merits question, the interpretation of the termination clause pursuant to California law is certainly common to all.

### b. Common Proof Will Establish That Vivint Solar Made No Reasonable Endeavor to Estimate Damages Flowing from Breaches

Here, Vivint Solar will have the burden of proof on the common issue of whether these are liquidated damages clauses, a burden that includes the obligation to demonstrate that fixing the amount of actual damages was "impracticable or extremely difficult to determine." *Utility Consumers' Action Network, Inc.*, 135 Cal. App. 4th 1023, 1042 (2006); *Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 308 (2011) (even though "Sprint had established that it was impracticable to calculate the amount of actual damages from a breach at the inception of the contract, it had failed to meet its burden of establishing that it had made genuine and non-pretextual efforts to estimate a fair average compensation for the losses anticipated to be sustained.") "The validity of liquidated damages 'is determined by circumstances existing when the fee provisions are inserted into the contract, and not by subsequent events . . . ." *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 291 (1995); *Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 326 (when determining a "reasonable endeavor" the "focus [is] on those circumstances actually considered in evaluating a liquidated damage provision, not post hoc rationalization.").

While the Ostrofe Declaration explains in detail why Vivint Solar's Default Price is an inappropriate proxy for its actually losses in light of its unique business model, *see* Appx. Ex. 2, Ostrofe Dec. ¶¶ 8–19, it is Vivint Solar which will have the burden to prove a "reasonable endeavor was made to estimate fair compensation for the loss sustained, as would support a liquidated damages provision in a consumer contract," which depends upon both: (1) the motivation and

purpose in imposing the charges; and (2) their effect.  *Utility Consumers' Action Network, Inc.*, 135 Cal. App. 4th at 1029 Whether or not Vivint Solar meets this burden is common to all of these contracts, and requires that Vivint Solar prove that, before rolling out these PPAs, it "'actually engaged in some form of analysis to determine what losses it would sustain from [a] breach, and that it made a genuine and non-pretextual effort to estimate a fair average compensation for the losses to be sustained.'" *Hitz*, 38 Cal. App. 4th at 291.  "If no effort was made to estimate the actual losses, then the resulting fee cannot approximate the losses." *Del Monte Props. & Invs., Inc. v. Dolan*, 26 Cal. App. 5th Supp. 20, 24 (2018). The Court noted at the October 21, 2021 hearing—when speculating about documents the Rule 30(b)(6) witness might identify support the Default Payments—that "[s]ometimes a company's got a good lawyer and they . . .  actually have documented the number.  Other times there's zero, z-e-r-o, nothing to justify it.  It's just a number pulled out of thin air."  Appx. Ex. 11, Hearing Transcript Dated October 21, 2021, at 11:10-15.

Failure to meet its burden of proof on *either* element above is fatal to the drafter's position, and whether or not Vivint solar succeeds in this showing is necessarily an issue that applies on a classwide basis.  *Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 327.

Determining Vivint Solar's motivation for structuring the identical contracts in the way it did necessarily revolves around common proof, as Vivint Solar imposed the same agreement on each class member.  *See e.g.*, *Hahn v. Massage Envy Franchising LLC*, Case No. 3:12-CV-00153, 2014 WL 5099373 (S.D. Cal. Apr. 15, 2014).  Here, that common proof came from Vivint Solar's Rule 30(b)(6) witness who conceded that that the "motivation and purpose" of structuring these contracts in this way was to prevent customers from defaulting, which would harm investment partners, rather than seeking compensation for losses actually sustained.  Fixing the liquidated damages amount to discourage early termination of the agreement, as Vivint Solar admittedly does here, does not constitute a reasonable effort to estimate damages in event of breach.  *Cellphone Termination Fee Cases*, 193 Cal. App. 4th at 326 ("the evidence fails to establish any endeavor, reasonable or otherwise, to even approximate Sprint's actual damages flowing from breach of the term contracts by consumers, and instead reflects a marketing decision made with an entirely deterrent purpose and focus.");  *Garrett*, 9 Cal.3d at 740  ("late charge" was "an attempt to coerce timely payment by a

-14-

forfeiture which is not reasonably calculated to merely compensate the injured lender."); *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1259–60 (N.D. Cal. 2015) (denying motion to dismiss because it was plausible company could consider setting a late fee to "deter[] late returns", which "do not represent a reasonable endeavor to estimate the fair value of the loss."); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1090 (C.D. Cal. 2010) (denying motion to dismiss section 1671(d) claim where plaintiff alleged the cancellation fee was "intended as a penalty to dissuade Class members from cancelling DirecTV's services.").

The fact that Vivint Solar never actually collected the full Default Price demonstrates that the "motivation and purpose" was not to compensate for any loss sustained but illustrative of a common plan to convince customers to continue paying on the PPA. Appx. Ex. 2, Ostrofe Dec. ¶ 13. It is that feature of these contracts that allowed Vivint Solar to hold customer defaults to only 0.5%, thereby allowing Vivint Solar to continue marketing this security by representing that defaults were "*de minimis*" or "immaterial" and therefore a safe investment. *Id.* ¶ 8 fn.1.

Here, Plaintiff easily carries her "relatively light" burden of demonstrating commonality. The very nature of the dispute revolves around Default Provisions in Vivint Solar's identical PPAs. Through this litigation, Plaintiff has sought to invalidate these liquidated damages provisions—an act that would provide relief for all putative class members. Further, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Blair v. Rent-A-Center*, No. C 17-02335, 2018 WL 5728924, at *4 (N.D. Cal. Nov. 1, 2018) (Alsup, J.) (citing *Stockwell v. City and Cty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014)).

### 4. Plaintiff Dekker's Claims Are Typical of the Class

Rule 23(a)(3) requires that the claims of the named plaintiffs be "typical" of the class. This Court has held that "[t]he test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other members have been injured by the same course of conduct." *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354, 2020 WL 469893, at *4 (N.D. Cal. Jan. 29, 2020) (Alsup, J.) (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)). The

standard on typicality is a permissive one. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The class representative's claims are considered typical of those of the class if they are "reasonably co-extensive with those of absent class members." *In re High-Tech Employees Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013).

In matters concerning disputes stemming from common contractual language, like this case, typicality is easily found. *See*, *e.g.*, *In re Chase Bank USA, N.A. CHECK LOAN Cont. Litig.*, 274 F.R.D. 286, 292 (N.D. Cal. 2011) (typicality requirement met when the dispute arose from common language in the cardmember agreements common to the named plaintiffs and the class members); *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010) (typicality between named plaintiffs and class members concerning claim that defendants misrepresented terms of a cell phone insurance policy agreement).

Here, Ms. Dekker's claims are same as all other class members. On June 3, 2016, Ms. Dekker received a "Notice of Default" from Vivint Solar claiming she was in default and owed $2,225.19. Appx. Ex. 12, DEKKER000423. Vivint Solar threatened that, if she did not correct this delinquency within 10 days, it would "enforce our remedies per the terms of your contract. This could include removing the solar system from your home (at your expense), and possibly seeking an arbitration award against you for the default payment amount, equal to $41,760, plus removal costs, court costs, and applicable taxes." *Id.* Faced with this prospect, Ms. Dekker continued paying on the PPA rather than paying this exorbitant figure. Appx. Ex. 3, Deposition of Gerrie Dekker ("Dekker Dep.") 19:16–20:6.

In sum, Ms. Dekker suffered the same injuries based upon the same conduct by Vivint. *See Irwin*, 96 F. Supp. 2d at 977 ("So long as the injuries of the named plaintiffs and the class members arose out of the same conduct, the named plaintiffs may properly represent the class. In the present case, the named plaintiffs are seeking to represent a class consisting of those who received letters containing the same or similar demands as those that they received. Their claims are therefore typical of those of the class.") (citations omitted); *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 444 (N.D. Cal. 2009), *order clarified*, No. C 07-4485 CW, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) (noting that defendants argument that particular facts that are unique to the named plaintiffs

claims—"in particular, the facts that [p]laintiffs purportedly did not read the loan disclosure documents" failed to "render [p]laintiffs' claims atypical" in a class action alleging a violation of California's UCL). Accordingly, the claims, injuries, and factual bases are identical between the class representative and the class members—going beyond typical. Rule 23(a)(3) is satisfied.

### 5. Plaintiff Dekker Will Fairly and Adequately Represent the Class

The final Rule 23(a) criterion—adequacy—mandates that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The rule is satisfied where: (1) representative claims are sufficiently interrelated to, and not antagonistic with, class members' claims; and (2) counsel for the representatives are qualified, experienced, and generally able to conduct the litigation. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). These requirements assist in the determination of whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.

Here, Ms. Dekker's interests are aligned with those of the class members. She has actively participated in this lawsuit, had her deposition taken, has kept abreast of case developments, and is ready, willing and able to continue her participation. Appx. Ex. 3, Dekker Dep. 25:21–26:5 (estimating 40 hours devoted to this lawsuit leading up to her deposition); 138:5–7 (willing to testify at trial); 159:13–160:17 (describing time spent trying to resolve disputes with Vivint Solar prior to litigation). Indeed, when asked whether she would drop the lawsuit if Vivint Solar removed her system, fixed any roof damage, and paid her monetary compensation, Ms. Dekker replied, "No." *Id.* at 36:2–10. When asked whether the relief she sought for herself was any different from that sought on behalf of the Class, she replied, "Absolutely not. . . . That's why it's called a class action." *Id.* at 37:7–14. *See Thomas & Thomas Rodmakers v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002) (adequacy satisfied when representatives displayed "rudimentary

understanding of the nature" of the case and "demonstrated willingness to assist counsel in the prosecution of the litigation."). And, all of the class members have the same overarching purpose and incentives as the class representative with this litigation: proving that Vivint Solar's PPAs impose an unconscionable and illegal Termination Fee and should be invalidated, and enjoining Vivint from continuing their unfair business practices. Ms. Dekker's interests do not conflict in any cognizable or material way with the interests of absent class members, and no cognizable or material intra-class conflicts exist. Accordingly, the interests of the class representatives are aligned with those of the class members.

Further, Plaintiff's counsel has substantial experience in prosecuting class actions and is vigorously committed to prosecuting this action on behalf of the class members. Appx. Ex. 1, Boxer Dec. ¶ 15. Rule 23(a)(4) is thus satisfied.[7]

### C.    Plaintiff Satisfies the Requirements of Rule 23(b)(2)

"Certification under Rule 23(b)(2) requires the additional finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Caldwell v. UnitedHealthcare Ins. Co.*, No. C 19-2861 WHA, 2020 WL 7714394 at *6 (N.D. Cal. Dec. 29, 2020) (Alsup, J.); *I.N. by & through Zarinah F. v. Kent*, No. C 18-03099 WHA, 2019 WL 1516785 at *3 (N.D. Cal. Apr. 7, 2019) (Alsup, J.) (certifying a Rule 23(b)(2) class that only sought injunctive, uniform class-wide relief). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Rule 23(b)(2) sets forth two basic requirements:

---

[7] For the same reasons, Plaintiffs' counsel also satisfies Federal Rule of Civil Procedure 23(g), which mandates that, *inter alia*, class counsel have experience in handling class actions, other complex litigation, and the types of claims asserted in the action; knowledge of the applicable law; and adequate resources that counsel will commit to representing the class.

> *First*, the party opposing the class must have acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members. *Second*, "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, [must be] appropriate."

Newberg on Class Actions § 4:26 (West 2021) (quoting Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966)) (alteration in original).

"Plaintiffs do not need to specify the precise injunctive relief they will ultimately seek at the class certification stage." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019), *cert. denied sub nom. Faust v. B. K. by Tinsley,* 140 S. Ct. 2509 (2020). Rule 23(b)(2) will ordinarily be satisfied when plaintiffs have "described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014). Because Rule 23(b)(2) classes have this innate cohesion, Plaintiffs need not meet the additional requirements contained in Rule 23(b)(3) such as "predominance" and "superiority"— "[p]redominance and superiority are self-evident." *Newberg*, *supra*, § 4:26 (alteration in original) (footnote omitted) (quoting *Wal-Mart*, 564 U.S. at 363). Moreover, as Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary adjudication is not only preferable, but it is also essential.

Here, the requested injunctive relief—namely, invalidating the unlawful liquidated damages provision contained in *every* PPA—describes the injunction's "general contours" at this stage. Fashioning the specific contours—including the notice provided to consumers and the procedures for cancellation and removal of solar systems—can be done later. *See B.K.*, 922 F.3d at 973 ("It [ ] does not matter whether crafting appropriate injunctive relief will be difficult or not. Those merits questions . . . do not preclude certification as a matter of law unless . . . crafting uniform injunctive relief will be impossible."). Vivint Solar's policies regarding calculation of default and buyout payments and enforcement thereof are a "pattern or practice" that is "generally applicable" to all customers. Accordingly, Plaintiffs satisfy Rules 23(b)(2) and 65(d).

**1.** **Proving that Vivint Solar's Version 1.0 PPA Is Illegal, Void, and Unenforceable Involves Common Issues**

As described in the accompanying Trial Plan, Plaintiff's and class members' claims can be resolved through common evidence. By design, all of Vivint's PPAs include the same default provisions. In order to prove unfair business practices cases based upon illegal liquidated damages clauses, California Civil Code section 1671(d) is instructive. It "applies to consumer contracts to purchase goods and services, and prescribes the standard of invalidity of liquidated damages in such contracts." *Irwin v. Mascott*, 96 F. Supp. 2d 968, 976 (N.D. Cal. 1999) (citing *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 278 (1995)).

Additionally, specific collateral or extrinsic evidence that relates only to individual members will likely have no application to this litigation. Vivint Solar's PPAs are standard form contracts that Plaintiffs and class members have no input into the terms. It is hornbook law that "with respect to standard form contracts specifically, 'where neither party has asserted that the . . . contract contains ambiguous terms, admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue.'" *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1021–22 (N.D. Cal. 2018) (quoting *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010)). As such, the issue of whether Vivint's Termination Fee is illegal and unenforceable (or not) involves common facts and law.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff satisfies her burden under Rule 23 and respectfully requests that this Court certify the proposed class, appoint her as class representative, and appoint the Matern Law Group as class counsel.

Dated: December 2, 2021          **MATERN LAW GROUP, PC**

By:        s/ Corey B. Bennett
MATTHEW J. MATERN
JOSHUA D. BOXER
COREY B. BENNETT
Attorneys for Plaintiff GERRIE DEKKER,
individually and on behalf of all others similarly
situated