UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRIE DEKKER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>VIVINT SOLAR, INC., et al.,<br><br>  Defendants. | No. C 19-07918 WHA<br><br>**ORDER RE MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**INTRODUCTION**

In this unfair business practices suit, defendant solar panel company moves for partial summary judgment on plaintiff's request for injunctive relief on three grounds. To the extent stated, the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Previous orders described the facts herein (Dkt. Nos. 121, 140). In brief, defendant Vivint Solar, Inc., in its various corporate forms, installs solar panels on customers' roofs and, at least as advertised, sells those customers the low cost, clean energy produced over a twenty-year term pursuant to their "power purchase agreement" (PPA). Plaintiff alleges, however, that Vivint's contract contains unlawful liquidated-damages clauses, provisions which impose harsh and unlawful penalties onto customers should they seek to dissolve the contract.

Early on in our action, a March 2020 order compelled all but two plaintiffs to arbitration. The exceptions were Ms. Dekker, whose early version of the PPA did not contain an

arbitration clause, and Mr. Bautista, who had not agreed to arbitrate, given Vivint had the native Spanish speaker, with virtually no English proficiency, sign an English-form contract after conducting negotiations in Spanish (Dkt. No. 47). Vivint appealed that decision, plaintiffs amended their complaint, and the action continued apace (Dkt. Nos. 62, 63).

Vivint, however, dropped the ball on its JAMS fee deadline, a material breach of the arbitration agreements under California's recently enacted Code of Civil Procedure Section 1281.97. So, an August 14 order vacated the March 24 order as far as it compelled select plaintiffs to arbitrate and invited those plaintiffs back into this forum (Dkt. No. 84). Vivint appealed this decision as well.

Our court of appeals decided Vivint's first appeal on January 25, 2021. The order didn't answer many questions, merely dismissing the case for lack of jurisdiction and dictating: "We remand to the district court for it to determine if Plaintiffs should be granted leave to amend the complaint" (Dkt. No. 111). Leave to amend was granted (Dkt. No. 121). In June, Vivint moved for judgment on the pleadings, which was granted as to plaintiffs' Section 17200 claim as to unfairness based on violations of the Translation Act allegedly endured by Mr. Bautista (Dkt. No. 140). Plaintiffs were permitted to amend their pleadings, and an August 11 order granted the motion for leave to amend in part but denied as futile plaintiffs' Section 17200 unfairness claim as to the Translation Act and further denied leave to include a restitution claim per California's Consumer Legal Remedies Act (CLRA) and Section 17200 (Dkt. No. 157).

Then, in late October, the other shoe dropped, and our court of appeals ruled on Vivint's second appeal, finding that whether Vivint's failure to pay the JAMS filing fees qualifies as a breach of the arbitration agreement fell within the scope of the PPA's delegation clause. The order compelling those relevant plaintiffs to arbitration was hence reinstated (Dkt. Nos. 177, 178). In November, plaintiff Bautista dropped out of the case when he settled with Vivint. Ms. Dekker became our only named plaintiff.

Now, Vivint seeks to narrow the issues and moves for partial summary judgment. Due to these summary judgment issues comingling with those of class certification, a decision on this

1    motion was held in abeyance until the class certification motion could be heard. The class

2    certification order is filed in tandem with this one. This order follows full briefing and oral

3    argument held telephonically due to the COVID-19 pandemic.

## ANALYSIS

Summary judgment is appropriate if there is no genuine dispute of material fact, those facts that may affect the outcome of the suit. "[T]he substantive law's identification of which facts are critical and which facts are irrelevant . . . governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986). A genuine dispute contains sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Ibid.* "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). But "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). If a proper jury question remains, summary judgment is inappropriate. See *Anderson*, 477 U.S. at 249.

Here, Vivint moves for partial summary judgment on plaintiff's claim for injunctive relief premised on three grounds: (1) that an order enjoining Vivint's allegedly unfair and unlawful sales practices is now moot; (2) that plaintiff is not entitled to injunctive relief because she has an adequate remedy at law; and (3) that that an order enjoining Vivint from enforcing the PPA would not qualify as public injunctive relief. We consider each issue in turn.

**1.    MOOTNESS.**

We first consider Vivint's contention that plaintiff's prayer for injunctive relief regarding Vivint's unfair or unlawful sales practices are moot.

Mootness is a jurisdictional issue derived from the case or controversy requirement under Article III. "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180, 189 (2000) (quotation and citation

1   omitted).  The same standard applies for individual claims for injunctive relief.  Defendants

2   claiming mootness must satisfy a "heavy burden" of persuasion.  *See ibid.* (citation omitted);

3   *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998).

4        Vivint argues plaintiff's request for injunctive relief as to Vivint's sales practices is moot

5   because "[a]s of November 8, it is no longer engaged in sales practices to newly contacted

6   consumers" (Br. 10).  On October 8, 2020, Sunrun, another residential solar company, acquired

7   Vivint.  As of March 21, 2021, Vivint no longer has any employees, which all became

8   employees of either Sunrun or Sunrun Installation Services Inc. (Grausz Decl. ¶¶ 2–6).  How,

9   Vivint asks, could defendants in this action be enjoined from unfair sales practices when they

10  no longer engage in sales practices?

11       Vivint clarifies, however, that a "small number of prospective customers who had already

12  initiated the sales process, before November 8, may complete that process by signing a Vivint

13  Solar PPA" (Br. 10).  Moreover, Vivint also maintains a "Homebuilder Sales Channel" through

14  which it works with builders to install its systems on new homes.  As of December 31, 2021,

15  Vivint no longer "initiat[ed] the execution of any PPAs with home buyers in the Homebuilder

16  Sales Channel. . . .  To the extent that, as of December 31, there are ongoing interactions with a

17  homebuyer . . . those agreements would continue under a Vivint Solar PPA, even after

18  December 31" (Grausz Decl. ¶ 6).  So, by Vivint's own declaration, it has *not* conclusively

19  stopped its sales practices.  Vivint has not specified how many potential customers still remain

20  in Vivint's sales pipeline. The issue is not moot.

21       Vivint has not met its burden so its motion as to mootness is **DENIED**.

22       **2.**     **INADEQUATE-REMEDY-AT-LAW DOCTRINE.**

23       Next, Vivint seeks partial summary judgment that plaintiff is not entitled to injunctive

24  relief because she has an adequate remedy at law.  Vivint asserts a purely legal question

25  premised on an August 2021 that reviewed our court of appeals' decision *Sonner v. Premier*

26  *Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), in the context of Vivint's motion for judgment

27  on the pleadings.

28

The plaintiff in *Sonner* asserted claims under the CLRA and Section 17200 but, on the eve of trial, strategically dropped her CLRA damages claim and sought only a newly-added claim for equitable restitution instead. The California Legislature and abrogated the state's inadequate-remedy-at-law doctrine for claims arising out of the CLRA and Section 17200. *Id.* at 838–39. Nevertheless, *Sonner* held that, despite California's standard, federal courts apply traditional equitable principles pursuant to federal common law before awarding restitution. *Sonner* concluded that the plaintiff had not properly alleged the inadequacy of legal remedies available to her and affirmed the district court's denial of leave to add the restitution claim. *Id.* at 841, 844.

The August 2021 order applied *Sonner* and permitted plaintiffs leave to amend the complaint to add a damages claim under the CLRA, but denied leave to add in a new claim for restitution pursuant to Section 17200 and the CLRA (Dkt. No. 157). Vivint now argues that order's denial of leave to amend dictates Vivint should now be granted summary judgment as to all of plaintiff's requested equitable relief, including injunctive relief. This order disagrees.

Injunctive relief was explicitly not at issue in *Sonner*. *See* 971 F.3d at 842. Some district courts in our circuit have held that *Sonner* applies to equitable relief beyond restitution. *See Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (Judge André Birotte Jr.); *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 6113003, at *4–6 (N.D. Cal. Dec. 27, 2021) (Judge Susan Van Keulen) (appeal pending). Regardless, *Sonner* and these district court opinions do not stand for the proposition that all equitable relief is the same, or that all equitable relief must rise and fall together.

A remedy at law may provide adequate relief for certain harms but fail to remedy others, necessitating equitable relief. Breadth and flexibility are inherent in equitable remedies, which are crafted on a case-by-case basis. *Brown v. Plata*, 563 U.S. 493, 538 (2011); *Holland v. Florida*, 560 U.S. 631, 649–50 (2010). Manifest differences thus exist between, for example, the retrospective equitable remedy of restitution and the prospective equitable remedy of an injunction. Pursuant to that distinction, district courts have permitted claims for injunctive relief to stand while dismissing retrospective equitable claims. *See, e.g.*, *Zeiger v. WellPet*

5

*LLC*, 526 F. Supp. 3d 652, 686–87 (N.D. Cal. 2021) (Judge William H. Orrick); *Cepelak v. HP Inc.*, 2021 WL 5298022, at *2–3 (N.D. Cal. Nov. 15, 2021) (Judge Vince Chhabria); *Haas v. Travelex Ins. Servs. Inc.*, ––– F. Supp. 3d –––, 2021 WL 3682309, at *3 (C.D. Cal. Aug. 19, 2021) (Judge Otis D. Wright, II); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *10–11 (N.D. Cal. Aug. 16, 2021) (Judge Edward M. Chen).

To that effect, the August 2021 order explained when denying the request to add a restitution claim: "Plaintiffs also fail to differentiate their request for restitution from their request for damages" (Dkt. No. 157 at 4). The order did not hold that plaintiffs failed to adequately allege the need for all other equitable relief. It specifically granted judgment on the pleadings only as to restitution. Damages would not provide an adequate remedy for plaintiff, who remains subject to potential liquidated damages clauses should she try to disentangle herself from her contract with Vivint. For this, an injunction would be proper.

Vivint's motion for summary judgment that plaintiff's equitable claim for injunctive relief fail as a matter of law is **DENIED**.

### 3. PUBLIC INJUNCTIVE RELIEF.

Finally, Vivint argues that plaintiff has asserted a claim for private, rather than public, injunctive relief. In effect, Vivint's argument would limit the putative class action only to those Vivint customers whose PPAs did not contain a mandatory arbitration provision. In light of two recent opinions from our court of appeals, this order agrees plaintiff only seeks private injunctive relief.

A brief refresher. Section Two of the Federal Arbitration Act provides, in relevant part, that: "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" 9 U.S.C. § 2. The savings clause concluding Section Two recognizes that arbitration agreements are subject to general contract principles. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

California's *McGill* rule provides one such basis upon which an arbitration agreement may be invalidated. *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017). Under *McGill*, a

6

1   contract provision that "purports to waive [a party's] right to request in any forum . . . public
2   injunctive relief . . . is invalid and unenforceable under California law." *Id.* at 94. Our court of
3   appeals held in *Blair v. Rent-A-Center, Inc.* 928 F.3d 819 (9th Cir. 2019), that the Act does not
4   preempt the *McGill* rule.

But how do we distinguish between private and public injunctive relief? California Civil Code Section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." From this, *McGill* extrapolated that California law:

> Distinguished between private injunctive relief — *i.e.*, relief that primarily resolves a private dispute between the parties and rectifies individual wrongs and that benefits the public, if at all, only incidentally — and public injunctive relief — *i.e.*, relief that by and large benefits the general public and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public.

393 P.3d at 89 (cleaned up). As our court of appeals summarized in *Blair*, public injunctive relief "has the primary purpose and effect of prohibiting unlawful acts that threated future injury to the general public." 928 F.3d at 824. In *Blair*, plaintiffs alleged that Rent-A-Center's "rent-to-own" agreements violated a California statute that set maximum prices a business may charge for rent-to-own items in proportion to the items' actual cost. Plaintiffs sought to enjoin future violation of these laws, and our court of appeals found that this qualified as public injunctive relief. *Id.* at 822. Relying on these authorities, the March 2020 order herein held that plaintiff seeks public injunctive relief (Dkt. No. 47).

Vivint has again raised the issue of public injunctive relief because of two intervening decisions from our court of appeals that it argues clarify the distinction between private and public injunctive relief (Br. 7).

In *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 868 (9th Cir. 2021), plaintiffs argued their proposed injunction against Uber's classification of drivers for its ride-sharing platform as independent contractors ranked as public injunctive relief. Our court of appeals disagreed, explaining that "the relief sought by Plaintiffs . . . is overwhelmingly directed at Plaintiffs and other rideshare drivers, and they would be the 'primary beneficiaries' of access to overtime and

7

1  minimum wage laws." *Id.* at 870. *Capriole* observed that *McGill* "was also careful to note that
2  the three statutes recognized as containing public injunctive relief," *i.e.*, the CLRA, Section
3  17200, and Section 17500, "all involve protections against misleading and deceptive practices,
4  where an injunction will provide a meaningful benefit primarily (and potentially only) to the
5  public because the plaintiff has already been injured, allegedly by such practices and is aware
6  of them." *Id.* at 869 (cleaned up).

7  In *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021),
8  decided shortly after *Capriole*, our court of appeals again took up the issue of public injunctive
9  relief and rearticulated the *McGill* standard. Plaintiff therein had brought a putative class
10 action against cable provider Comcast for violations of, *inter alia*, the Cable Communications
11 Policy Act and Section 17200 for collecting various data about subscribers' television viewing
12 activity and demographic information. Plaintiff alleged he sought public injunctive relief and
13 could not be compelled to arbitrate. *Id.* at 538. *Hodges* emphasized three features of public
14 injunctive relief: (1) it has the primary purpose and effect of prohibiting unlawful acts that
15 threaten future injury to the general public; (2) it does not constitute the pursuit of
16 representative claims on behalf of others nor does it involve prosecuting actions on behalf of
17 the general public; and (3) it involves diffuse benefits to the general public as a whole, as
18 opposed to a group of individuals similarly situated to the plaintiff. *Id.* at 541–42. As
19 summarized:

> It follows that public injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that to do so without the need to consider the individual claims of any non-party.

24 *Ibid*. *Hodges* then reviewed and rejected two recent decisions from California Courts of
25 Appeal contrary to its reasoning. *See id.* at 544–45. Our court of appeals concluded that there
26 was "simply no sense" in which the injunctive relief requested therein "could be said to
27 *primarily* benefit the general public as a more diffuse whole" as opposed to merely Comcast
28 cable subscribers. *Id.* at 549.

8

*Hodges* seems incongruent with *Blair*. The unlawful pricing structure in *Blair* appears substantively akin to the unlawful data processing at issue in *Hodges*. Just as a member of the public may consider entering into a transaction with Rent-A-Center, he or she may also consider whether to use Comcast as a cable provider. And the injunctive relief sought by plaintiffs in both *Hodges* and *Blair* was targeted at potential customers prior to entering into an agreement with defendants, relief that would (it would seem) primarily benefit the general public. Yet the two decisions reached different conclusions. *Hodges* inserted an explanation that, unlike in *Blair*, the relief sought therein "would entail the consideration of the individualized claims of numerous" individuals. *Ibid.* Circuit Judge Marsha S. Berzon, in dissent, stated:

> The implicit premise underlying the majority's reasoning is that the concept of public injunctive relief is confined to what the majority calls its "paradigmatic example": "an injunction against the use of false advertising." Majority op. 542. This premise rests on a fiction: Advertisements reach the public as a "diffuse whole," so an injunction barring false advertising benefits the whole, diffuse public. And conversely, this same reasoning goes, an injunction regulating the terms a business may offer consumers in a contract is private because it only benefits those consumers who actually enter into, or are considering entering into, a contract. . . .
>
> [U]nder the majority's logic, an injunction preventing a motorcycle dealership from posting a deceptive advertisement on its premises would be public injunctive relief, while an injunction preventing the same dealership from including an unlawful term in its proposed sale contracts would be purely private relief. That result is nonsensical.

*Id.* at 552. The majority in *Hodges* does list licensing requirements as another paradigmatic example (*id.* at 546–47), but regardless of how many illustrations it lists, *Hodges* appears to narrow the possible sources of public injunctive relief.

In light of *Hodges*, this order finds that, because Vivint has capped its sales activities, plaintiff's requested relief constitutes private, not public, injunctive relief as it can no longer be said to primarily benefits the general public.

Nevertheless, consistent with the March 2020 order herein, the type of relief requested comports with the first two features of public injunctive relief discussed in *Hodges*. Like in *Blair*, plaintiff seeks to enjoin future enforcement of a contractual provision that violates

9

California law, specifically alleged unlawful liquidated damages provisions. *See* Cal. Civ. Code § 1671. As explained in the March 2020 order, preventing the imposition of liquidated damages onto those who may enter into a given contract is one of California's express goals (Dkt. No. 47 at 5). The primary purpose of the injunctive relief here, therefore, is to prohibit unlawful acts that would threaten injury to the general public. For the second feature of public injunctive relief discussed in *Hodges*, the instant requested relief does not require representative action on behalf of a class or the general public. Moreover, the injunctive relief envisioned here would not "entail the consideration of the individualized claims of numerous [Vivint customers]." *Hodges*, 21 F.4th at 549.

Due to recent changes in Vivint's business model, however, plaintiff's requested relief no longer benefits the general public as a whole. As explained, as of December 31, 2021, Vivint no longer engages in any sales activities with anyone beyond those who have previously initiated negotiations (Grausz Decl. ¶¶ 2–6). Consequently, injunctive relief would only benefit a group of individuals similarly situated to our plaintiff. In short, Vivint's cap of sales activity downgrades plaintiff's claim from public to private injunctive relief.

While this may not moot plaintiff's requested injunctive relief, it does limit the number of consumers that would benefit from a favorable ruling on the issue. In short, Vivint's motion for summary judgment that defendant seeks private injunctive relief is **GRANTED**.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff seeks only private injunctive relief. Plaintiff's request for injunctive relief regarding Vivint's unfair or unlawful sales practices are not moot, and plaintiff's remaining claims for equitable relief may proceed because she does not have an adequate remedy at law. **IT IS SO ORDERED.**

Dated: March 18, 2022.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10