1
2
3
4
5
6            UNITED STATES DISTRICT COURT
7
8           NORTHERN DISTRICT OF CALIFORNIA
9

United States District Court
Northern District of California

10   GERRIE DEKKER, et al.,
11         Plaintiffs,             No.  C 19-07918 WHA
12      v.
13   VIVINT SOLAR, INC., et al.,       **ORDER GRANTING CLASS**
14         Defendants.          **CERTIFICATION**
15
16
17                      **INTRODUCTION**

In this unfair business practices suit, plaintiff moves for certification of a class under

Rule 23(b)(2).  To the extent stated, the motion is **GRANTED**.

                         **STATEMENT**

Previous orders described the facts herein (Dkt. Nos. 121, 140).  In brief, defendant

Vivint Solar, Inc., in its various corporate forms, installs solar panels on customers' roofs and,

at least as advertised, sells those customers the low cost, clean energy produced over a twenty-

year term pursuant to their "power purchase agreement" (PPA).  Plaintiff alleges, however, that

Vivint's contract contains unlawful liquidated-damages clauses, provisions which impose

harsh and unlawful penalties onto customers should they seek to dissolve the contract.

        Early on in our action, a March 2020 order compelled all but two plaintiffs to arbitration.

The exceptions were Ms. Dekker, whose early version of the PPA did not contain an

1    arbitration clause, and Mr. Bautista, who had not agreed to arbitrate, given Vivint had the

2    native Spanish speaker, with virtually no English proficiency, sign an English-form contract

3    after conducting negotiations in Spanish (Dkt. No. 47).  Vivint appealed that decision,

4    plaintiffs amended their complaint, and the action continued apace (Dkt. Nos. 62, 63).

5         Vivint, however, dropped the ball on its JAMS fee deadline, a material breach of the

6    arbitration agreements under California's recently enacted Code of Civil Procedure Section

7    1281.97. So, an August 14 order vacated the March 24 order as far as it compelled select

8    plaintiffs to arbitrate and invited those plaintiffs back into this forum (Dkt. No. 84). Vivint

9    appealed this decision as well.

10        Our court of appeals decided Vivint's first appeal on January 25, 2021.  The order didn't

11   answer many questions, merely dismissing the case for lack of jurisdiction and dictating:  "We

12   remand to the district court for it to determine if Plaintiffs should be granted leave to amend

13   the complaint" (Dkt. No. 111).  Leave to amend was granted (Dkt. No. 121).  In June, Vivint

14   moved for judgment on the pleadings, which was granted as to plaintiffs' Section 17200 claim

15   as to unfairness based on violations of the Translation Act allegedly endured by Mr. Bautista

16   (Dkt. No. 140).  Plaintiffs were permitted to amend their pleadings, and an August 11 order

17   granted the motion for leave to amend in part but denied as futile plaintiffs' Section 17200

18   unfairness claim as to the Translation Act and further denied leave to include a restitution

19   claim per the CLRA and Section 17200 (Dkt. No. 157).

20        Then, in late October, the other shoe dropped, and our court of appeals ruled on Vivint's

21   second appeal, finding that whether Vivint's failure to pay the JAMS filing fees qualifies as a

22   breach of the arbitration agreement fell within the scope of the PPA's delegation clause.   The

23   order compelling those relevant plaintiffs to arbitration was hence reinstated (Dkt. Nos. 177,

24   178).  In November, plaintiff Bautista dropped out of the case when he settled with Vivint.

25   Ms. Dekker became our only named plaintiff.

26        Plaintiff now seeks certification of a Rule 23(b)(2) class defined as follows:

27              All persons in California who entered into Version 1 of the
                Residential Solar Power Purchase Agreement with Vivint Solar

28

2

(Mot. 2, specific exclusions omitted).  Plaintiff asserts a claim for violations of Civil Code § 1671 for including liquidated damages clauses in the PPA, as well as claims under Section 17200 and the Consumer Legal Remedies Act (CLRA).  Both the Section 17200 and CLRA claims are predicated on Vivint's alleged violation of Section 1671.  Plaintiff generally seeks an injunction invalidating the PPA's liquidated damages provisions (Br. 19).  Plaintiff emphasized in both the papers and at the hearing she is not seeking any classwide monetary remedies.

Shortly before this class certification motion ripened, Vivint moved for partial summary judgment on three discrete issues related to the injunctive relief plaintiff seeks.  Due to those issues comingling with those of class certification, a decision on that motion was held in abeyance until this class certification motion could be heard.  That order is filed in tandem with this one.  This order follows full briefing and oral argument.

## ANALYSIS

Certification under Rule 23(b)(2) is a two-step process.  A plaintiff must first show that the four prerequisites of Rule 23(a) are met:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  For a class seeking declaratory or injunctive relief under Rule 23(b)(2), a plaintiff must also establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  The plaintiff bears the burden of demonstrating that these requirements are met.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017).

The Supreme Court has "cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'"

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal–Mart*, 564 U.S. at 350). However, "[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Ibid.*

For the reasons that follow, this order will certify a class, but not pursuant to plaintiff's proposed definition. Instead, this order certifies a Rule 23(b)(2) class with the following definition:

> All persons in California currently in privity of contract with Vivint Solar because they are subject to Version 1 of the Residential Solar Power Purchase Agreement.

This order proceeds through the Rule 23(a) factors before evaluating Rule 23(b)(2).

### 1.   NUMEROSITY.

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." Vivint does not contest numerosity. Plaintiff asserts the proposed class numbers approximately 825 people (Oct. 21, 2021 Hrg. Tr. 8–9, Plf's Exh. 11; Burr Tr. 132, Plf's Exh. 4, Chang Decl. Exh. 3).

In its papers, Vivint clarifies that there are actually "1,064 (not 825) version 1 PPA accounts in California with systems installed and granted permission to operate and approximately 284 (not 166) accounts [of those 1,064 total accounts] reflect[] transfer assignment situations" (Burr Decl. ¶¶ 2–3). Regardless, excluding those individuals no longer in privity of contract with Vivint (as this order's revised class definition does), the number of individuals with active version 1 PPAs still satisfies the numerosity requirement.

### 2.   ADEQUACY.

Under Rule 23(a)(4), a proposed class representative is adequate if they "will fairly and adequately protect the interests of the class." Our court of appeals has explained that a representative meets this standard if they:  (1) have no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

United States District Court
Northern District of California

1   Vivint asserts that Ms. Dekker has demonstrated "alarming unfamiliarity" with this

2   litigation, undermining her adequacy as a representative.  *See Burkhalter Travel Agency v.*

3   *MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153–54 (N.D. Cal. 1991) (citation omitted).  Ms.

4   Dekker purportedly did not review any of her discovery responses or filings (Opp. 5–7).

5   Looking to Ms. Dekker's deposition testimony, Vivint also highlights her lack of knowledge

6   regarding the claims in the action, the remedies she is seeking, the (then) operative complaint,

7   and the key filings herein.  Here's one of Vivint's examples:

8         Q.  Do you believe you have an obligation to supervise your
           attorney in this lawsuit?
9
           A.  No
10

11   (Dekker Tr. 45–46, Chang Decl. Exh. 1, Plf's Exh. 3 (counsel's objections omitted)).  And

12   here's another:

13         Q.  Are you aware of what the legal claims in this lawsuit are?

14         A.  I hope they're all the things that I'm complaining about.

15         Q.  Are you aware that there's a claim for unfair competition in
           this action?
16
           A.  No.
17
           Q.  Are you aware that there is a Consumer Legal Remedies Act
18         claim in this lawsuit?

19         A.  No.  But I hope so.

20         Q.  Are you aware that there is a claim related to the liquid[ated]
           damages issue in this lawsuit?
21
           A.  Liquid[ated] damages.  I don't know
22

23   (Dekker Tr. 29–30 (cross-talk and counsel's objections omitted)).  These responses certainly

24   raise an eyebrow.  Plaintiff, however, dismisses Vivint's concerns, and explains that Ms.

25   Dekker is a seventy-year-old retiree who is simply less sophisticated than your typical party in

26   federal court (Reply Br. 2–3).

27   This order finds, while a closer call than many, Ms. Dekker qualifies as an adequate class

28   representative.  "[I]t is enough that the representative understand the gravamen of the claim."

5

*I.B. ex rel. Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1130 (N.D. Cal. 2015) (citation omitted).  Ms. Dekker understands the core issue in this litigation:  "I believe that I'm hopefully going to, today, represent all the millions of people that might be out there that are in the same shape as I am and can't afford to get out of their contracts, and I know that this is, hopefully, going to become a class-certified class action suit" (Dekker Tr. 17).  Plaintiff's counsel also noted that they would actively explain court filings and discovery to Ms. Dekker over the phone, in meetings at her home, and in email correspondence (Bennett Reply Decl. ¶ 3).  Moreover, no evidence indicates that Ms. Dekker has a conflict with any other class members, or that she will not vigorously prosecute this action.  Indeed, she has continued to litigate for years, including several trips to our court of appeals.  Justice in federal court is not limited to those sophisticated parties that have a in-depth understanding of the legal minutiae of their action.

This order nevertheless advises plaintiff's counsel that Ms. Dekker must continue to understand and control the major decisions of this litigation.  *See I.B.*, 82 F. Supp. 3d at 1130.

### 3.    COMMONALITY.

Plaintiff asserts a claim that the PPA contains unenforceable liquidated damages clauses under Section 1671, as well as Section 17200 and CLRA claims predicated on that statutory violation.  Plaintiff contends that the validity of the PPA's liquidated damages provisions will drive the resolution of this litigation, and hence satisfies the commonality requirement.  This order agrees.

Under Rule 23(a)(2), commonality is satisfied if there are questions of law or fact common to the class.  "A common contention need not be one that will be answered, on the merits, in favor of the class.  It only must be of such a nature that it is capable of classwide resolution." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quotation marks and citation omitted).  What matters "is not the raising of common questions — even in droves — but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quotation and citation omitted).

To inform this discussion, this order reviews Section 1671 and the supporting jurisprudence on liquidated damages.  California law has "long recognized that a provision for liquidation of damages for contractual breach . . . can under some circumstances be designed as, and operate as, a contractual forfeiture.  To prevent such operation, our laws place limits on liquidated damages clauses." *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 976–77 (Cal. 1998).  To be valid, a liquidated damages clause must "represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 511 P.2d 1197, 1202 (Cal. 1973).  If not the result of a reasonable endeavor, the provision is construed as an unenforceable penalty. *See Purcell v. Schweitzer*, 224 Cal. App. 4th 969, 974 (Cal. Ct. App. 2014).

Reviewing courts employ a two-part test to determine the validity of a liquidated damages provision.  This reasonable endeavor test considers whether:  (1) fixing the amount of actual damages was impracticable or extremely difficult; and (2) the amount selected represented a reasonable endeavor to estimate fair compensation for the loss sustained.  Absent either of these elements, the liquidated damages provision is unenforceable.  The burden of proof is on the proponent of the clause to demonstrate its validity.  The test does not require both parties to the contract to expressly negotiate the amount of liquidated damages. *Utility Consumers' Action Network, Inc. v. AT&T Broadband of S. Cal., Inc.*, 135 Cal. App. 4th 1023, 1029, 1042 (Cal. Ct. App. 2006); 1 Witkin Summary of Cal. Law, Contracts § 545 (11th ed. 2021).

Considering the first factor in more detail, the seller can establish impracticability by showing "that the measure of actual damages would be a comparatively small amount and that it would be economically impracticable in each instance of a default to require a [seller] to prove to the satisfaction of the [purchaser] the actual damages by accounting procedures." *Garrett*, 511 P.2d at 1204.

Turning to the second factor:  "Determining whether a reasonable endeavor was made depends upon both (1) the motivation and purpose in imposing the charges, and (2) their

effect." *Utility Consumers*, 135 Cal. App. 4th at 1029.  The focus of this inquiry is on whether the liquidated damages were *intended* to substantially exceed loss in order to generate a profit, not whether liquidated damages were disproportionate from loss due to breach.  This requires the seller "to show that it actually engaged in some form of analysis to determine what losses it would sustain from breach, and that it made a genuine and non-pretextual effort to estimate a fair average compensation for the losses to be sustained." *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 291 (Cal. Ct. App. 1995).

Importantly, "the reasonable endeavor test, to have any meaning, must necessarily focus on those circumstances actually considered in evaluating a liquidated damage provision, not post hoc rationalization." *Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 326–27 (Cal. Ct. App. 2011).  This is because:

> [F]ocusing solely on hindsight justifications would render the reasonable endeavor requirement meaningless if no effort at foresight were required, and arbitrarily selected charges could be routinely imposed in consumer contracts, subject only to the ability of a company to muster a credible defense if challenged in litigation. If no attempt to make a reasonable assessment of potential loss is required at the outset, and to make the amount of the liquidated damages consonant with that assessment, one of the important functions that liquidated damages serve, removing the uncertainty factor from determining damages from a breach of contract and reducing litigation, would be lost.

*Ibid.*  This review is holistic, and considers the "entire agreement, its scope, purpose, and subject matter." *Dyer Bros. Golden W. Iron Works v. Central Iron Works*, 189 P. 445, 447 (Cal. 1920).

Finally, a provision will not be deemed to impose liquidated damages if it provides "a true option or alternative." *Blank v. Borden*, 524 P.2d 127, 130–31 (Cal. 1974).  That is to say, a valid alternative form of performance includes "the element of rational choice," while an unenforceable liquidated damages clause has the "invidious qualities characteristic of a penalty or forfeiture." *Ibid.*  However, "when it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages." *Garrett*, 511

P.2d at 1201.  Because an alternative-performance clause does not impose liquidated damages in the first place, its validity need not be evaluated under the reasonable endeavor test traced out in *Garrett* and its progeny.

With this overview in mind, this order applies them to the instant facts.  The version 1 PPA has two provisions that plaintiff alleges qualify as unenforceable liquidated damages clauses.  Here is the relevant part of the customer default clause:

> If a Customer Default occurs, we may exercise any of the following remedies:  (i) terminate this Agreement and demand you pay a Buy-Out Payment; (ii) leave the System in place on your home, but deny You access to and use of the Energy it produces which may be redirected and sold to third parties at our election; (iii) remove the System from Your home; Or (iv) exercise any other remedy provided under applicable law. Notwithstanding the foregoing, your liability arising from a Customer Default will not exceed the Buy-Out Payment that you will be required to pay upon such Customer Default plus any amounts due and owing under this Agreement that you have not yet paid (including unpaid amounts for Energy and interest that has accrued on such unpaid amounts)

(PPA ¶ 11, Chang Decl. Exh. 4).  Further down, the PPA specifies:  "The Buy-Out Payment you will pay us will be Seven Dollars ($7.00) per watt installed.  You will own the System and all System Interests once you have paid us the Buy-Out Payment due" (*ibid.*).  And here is the relevant portion of the transfer provision:

> If you are planning to sell your home to Property Transferee, you will request that the Property Transferee agree in writing with us that Property Transferee will assume your obligations under this Agreement.  Property Transferee shall enter into this agreement on or before the date your home is sold.  Alternatively, if we determine, that Property Transferee is not adequately creditworthy to assume your obligations under this Agreement upon the sale of your home, or Property Transferee refuses to assume your obligations under this Agreement, we may terminate this Agreement on written notice to You and you will be obligated to pay us an relocation buy-out payment of Four Dollars ($4.00) per watt installed

(*id.* ¶ 12).  All class members (as defined by this order) are currently subject to these two provisions.

Whether the default and transfer provisions constitute alternative forms of performance raises common questions with common answers capable of driving this litigation.  A previous order denied Vivint's motion for judgment on the pleadings that the default provisions were

9

valid alternative-performance clauses because, in part, of the value of certain extrinsic evidence in evaluating the provisions' validity (Dkt. No. 140). That order noted it would be "illuminating to dig into Vivint's files to see how it has, in fact, implemented these provisions" (*id.* at 4). Vivint here raises myriad factors it says require individualized inquiries to determine whether the default provisions are alternative forms of performance. It summarizes: "Whether the transfer fee or default fee presents a valid alternative to performance would require this same type of individualized analysis for each system (and would be specific to a particular date), as each system would have its own system size, appraised fair market value, cost of termination, expected PPA revenue, and cost of breach" (Opp. 19–20).

This order rejects the contention that the transfer or default provisions could be rational alternatives forms of performance one day, and liquidated damages provisions the next. Whether the arrangement "realistically contemplates no element of free rational choice" must be "viewed from the time of making the contract." *Blank*, 524 P.2d at 131. The PPA is a contract of adhesion and any relevant extrinsic evidence from when Vivint first began entering into agreements using version 1 of the PPA would reside with Vivint, not with class members. A review of the transfer and default provisions might require separate analyses, but both will have common proof.

Next, an evaluation of the default and transfer provisions pursuant to the reasonable endeavor test (if necessary) would also raise common questions and generate common answers. As for the first prong of the test, evaluation of the impracticability of fixing actual damages will not differ customer to customer. Sure, the actual number may differ from customer to customer, as Vivint has stated. But the variables in play and difficulty of the calculation will be the same classwide.

For the second step, whether Vivint made a reasonable endeavor to estimate fair compensation for the loss sustained from default and from transfer can also be resolved on a classwide basis. Again, the focus will be on Vivint's motivation and the purpose in its imposition of the fees and the effect of the fees. Vivint's motivation will be found within its own files. The effect of the fees can be considered by looking at their effect on commerce

United States District Court
Northern District of California

1  generally and on the majority of Vivint's customers, specifically.  This analysis will also have

2  common proof.  *See Cellphone Termination*, 193 Cal. App. 4th at 328–29.

3        Indeed, plaintiff here presents evidence that Vivint never attempted to calculate the losses

4  it would incur in the event of a customer default when it began using the version 1 PPA.

5  Vivint's Rule 30(b)(6) witness testified:

6        Q.  Did Vivint Solar do any calculations, prior to the first PPA,
         related to the losses that they would expect to incur in the event of
7        customer default?

8        A.  I am not aware of any documented, written -- any valuation
         that would have been Vivint Solar's estimation of losses to a
9        customer default.

10              *   *   *

11       Q.  Has Vivint Solar ever hired a third-party appraiser to determine
         its losses in the event of customer default?
12

13       A.  No.

14  (Burr Tr. 112, 140).  Vivint's corporate witness similarly testified the company did not attempt

15  to estimate its losses due to the triggering of the transfer clause:

16       Q.  Are you aware of any data that was available to Vivint Solar
         prior to the first PPA being signed that demonstrated or estimated
17       what losses Vivint Solar expected in connection with system
         transfers?
18

19       A.  No, I'm not aware.  I think I -- I mentioned earlier that we
         anticipated or modeled about half a percent per year of defaults.
20       Transfers can sometimes lead to a default situation.  But no one
         specifically, to my knowledge, called out specific losses --
21       estimated losses due to transfers.  It was just all – we anticipate a
         half a percent of accounts to no – each year to no longer perform

22  (*id.* at 154).  The reasonable endeavor test focuses on Vivint's actions and omissions as they

23  relate to the entire class.  It does not require a house-by-house inquiry.

24        Vivint asserts that it's Rule 30(b)(6) witness stated that the company "relies on third-

25  party independent appraisers to assess the fair market value of a typical system, which Vivint

26  Solar then uses to value all systems in a given geographic area over a given time period" (Opp.

27  17, citing Burr Tr. 112, 134–35).  Vivint specifically cites an appraisal from June 2012 that

28  appraised the value of a typical system in California at $6.90 per watt (Chang Decl. Exh. 9).  If

11

Vivint did use this or another appraisal to calculate its termination fee as originally inserted into version 1 of the PPA then that would be considered in the reasonable endeavor test. The point is, however, this evidence is consistent with trying this litigation on a class-action basis.

Finally, Vivint takes issue with plaintiff's expert Nora Ostrofe, but this order leaves those issues for a later day. Consideration of the report is unnecessary for this order to conclude commonality has been satisfied. We need not dip that far into the merits now. *See Amgen*, 568 U.S. at 466.

In sum, common questions with common answers regarding whether the default provisions constitute unenforceable liquidated damages provisions will drive the resolution of this litigation. Both plaintiff's Section 17200 and CLRA claims are predicated on this analysis. Given that plaintiff is not seeking monetary remedies in any form on behalf of the class, issues like common proof as to restitution need not be considered. Plaintiff has demonstrated commonality.

### 4.   TYPICALITY.

Pursuant to Rule 23(a)(3), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Vivint here once again raises the specter of the statute of limitations as to Ms. Dekker's claims. Twice previously, orders denied Vivint's arguments that Ms. Dekker's claims are untimely (Dkt. Nos. 47 at 10; 140 at 7). Here are the facts. On June 3, 2016, Vivint threatened a default payment of $41,760 (plus removal costs) if Ms. Dekker did not pay her overdue

United States District Court
Northern District of California

invoices (Chang Decl. Exh. 5).  She contested that notice.  In her deposition, Ms. Dekker testified:

> Q.  As of the date of your email on June 9, 2016, were you considering a lawsuit against Vivint Solar?
>
> A.  Yes.  I think I already answered that.
>
> *   *   *
> Q.  Would it be fair to say that you were contemplating a lawsuit against Vivint Solar as of September 26, 2018?
>
> A.  Yes.  Didn't I just say that about -- yes.  Okay.  Yes.

(Dekker Tr. 116–17; 130).  Ms. Dekker did not file a lawsuit against Vivint until December 3, 2019.  The PPA contains a one-year contractual limitations period, and the statute of limitations is three years for a CLRA claim and four years for Section 1671 and Section 17200 claims.  *See* Cal. Code Civ. Proc. § 337; Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208).  Vivint argues that, under either standard, Ms. Dekker's claims are time barred.

But Ms. Dekker, in light of Vivint's threat of default payment, remains in privity of contract with Vivint and continues to be subject to the PPA (Dekker Tr. 19–20).  So do all the individuals included in this order's definition of the class.  Thus, should she suddenly stop paying her fees, Ms. Dekker will risk incurring the default payment.  Should she wish to move, Ms. Dekker will be exposed to the transfer payment.  Again, plaintiff *does not seek monetary remedies*.  If she did, then the statute of limitations may have limited recovery for previous, untimely harms.  But that is not the case here.  Previous orders evaluating the statute of limitations noted the relevancy of continuous accrual, one of the classic exceptions to the default last-element accrual rule (Dkt. No. 63 at 3–4).  According to the California Supreme Court:

> Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation:  When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.  Because each new breach of such an obligation provides all the elements of a claim — wrongdoing, harm, and causation — each may be treated as an independently actionable wrong with its own time limit for recovery.

United States District Court
Northern District of California

*Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880 (Cal. 2013) (quotation marks and internal citations omitted). The scenario described in *Aryeh* aligns with the fact pattern described by Ms. Dekker. Vivint does not address continuous accrual in its opposition.

In short, Vivint has not adequately shown the litigation of classwide answers will be derailed by statute of limitations issues particularly unique to Ms. Dekker. Typicality is satisfied here.

### 5. INDIVISIBILITY OF DECLARATORY OR INJUNCTIVE RELIEF.

With the four requirements of Rule 23(a) satisfied, this order considers Rule 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks and citation omitted).

Rule 23(b)(2)'s requirements are satisfied where "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (quotation marks and citation omitted). Because of their innate cohesion Rule 23(b)(2) classes need not meet the additional requirements of predominance and superiority required for a class certified under Rule 23(b)(3). "Predominance and superiority are self-evident." *Wal-Mart*, 564 U.S. at 363.

With some tweaks to plaintiff's proposed class definition, both criteria of Rule 23(b)(2) are satisfied. *First*, Vivint has acted on grounds generally applicable to the entire class. Each class member is subject to identical provisions of the version 1 PPA.

*Second*, plaintiff seeks an injunction "invalidating the unlawful liquidated damages provision contained in *every* PPA" (Br. 19, emphasis in original). Vivint argues this injunctive relief is inappropriate because plaintiff's proposed class definition includes three groups for whom this relief would be irrelevant and who lack standing: (1) those who already paid the transfer fee and assigned their PPA to another; (2) those who already paid the default fee; and (3) those who executed complete releases of claims related to the PPA (Opp. 13–15). This order agrees that these groups of putative class members would have no need for the

14

United States District Court
Northern District of California

prospective relief plaintiff seeks. *See Wal-Mart*, 564 U.S. 364–65. This order finds a slightly more precise class definition solves this problem, and defines the class as follows: All persons in California currently in privity of contract with Vivint Solar because they are subject to Version 1 of the Residential Solar Power Purchase Agreement. *See* FRCP 23(c)(1)(B); William B. Rubenstein, Newberg on Class Actions § 7:27 (5th ed., 2021). With this revision to the definition, the requested injunctive relief will be appropriate with respect to the class as a whole.

Vivint's two other arguments that plaintiff fails to satisfy Rule 23(b)(2) fail to persuade. *First*, Vivint raises the statute of limitations issue again, which was addressed above. *Second*, Vivint contends that those "who paid transfer fees are differently situated from those who, like Ms. Dekker, are challenging the default fees" (Opp. 14). To the extent Vivint is concerned with those who have already paid a transfer fee as compared to those who have already paid a termination fee, this order's revision to the class definition has addressed that concern. For those customers who are still in privity with Vivint under version 1 of the PPA, they are subject to both the default and transfer provisions.

In sum, plaintiff has satisfied her burden under Rule 23(b)(2).

### 6.    EVIDENTIARY OBJECTIONS.

Plaintiff objects to several paragraphs of the declaration of Colton Burr that Vivint filed in support of its opposition (Dkt. No. 218-7). Plaintiff filed her objections in contravention of Civil Local Rule 7-3(c), which reads in relevant part: "Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum. Pursuant to Civil L.R. 7-4(b), the reply brief or memorandum may not exceed 15 pages of text." Regardless, this order relied on none of the portions of the Burr declaration that plaintiff objects to, so the objections are **DENIED AS MOOT**.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification under Rule 23(b)(2) is **GRANTED**. The following class is **CERTIFIED**:

All persons in California currently in privity of contract with

15

United States District Court
Northern District of California

1

Vivint Solar because they are subject to Version 1 of the
Residential Solar Power Purchase Agreement.

2  This class definition shall apply for all purposes, including settlement.  Plaintiff Gerrie Dekker

3  is hereby **APPOINTED** as class representative.  Plaintiff's counsel Matern Law Group, PC is

4  hereby **APPOINTED** as class counsel.  By **APRIL 8 AT NOON**, Vivint shall submit a list of people

5  who qualify as class members and the parties shall jointly submit a proposal for class

6  notification with a plan to distribute notice, including by first-class mail.

7        **IT IS SO ORDERED.**

8

9  Dated:  March 18, 2022.

10

11  _____

12  WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28